**ROPES & GRAY LLP**

Ryan Preston Dahl (*pro hac vice* pending)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
ryan.dahl@ropesgray.com

- and -

**ROPES & GRAY LLP**

Chris L. Dickerson (*pro hac vice* pending)
Rahmon J. Brown (*pro hac vice* pending)
Michael K. Wheat (*pro hac vice* pending)
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
chris.dickerson@ropesgray.com
rahmon.brown@ropesgray.com
michael.wheat@ropesgray.com

*Proposed Counsel to the Debtors*

**FOLEY & LARDNER LLP**

Holland N. O'Neil (TX 14864700)
Stephen A. Jones (TX 24101270)
Zachary C. Zahn (TX 24137675)
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
sajones@foley.com
zzahn@foley.com

*Proposed Co-Counsel to the Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Hooters of America, LLC, *et al.*,[1] | Case No. 25-80078 (SWE) |
| Debtors. | (Joint Administration Requested) |

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Hooters of America, LLC (5288); Owl Holdings, LLC (3103); Hawk Parent, LLC (2323); HOA Holdings, LLC (1180); Night Owl, LLC (4511); Owl Wings, LLC (4583); Owl Restaurant Holdings, LLC (7751); HOA Restaurant Group, LLC (7654); Derby Wings Holdings, LLC (8081); Derby Wings, LLC (6578); HOA Gift Cards, LLC (3684); Elf Owl Investments, LLC (3342); TW Lonestar Wings, LLC (3465); Alamo Wings, LLC (3702); HOA Holdco, LLC (8828); HOA Systems, LLC (2439); HOA Funding, LLC (4390); HOA Restaurant Holder, LLC (3883); HOOTS Restaurant Holder, LLC (5840); HOA IP GP, LLC (9555); HOOTS Franchising, LLC (8375); HOA Franchising, LLC (4451); HOA Maryland Restaurant Holder, LLC (1608); HOA Kansas Restaurant Holder, LLC (9045); TW Restaurant Holder, LLC (6927); DW Restaurant Holder, LLC (8261); HI Limited Partnership (2355); HOA Towson, LLC (1942); HOA Waldorf, LLC (5425); HOA Laurel, LLC (5010).  The Debtors' service address is 1815 The Exchange SE, Atlanta, GA 30339.

**DEBTORS' <u>EMERGENCY</u>
MOTION FOR ENTRY OF AN
ORDER (I) AUTHORIZING DEBTORS
TO PAY CERTAIN PREPETITION TAXES
<u>AND FEES AND (II) GRANTING RELATED RELIEF</u>**

---

**Emergency relief has been requested.   Relief is requested not later than 3:00 p.m. (prevailing Central Time) on April 2, 2025.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on April 2, 2025 at 3:00 p.m. (prevailing Central Time) in Courtroom 3, Floor 14, 1100 Commerce Street, Dallas, Texas 75242 before the Honorable Scott W. Everett, U.S. Bankruptcy Judge for the Northern District of Texas.**

**Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (650) 479-3207.   Video communication will be by use of the Cisco Webex platform.  Connect via the Cisco Webex application or click the link on Judge Everett's home page.  The meeting code is 2304 017 9738.  Click the settings icon in the upper right corner and enter your name under the personal information setting.  A copy of Judge Everett's WebEx Hearing Instructions can be found at the following link: <u>WebEx Hearing Instructions</u>.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Everett's home page.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

Hooters of America, LLC and its affiliated debtors and debtors in possession (each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (these "<u>Chapter 11 Cases</u>"), by and through their undersigned proposed counsel, hereby submit this motion (this "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, granting the relief described below.  In support hereof, the Debtors rely on the *Declaration of Keith Maib, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and*

*First Day Motions* (the "First Day Declaration")[2] filed concurrently herewith, and further represent as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over these cases, the Debtors, property of the Debtors' estates, and this matter under 28 U.S.C. § 1334.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).   Venue of these Chapter 11 Cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a), 541, 1107(a), and 1108 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 9013-1 of the Local Rules for the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), and section B.8(d) of the Procedures for Complex Chapter 11 Cases in the Northern District of Texas (the "Complex Case Procedures").

## BACKGROUND

4.      On March 31, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in these Chapter 11 Cases.

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

5.　　　Founded in 1983, the Debtors own and operate Hooters, an iconic brand in the casual dining and sports entertainment dining industries.　The Debtors' global portfolio of restaurants includes 151 Debtor-owned and operated locations and 154 franchised locations in 17 countries.　The Debtors are known for their world-famous chicken wings, beverages, live sports, and legendary hospitality.　The Debtors also partner with a major food products licensor to offer shoppers Hooters-branded frozen meals products at 1,250 grocery store locations.

6.　　　Additional factual background regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the First Day Declaration, filed concurrently herewith and incorporated herein by reference.

## RELIEF REQUESTED

7.　　　The Debtors respectfully request entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Order</u>"):  (i) authorizing the Debtors to (a) remit and pay certain Taxes and Fees (each as defined below) accrued prior to the Petition Date that will become payable during the pendency of these Chapter 11 Cases, including any penalties and interest thereon, to various federal, state, county, and city taxing and licensing authorities (each, an "<u>Authority</u>," and collectively, the "<u>Authorities</u>") and (b) remit and pay any Audit Amounts (as defined below) that may become payable in the ordinary course of business; and (ii) granting related relief.

8.　　　The Debtors request authority to pay all prepetition Taxes owed to the Authorities in the ordinary course of business.  The Debtors estimate that the total amount of prepetition Taxes owing to the Authorities will not exceed approximately $5,560,257.  The Debtors believe that payment of the Taxes, including any prepetition amounts, is necessary to avoid immediate and irreparable harm and should be approved pursuant to the Order.

9.      The Debtors further request that the Order (a) authorize all applicable banks and other financial institutions (collectively, the "Banks"), when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers, on account of the Taxes, whether such checks or other requests were submitted before, on, or after the Petition Date, (b) authorize the Banks to rely on the representations of the Debtors as to which checks and fund transfers are subject to this Motion, provided that no such Bank shall have any liability to any party for relying on such direction and representations by the Debtors, (c) provide that the Banks shall, at the direction of the Debtors, receive, process, honor, and pay all prepetition and postpetition checks and fund transfers on account of the Taxes that had not been honored and paid as of the Petition Date, and (d) authorize the Debtors to issue new postpetition checks or effect new postpetition fund transfers to replace any checks, drafts, and other forms of payment which may be inadvertently dishonored or rejected.

## THE DEBTORS' TAX AND FEE OBLIGATIONS[3]

10.      In the ordinary course of business, the Debtors incur or collect and remit a variety of taxes, including Property Taxes, Sales and Use Taxes, Franchise Taxes, and Other Taxes and Fees (each as defined below and collectively, the "Taxes") in the ordinary course of their operations.  The Debtors also incur various fees and assessments related to business licenses, annual reports, foreign qualification, extension payments, and other regulatory fees (the "Fees"). The Debtors remit such Taxes and Fees to the Authorities identified in a schedule attached hereto

---

[3]      The Debtors do not seek authority to collect and remit state and federal employee-related withholding taxes by this Motion. That relief is requested in *Debtors' Motion for Entry of an Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Employee Benefits Obligations and Other Compensation, (B) Continue Employee Benefits Programs and Pay Related Administrative Obligations and (II) Granting Related Relief*, filed concurrently herewith.

as **Exhibit B**[4] in accordance with applicable laws.  The Taxes and Fees are paid monthly, quarterly, annually, or at other intervals, depending on the respective jurisdiction.  The Taxes and Fees are paid by the Debtors through checks, electronic transfers, and corporate credit cards that are processed through their banks and other financial institutions.

| Category | Description | Amount Due as of Petition Date |
|---|---|---|
| Property Taxes | The Debtors remit property taxes directly to Authorities in various states in connection with the Debtors' real and personal property holdings | $2,746,325 |
| Sales and Use Taxes | The Debtors remit taxes related to various sales, use, and other similar taxes in connection with their sale of food and liquor | $2,392,107 |
| Franchise Taxes | The Debtors remit various franchise taxes to conduct their business in relevant jurisdictions | $300,000 |
| Other Taxes and Fees | The Debtors remit various other taxes including federal and state income taxes, and business and occupational taxes | $121,825 |
| **Total** | | $5,560,257 |

## I.     Property Taxes

11.     The Debtors remit property taxes directly to Authorities relating to real and personal property holdings that the Debtors use in the operation of their business (the "Property Taxes").  The Debtors paid approximately $5,986,237 in Property Taxes in 2024.[5]  The Debtors believe that there is approximately $2,736,325 of Property Taxes accrued and unpaid as of the Petition Date.  For the avoidance of doubt, the Debtors are not seeking to pay any Property Taxes

---

[4]     Although **Exhibit B** is intended to be comprehensive, the Debtors may have inadvertently omitted Authorities from **Exhibit B**.  By this Motion, the Debtors request relief with respect to Taxes payable to all Authorities, regardless of whether such Authority is specifically identified on **Exhibit B**.

[5]     This amount includes Property Taxes paid by the Debtors' landlords and reimbursed by the Debtors. This amount also includes Property Taxes paid pursuant to stores which the Debtors have since closed.  For the avoidance of doubt, the Debtors are not seeking to pay any Property Taxes that they are contractually obligated to pay under their leases.

that they are contractually obligated to pay under their leases, which such taxes are not owed to the Authorities.

## II.    Sales and Use Taxes

12.    The Debtors incur or collect and remit various sales, use, and other similar taxes, such as meals taxes, mixed beverage taxes, liquor taxes, and liquor by drink taxes, in connection with their sale of food and liquor (the "Sales and Use Taxes").  The Debtors purchase a variety of equipment, materials, and services necessary for the operation of their business from certain vendors who collect sales taxes in connection with the Debtors' purchase of such goods or services. The Debtors also incur use taxes for the purchase of such goods and services when vendors are not registered to collect or have not collected sales taxes.  In these cases, applicable law generally requires the Debtors to subsequently pay use taxes on such purchases to the applicable Authorities.

13.    Additionally, the Debtors collect and remit Sales and Use Taxes in the ordinary course of their business in connection with the sale of food and liquor.  The Sales and Use Taxes collected or incurred are typically remitted to the Authorities in the month following the month in which the related transactions occurred, though certain Sales and Use Taxes are collected and remitted on a quarterly basis.  In general, sales taxes accrue as the Debtors' products are sold and are calculated based upon a statutory percentage of the sale price.  The Debtors paid approximately $30,473,384 in Sales and Use Taxes in 2024, and have paid, on average, approximately $2,099,844 per month in Sales and Use Taxes for the current year.  The Debtors believe that there is approximately $2,392,107 of Sales and Use Taxes that is accrued and unpaid as of the Petition Date.

## III.    Franchise Taxes

14.    The Debtors are required to pay various state franchise taxes to continue conducting their business in accordance with state laws (the "Franchise Taxes").  The Debtors paid

approximately $291,573 in Franchise Taxes in 2024.  The Debtors believe there is approximately $300,000 of Franchise Taxes accrued and unpaid as of the Petition Date.

## IV.   Other Taxes and Fees

15.     Many Authorities require the payment of various other taxes, including federal and state income taxes and business and occupational taxes, (the "Other Taxes"), and Fees, which are necessary to operate their businesses (collectively, the "Other Taxes and Fees").  Such Other Taxes and Fees are paid on a monthly, quarterly, or annual basis, depending on the requirements of the particular jurisdiction.  The Debtors paid approximately $161,599 in Other Taxes and Fees in 2024. The Debtors believe that there is approximately $121,825 of Other Taxes and Fees that is accrued and unpaid as of the Petition Date.

16.     In addition, the Debtors are, from time to time, subject to audit with respect to their taxes and may agree that they owe, or may be found to owe, additional amounts for prior period Taxes arising on account of audits (collectively, the "Audit Amounts").  As of the Petition Date, the Debtors are in the process of disputing a completed audit with respect to their sales and use taxes with the state of Florida.  The current assessment pursuant to that audit is $461,191 but is subject to possible reduction.  Additionally, the Debtors have received notice of a potential audit with respect to their sales and use taxes with the state of Texas for the period from April 1, 2021 to December 31, 2024, but no date for the audit's initiation has been declared.  The Debtors currently maintain a $461,191 audit reserve with respect to the state of Florida audit.  The Debtors seek authority to pay Audit Amounts, including, but not limited to, the $461,191 in audit reserves, as they may arise in the ordinary course of business upon final agreement to, or determination of, any applicable Audit Amount.  Nothing in this Motion, or any related order, constitutes or should be construed as an admission of liability by the Debtors with respect to any audit or assessment.

The Debtors expressly reserve all rights with respect to any audit. Furthermore, the Debtors reserve the right to contest any assessments claimed to be due as a result of any audits.

## BASIS FOR RELIEF

### I.   Payment of Certain Taxes is Authorized Pursuant to Section 541 of the Bankruptcy Code

17.     Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtors' legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." *See, e.g.*, I.R.C. § 7501 (stating that certain taxes and fees are held in trust); 11 U.S.C. § 541(d); Tex. Tax Code § 111.016(a) (2007) ("Any person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties and interest on the amount collected."); *Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 997 F.2d 1039, 1051 (3d Cir. 1993) (refunds required to be collected by federal law created trust fund that was not property of debtor's estate); *Shank v. Wash. State Dep't of Revenue (In re Shank)*, 792 F.2d 829, 830 (9th Cir. 1986) (same); *DeChiarov. N.Y. State Tax Comm'n*, 760 F.2d 432, 435–36 (2d Cir. 1985) (same). To the extent these "trust fund" taxes are collected, they are not property of the Debtors' estates under section 541(d) of the Bankruptcy Code. *See Begier v. Internal Revenue Service*, 496 U.S. 53, 57–60 (1990) (holding that any prepetition payment of trust fund taxes is not an avoidable preference because the funds are not the debtor's property); *Al Copeland Enters., Inc. v. Texas (In re Al Copeland Enters., Inc.)*, 991 F.2d 233, 237 (5th Cir. 1993) (holding that debtors' prepetition collection of sales taxes and interest thereon were held subject to trust and were not property of the estate); *In re Equalnet Commc'ns*

*Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("[C]ertain prepetition tax claims, such as sales taxes, could be trust fund claims."); *Faulkner v. Ford Motor Credit Co. (In re Reagor-Dykes Motors, LP)*, No. 18-50214-RLJ-11, at \*19 (Bankr. N.D. Tex. 2022) ("Funds held in trust for another are not property of the bankruptcy estate.").  Because the Debtors may not have an equitable interest in funds held on account of such "trust fund" taxes, the Debtors should be permitted to pay those funds to the Authorities as they become due.

## II.    Payment of Certain of the Taxes is Appropriate Pursuant to Section 507(a)(8) of the Bankruptcy Code

18.    Claims for some or all of the Taxes owed by the Debtors are or may be entitled to priority status under section 507(a)(8) of the Bankruptcy Code.  Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

19.    Section 507(a)(8) of the Bankruptcy Code provides that claims entitled to priority status include unsecured claims of governmental units for (i) taxes on or measured by income or gross receipts for a taxable year ending on or before the Petition Date, for which a return, if required, is last due after three years prior to the Petition Date, and which is assessed within 240 days before the Petition Date, *see* 11 U.S.C. § 507(a)(8)(A); and (ii) taxes required to be collected or withheld and for which the debtor is liable in whatever capacity, *see* 11 U.S.C. § 507(a)(8)(C). Moreover, to the extent that the Taxes are entitled to priority treatment under section 507(a)(8)(B) of the Bankruptcy Code, the governmental unit also may attempt to assess penalties that may also be accorded priority status.  *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth-priority status to "a penalty related to a claim of a kind specified in [section 507(a)(8)] and in compensation for actual pecuniary loss").

20.    To the extent that such Taxes and Fees are entitled to priority treatment under the Bankruptcy Code, the respective obligation may accrue interest and the Debtors may be assessed

remunerative penalties if such amounts are not paid timely.  *See* 11 U.S.C. § 507(a)(8)(G) (granting priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").

21.    Consequently, payment of such Taxes and Fees will give the applicable Authorities no more than that to which they otherwise would be entitled under a chapter 11 plan and only affect the timing of payment for the amounts at issue, which will not unduly prejudice the rights and recoveries of junior creditors, while saving the Debtors potential interest expense, legal expense, and penalties that otherwise may accrue on, or be incurred in connection with, such Taxes and Fees.  *See Equalnet Commc'ns*, 258 B.R. at 370 ("[C]ertain types of claims enjoy a priority status in addition to being sometimes critical to the ongoing nature of the business.  For instance, employee wage claims and certain tax claims are both priority claims in whole or in part.  The need to pay these claims in an ordinary course of business time frame is simple common sense.").

## III.    Payment of the Taxes and Fees is Appropriate Pursuant to Sections 105 and 363 of the Bankruptcy Code

22.    Finally, the timely payment of the Taxes is appropriate because it is necessary for the Debtors' successful reorganization.  Section 363(b) of the Bankruptcy Code permits a debtor to use estate property "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1).  Under section 363(b) of the Bankruptcy Code, a debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business").  Further, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of*

*Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *In re Asarco, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011), *aff'g* 441 B.R. 813, 824 (S.D. Tex. 2010) ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard."); *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task"); *In re TM Vill. Ltd.*, No. 18-32770 (BJH), at *16 (Bankr. N.D. Tex. 2019) ("Great judicial deference is given to the debtor's exercise of business judgment."). In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty . . . to 'protect and preserve the estate, including an operating business' going concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).

23.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit payments of prepetition obligations prior to confirmation of a plan and emergence from chapter 11 when essential to the continued operation of a debtor's business. Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "doctrine of necessity."

24.     Under the "doctrine of necessity," bankruptcy courts may authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 493 n.10, 497 (Bankr. N.D. Tex. 2002) (authorizing payment of certain prepetition claims pursuant to "doctrine of necessity"); *In re Mirant*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (allowing a debtor in possession to pay prepetition claims when failing

to do so could "seriously damage" the debtor's business); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business until its pre-reorganization claims have been paid"). This rationale for the necessity of payment rule – the rehabilitation of a debtor in reorganization cases – is the paramount policy and goal of chapter 11.

25.     Although the "doctrine of necessity" predates the Bankruptcy Code, *see Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 309 (1882), the modern application of the doctrine of necessity is grounded in specific provisions of the Bankruptcy Code, including sections 105(a), 1107(a), and 1108. *See CoServ*, 273 B.R. at 497 (fiduciary duties implicit in section 1107(a) of the Bankruptcy Code justify the "preplan satisfaction of a prepetition claim" where necessary to preserve going concern value). The doctrine, largely unchanged from the Court's reasoning in *Miltenberger*, is a widely accepted component of bankruptcy jurisprudence. *See id*. at 492–93, 497 (discussing the instances in which the "doctrine of necessity" or "necessity of payment" apply to debtors in possession); *Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy the debtor's business by refusing to deliver new inventory on the eve of debtor's key sales season); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (affirming order authorizing payment of prepetition wages, salaries, expenses and benefits); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546–47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agreed to provide postpetition trade credit).

26.     Indeed, courts in this District regularly authorize debtors to pay prepetition taxes and fees in a similar manner as requested herein. *See, e.g.*, *In re TGI Friday's Inc.*, No. 24-80069

(SGJ) (Bankr. D. Tex. Nov. 4, 2024) [Docket No. 70]; *In re Buca Texas Restaurants, L.P.*, No. 24-80058 (SGJ) (Bankr. D. Tex. Aug. 7, 2024) [Docket No. 82]; *In re Eye Care Leaders Portfolio Holdings, LLC*, No. 24-80001 (MVL) (Bankr. N.D. Tex. Jan. 22, 2024) [Docket No. 31]; *In re Cottonwood Financial Ltd.*, No. 24-80024 (SWE) (Bankr. N.D. Tex. Feb. 29) [Docket No. 71]; *In re Ebix, Inc.*, No. 23-80004 (SWE) (Bankr. N.D. Tex. Dec. 19, 2023) [Docket No. 61]; *In re Impel Pharmaceuticals, Inc.*, No. 23-80016 (SGJ) (Bankr. N.D. Tex. Jan. 12, 2024) [Docket No. 151]; *In re NW Senior Hous. Corp.*, No. 22-30659 (MVL) (Bankr. N.D. Tex. May 12, 2022) [Docket No. 220].

27.     The Debtors have determined, in the sound exercise of their business judgment, that any failure to pay the Taxes could materially disrupt the Debtors' business operations.  First, the Debtors may collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and such funds may not constitute property of the Debtors' estates.  Second, the failure to pay Taxes may negatively impact the Debtors' restructuring efforts because, among other things, (a) Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from the restructuring process, (b) Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and pursue other remedies that would harm the estates, and (c) certain of the Debtors' directors and officers could be subject to claims of personal liability, which would likely distract them from their duties related to the Debtors' restructuring.  Third, unpaid Property Taxes for properties which the Debtors lease but are required to remit applicable real property taxes thereon to the Authorities could impede the Debtors' working relationships with existing landlords.  Finally, unpaid Taxes may result in penalties, the accrual of interest, or both, reducing creditor recoveries.

28.     The Debtors' ability to pay the Taxes is critical to maintaining the value of the Debtors' estates.  The Debtors' ability to manage and run their business operations with as little

disruption as possible requires, in part, that they remain in good stead with the Authorities in respect of their obligations on account of Taxes.  Any collection action on account of such tax amounts and penalties, and any ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in interest.  The dedicated and active participation of the Debtors' officers and employees is essential to the orderly administration of these Chapter 11 Cases and maximizing the value of the Debtors' estates for the benefit of their stakeholders.  Accordingly, the Debtors submit that it is critical and essential that they be able to pay the Taxes.

## IV.      Authorizing and Directing Banks is Appropriate

29.      The Debtors also request that the Court authorize and direct the Banks to receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on, or after the Petition Date, provided that funds are available in the Debtors' accounts to cover the checks and fund transfers and that the Banks are authorized to rely on the Debtors' designation of any particular check as approved by the Order.

30.      The Debtors have sufficient liquidity to pay the amounts set forth in this Motion in the ordinary course of business and have implemented controls to ensure that prepetition claims will not be paid out except as authorized by this Court.  The Debtors therefore submit that the payment-processing procedures described in this Motion are appropriate.

## EMERGENCY CONSIDERATION

31.      The Debtors respectfully request emergency consideration of this Motion under Bankruptcy Rule 6003(b), which empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  Bankruptcy Rule 6003; *In re First NLC Fin. Servs., LLC*, 382

B.R. 547, 549 (Bankr. S.D. Fla. 2008). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. Specifically, the Fifth Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, courts in this Circuit have explained that irreparable harm requires proof that "(1) the harm to plaintiffs is imminent (2) the injury would be irreparable and (3) that plaintiffs have no other adequate legal remedy." *See, e.g.*, *GoNannies, Inc. v. GoAuPair.Com, Inc.*, 464 F. Supp. 2d 603, 608 (N.D. Tex. 2006) (citing *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975)). The Debtors submit that, for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates. This Motion requests relief from procedural rules and requirements that pertain to matters of immediate significance or which involve deadlines sooner than twenty-one days after the Petition Date. The relief will save costs and avoid undue administrative burden and confusion only if granted immediately. The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

32.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h), which is necessary to implement the relief requested in this Motion. As described above, the relief that the Debtors request in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

33.     Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the discretion of the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

34.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Northern District of Texas; (b) the United States Attorney's Office for the Northern District of Texas; (c) the state attorneys general for all states in which the Debtors conduct business; (d) the Internal Revenue Service; (e) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (f) Sidley Austin, LLP as counsel to  the DIP Lender; (g) White & Case, LLP as counsel to the Ad Hoc Group of Noteholders; (h) the Indenture Trustee; (i) Seward & Kissel, LLP as counsel to the servicer and control party under the A&R Base Indenture; (j)  the Authorities listed in **Exhibit B** to this Motion; (k) banks and financial institutions where the Debtors maintain Accounts; (l) counsel to any statutory committee appointed in these Chapter 11 Cases; and (m)  any party that has requested notice pursuant to Bankruptcy Rule 2002.

The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

35.     The pleadings in these Chapter 11 Cases and supporting papers are available on the Debtors' website at https://cases.ra.kroll.com/Hooters or on the Bankruptcy Court's website at https://ecf.txnb.uscourts.gov/. You can request any pleading you need from (i) the proposed noticing agent at: HootersInfo@ra.kroll.com, (888) 575-4910 (toll-free), +1 (646) 844-3894 or (ii) proposed counsel for the Debtors at: Foley & Lardner LLP, c/o Stephen A. Jones, (sajones@foley.com) or Zachary C. Zahn (zzahn@foley.com), 2021 McKinney Avenue, Suite 1600, Dallas, Texas 75201.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court enter an Order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated:  March 31, 2025

Respectfully submitted by:

*/s/ Holland N. O'Neil*

**FOLEY & LARDNER LLP**
Holland N. O'Neil (TX 14864700)
Stephen A. Jones (TX 24101270)
Zachary C. Zahn (TX 24137675)
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
sajones@foley.com
zzahn@foley.com

**ROPES & GRAY LLP**
Ryan Preston Dahl (*pro hac vice* pending)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
ryan.dahl@ropesgray.com

-and-

**ROPES & GRAY LLP**
Chris L. Dickerson (*pro hac vice* pending)
Rahmon J. Brown (*pro hac vice* pending)
Michael K. Wheat (*pro hac vice* pending)
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
chris.dickerson@ropesgray.com
rahmon.brown@ropesgray.com
michael.wheat@ropesgray.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 31, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Stephen A. Jones*
Stephen A. Jones