**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Hooters of America, LLC, *et al.*,[1] | Case No. 25-80078 (SWE) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF GEORGE N. KOUTSONICOLIS**
**IN SUPPORT OF DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY**
**OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO**
**(A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL,**
**(II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY**
**ADMINISTRATIVE EXPENSE STATUS, (III) MODIFYING THE AUTOMATIC STAY,**
**(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

I, George N. Koutsonicolis, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct:

1. I am a Managing Director at SOLIC Capital Advisors, LLC ("<u>SOLIC</u>"), the proposed investment banker to the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"). SOLIC is an investment banking and financial advisory firm which has its principal office at 150 North Wacker Drive Suite 3000, Chicago, Illinois 60606. SOLIC has expertise providing capital restructuring solutions, mergers and acquisitions, raising debt and equity capital, and other financial advisory services. SOLIC has served as an investment banker

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Hooters of America, LLC (5288); Owl Holdings, LLC (3103); Hawk Parent, LLC (2323); HOA Holdings, LLC (1180); Night Owl, LLC (4511); Owl Wings, LLC (4583); Owl Restaurant Holdings, LLC (7751); HOA Restaurant Group, LLC (7654); Derby Wings Holdings, LLC (8081); Derby Wings, LLC (6578); HOA Gift Cards, LLC (3684); Elf Owl Investments, LLC (3342); TW Lonestar Wings, LLC (3465); Alamo Wings, LLC (3702); HOA Holdco, LLC (8828); HOA Systems, LLC (2439); HOA Funding, LLC (4390); HOA Restaurant Holder, LLC (3883); HOOTS Restaurant Holder, LLC (5840); HOA IP GP, LLC (9555); HOOTS Franchising, LLC (8375); HOA Franchising, LLC (4451); HOA Maryland Restaurant Holder, LLC (1608); HOA Kansas Restaurant Holder, LLC (9045); TW Restaurant Holder, LLC (6927); DW Restaurant Holder, LLC (8261); HI Limited Partnership (2355); HOA Towson, LLC (1942); HOA Waldorf, LLC (5425); HOA Laurel, LLC (5010). The Debtors' service address is 1815 The Exchange SE, Atlanta, GA 30339.

to debtors and creditors in a variety of industries. SOLIC and its senior professionals have extensive experience with respect to the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings.

2. I submit this declaration (the "Declaration") on behalf of SOLIC in support of the relief requested in the *Debtors' Emergency Motion for Entry of an Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "DIP Motion"),[2] filed contemporaneously herewith, which seeks approval of the Debtors' superpriority, senior-secured, priming debtor-in-possession term loan facility (the "DIP Facility") in the aggregate principal amount of up to $40 million, consisting of $35 million of new money term loan facility, and a $5 million roll-up loan facility which shall be used for the roll up and conversion into the DIP Obligations of all obligations under the Manager Advance Credit Agreement on a dollar-for-dollar basis. I am familiar with the DIP Facility and the material terms thereof.

3. Except as otherwise indicated, all statements in this Declaration are based on (a) my personal knowledge of the Debtors' operations and finances, (b) my review of relevant documents, (c) information provided to me by SOLIC employees working under my supervision, (d) information provided to me by, or discussions with, the members of the Debtors' management team or their other advisors, and (e) my opinion based upon my experience as a restructuring professional. If called to testify, I could and would testify to each of the facts set forth herein on the foregoing bases. I am not being compensated specifically for this testimony, although SOLIC

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the DIP Motion.

is expected to be compensated for its work as the Debtors' proposed investment banker in these chapter 11 cases (the "Chapter 11 Cases") pursuant to a retention application to be filed in due course.

## QUALIFICATIONS

4.  SOLIC is an independent restructuring and investment banking financial advisory firm that has a wealth of experience in providing restructuring advisory services. SOLIC has assisted, consulted, and provided strategic advice to debtors, creditors, private equity sponsors, and other stakeholders in numerous chapter 11 cases of similar size and complexity to these Chapter 11 Cases. Specifically, SOLIC's investment banking core services include mergers and acquisitions, capital placement, and restructuring advisory.

5.  I received my B.S. in Chemistry from Loyola University of Chicago, and my M.B.A. from the University of Chicago. I have 20 years of corporate finance, advisory and restructuring experience. Since joining SOLIC, I have provided restructuring advice to companies, creditors, and other interested parties on restructuring transactions both in chapter 11 and on an out-of-court basis.

6.  SOLIC has represented certain of the Debtors pursuant to an engagement agreement, dated as of October 14, 2024 (as may be further amended and restated from time to time, the "Engagement Letter"). Since being formally engaged pursuant to the Engagement Letter and up to the Petition Date, SOLIC has provided extensive prepetition services to Ropes & Gray LLP and the Debtors in preparation for, and to assist Ropes & Gray LLP in advising the Debtors with respect to, the Debtors' restructuring efforts, including, but not limited to the following:

- Reviewing and analyzing the Debtors' businesses, operations, and financial projections;

- Assisting management in evaluating strategic alternatives;

- Review of the Debtors' debt and equity transaction documents and all current, pending and contingent creditor claims and liabilities;

- Conducting meetings and negotiations with various parties in interest, including with respect to the restructuring transactions contemplated by the Restructuring Support Agreement (the "<u>Restructuring Transactions</u>");

- Soliciting financing and restructuring proposals from various parties in interest and third parties;

- Advising the Debtors on restructuring strategies and transactions;

- Assisting in negotiating financing, including negotiating and raising the DIP Facility; and

- Providing additional financial advice and investment banking services in preparation for the filing of these Chapter 11 Cases.

7. As a result of our extensive experience with the Debtors, I, and the SOLIC team, have become familiar with the Debtors' capital structure, liquidity needs and business operations.

8. SOLIC and the Debtors' other advisors met regularly and evaluated a number of strategic and capital structure alternatives, including potential financings, amendments, waivers, forbearances and liability management transactions, as well as potential out-of-court and in-court restructuring options. SOLIC, along with the Debtors' other advisors, played an active role in (a) performing various financial analyses of the Debtors, (b) soliciting and analyzing multiple transaction proposals from various third-party investors, (c) meeting with the Debtors' existing creditor groups and their respective advisors in order to negotiate potential restructuring solutions, (d) preparing for the commencement of these Chapter 11 Cases, and (e) assisting the Debtors with soliciting, negotiating and documenting third party financing proposals and the DIP Facility.

**I.     DEBTORS' EFFORTS TO OBTAIN POSTPETITION FINANCING**

9. In light of the Debtors' decreased profitability and substantial debt service payments and given the limited progress toward a potential out-of-court restructuring, in October 2024, the Debtors determined it appropriate to commence outreach and negotiations around various strategic alternatives which included potential DIP financing. As such, beginning in November 2024, the Debtors, with the assistance of SOLIC and their other professionals, undertook significant analysis to determine the appropriate size and terms of the DIP Facility and commenced a solicitation process for DIP financing that included outreach to third party financing institutions and existing stakeholders.

10. SOLIC commenced a solicitation process for possible DIP financing alternatives (including either a priming or junior DIP financing) by reaching out to various third parties and the Prepetition Lender to solicit interest in providing a DIP financing. The Debtors ultimately received a proposal from the DIP Lenders (who are the Prepetition Lenders). The Debtors, with the assistance of its advisors, rigorously engaged in an arm's length, good faith negotiations with the DIP Lenders. During these negotiations, the Debtors also received a proposal from the AHG Noteholders which was ultimately withdrawn as the AHG Noteholders were in support of the DIP Lenders' proposal. The Debtors and the DIP Lenders exchanged multiple drafts of term sheets, the DIP Credit Agreement, and other DIP Documents. These negotiations culminated in a mutual agreement between the Debtors and the DIP Lenders memorialized by the terms of the DIP Facility.

11. Throughout the process, SOLIC regularly informed Debtors' management team and the Special Committee of the status of the financing process, including negotiations with the DIP Lenders. In the weeks leading up to the Petition Date, the Debtors and their advisors engaged in extensive negotiations with the DIP Lenders to achieve the best possible terms for the

DIP Facility and consensual use of Cash Collateral within the constraints of the Debtors' liquidity and other challenges. During that time, the Debtors and the DIP Lenders exchanged multiple term sheets and drafts of operative documents. Since the DIP Lenders offered the only potentially viable DIP financing proposal, the Debtors determined, with the advice of counsel and other advisors, that the terms of the DIP Facility are the most favorable DIP financing terms available under the circumstances. This process ultimately resulted in the Debtors reaching an agreement with the DIP Lenders on the terms of a DIP Facility in the aggregate principal amount of $40 million, comprised of $35 million of new money term loan facility, and $5 million of roll-up facility converted from obligations under the Manager Advance Credit Agreement on a cashless, dollar-for-dollar basis, in accordance with the terms and conditions set forth in a DIP Credit Agreement.

12. In light of the significant liquidity shortfall and unique circumstances of these cases, I believe that the DIP Lenders presented the only viable, actionable source of debtor-in-possession financing.

## II. THE DIP FACILITY WAS NEGOTIATED IN GOOD FAITH AND AT ARM'S LENGTH AND THE INTEREST RATE AND AGENCY FEE IN CONNECTION WITH DIP FACILITY IS REASONABLE UNDER THE CIRCUMSTANCES

13. Pursuant to the DIP Credit Agreement, the DIP Lender has committed a substantial amount of capital to ensure successful execution of the DIP Facility. In view of those commitments, the lack of postpetition financing alternatives available to the Debtors, and the circumstances of these cases, including the magnitude of the Debtors' Chapter 11 Cases and the tangible benefit to the estates of having a substantial postpetition financing commitment, I believe that the consideration being provided to the DIP Lender for such commitment is reasonable under the circumstances, appropriately compensates those parties for their costs and the assurances they

6

are providing to the process, and are necessary for the Debtors to continue operating their businesses in the ordinary course and maximize the value of their estates.

A. *Interest Rate and Agency Fee*

14. In consideration for the DIP Lenders' commitments in connection with the DIP Facility, the Debtors have agreed, subject to Court approval, to, among other things, (i) pay Agency Fees and an interest at the rate referenced below, and documented out-of-pocket fees and expenses of the legal and financial advisors of each of the DIP Lenders and the DIP Agent and (ii) indemnify the DIP Lenders and the DIP Agent and each of their respective officers, directors, affiliates, attorneys, employees, and agents in accordance with the DIP Credit Agreement.

| | |
|---|---|
| **Interest:** | To be paid in cash on a monthly basis in arrears. <br><br> Interest Rate: Prime + 3.00%; after a default, the applicable rate shall increase by 2.00% *per annum* above the otherwise applicable rate (the "Default Rate"). |
| **Agency Fees**: | As agreed with the DIP Agent. |

B. *Interest Rate and Agency Fees are Reasonable Under the Circumstances*

15. The interest rate under the proposed DIP Facility and the Agency Fees were the subject of arm's-length and good-faith negotiations between the Debtors and the DIP Lenders, are an integral component of the overall terms of the proposed DIP Facility, and were required by the DIP Lenders as consideration for the extension of postpetition financing. The interest rate and the Agency Fees are reasonable under these circumstances and were negotiated at arm's length. The Debtors believe that such terms are the Debtors' best available option to obtain postpetition financing for their Chapter 11 Cases, particularly given the immediate need to access additional liquidity.

16. Based on my experience as a restructuring professional and my understanding of the Debtors' capital structure and need for postpetition financing, the obligations,

interest rate, fees, and milestones under the DIP Facility are reasonable under the circumstances and a product of arms' length negotiation. Further, based on my experience with DIP financing transactions, my involvement in the negotiations thereof, the DIP Facility provides the best postpetition financing option available to the Debtors at this time under these circumstances. Additionally, I believe the DIP Facility is the best path forward in order to effectuate the broader Restructuring Transactions contemplated by the RSA and to signal to the market that the Debtors are able to continue operating in the ordinary course with the full support of all stakeholders.

17. In sum, it is my professional opinion that the terms of the DIP Facility are reasonable under the current circumstances and market conditions, and were the product of good faith, arm's-length negotiations toward the comprehensive Restructuring Transactions and that the DIP Facilities will benefit all stakeholders in these Chapter 11 Cases.

Dated: March 31, 2025

*/s/ George N. Koutsonicolis*
Name: George N. Koutsonicolis
Title: Managing Director
SOLIC Capital Advisors, LLC