## Exhibit A

**Plan**

**ROPES & GRAY LLP**
Ryan Preston Dahl (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
ryan.dahl@ropesgray.com

- and -

**ROPES & GRAY LLP**
Chris L. Dickerson (admitted *pro hac vice*)
Rahmon J. Brown (admitted *pro hac vice*)
Michael K. Wheat (admitted *pro hac vice*)
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
chris.dickerson@ropesgray.com
rahmon.brown@ropesgray.com
michael.wheat@ropesgray.com

*Proposed Counsel to the Debtors*

**FOLEY & LARDNER LLP**
Holland N. O'Neil (TX 14864700)
Stephen A. Jones (TX 24101270)
Zachary C. Zahn (TX 24137675)
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
sajones@foley.com
zzahn@foley.com

*Proposed Co-Counsel to the Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Hooters of America, LLC, *et al.*,[1] | Case No. 25-80078 (SWE) |
| Debtors. | (Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Hooters of America, LLC (5288); Owl Holdings, LLC (3103); Hawk Parent, LLC (2323); HOA Holdings, LLC (1180); Night Owl, LLC (4511); Owl Wings, LLC (4583); Owl Restaurant Holdings, LLC (7751); HOA Restaurant Group, LLC (7654); Derby Wings Holdings, LLC (8081); Derby Wings, LLC (6578); HOA Gift Cards, LLC (3684); Elf Owl Investments, LLC (3342); TW Lonestar Wings, LLC (3465); Alamo Wings, LLC (3702); HOA Holdco, LLC (8828); HOA Systems, LLC (2439); HOA Funding, LLC (4390); HOA Restaurant Holder, LLC (3883); HOOTS Restaurant Holder, LLC (5840); HOA IP GP, LLC (9555); HOOTS Franchising, LLC (8375); HOA Franchising, LLC (4451); HOA Maryland Restaurant Holder, LLC (1608); HOA Kansas Restaurant Holder, LLC (9045); TW Restaurant Holder, LLC (6927); DW Restaurant Holder, LLC (8261); HI Limited Partnership (2355); HOA Towson, LLC (1942); HOA Waldorf, LLC (5425); HOA Laurel, LLC (5010).  The Debtors' service address is 1815 The Exchange SE, Atlanta, GA 30339.

**JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF HOOTERS OF AMERICA, LLC AND ITS AFFILIATED DEBTORS**

# TABLE OF CONTENTS

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** .......................................................................... **1**

    A.    Defined Terms ................................................................................. 1

    B.    Rules of Interpretation .................................................................. 20

    C.    Computation of Time .................................................................... 21

    D.    Governing Law ............................................................................. 21

    E.    Reference to Monetary Figures ..................................................... 21

    F.    Reference to the Debtors .............................................................. 21

    G.    Controlling Document .................................................................. 21

    H.    Certain Consent Rights ................................................................. 22

**ARTICLE II ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS** ............................ **22**

    A.    Administrative Claims ................................................................. 22

    B.    DIP Claims ................................................................................... 24

    C.    Professional Fee Claims ............................................................... 24

    D.    Priority Tax Claims ...................................................................... 25

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ............................................................................................... **26**

    A.    Summary of Classification ........................................................... 26

    B.    Treatment of Claims and Interests ............................................... 27

    C.    Special Provision Governing Unimpaired Claims ......................... 32

    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code 33

    E.    Subordinated Claims .................................................................... 33

    F.    Elimination of Vacant Classes ..................................................... 33

    G.    Voting Classes; Presumed Acceptance by Non-Voting Classes ..... 33

    H.    Controversy Concerning Impairment ........................................... 33

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** .................................... **34**

    A.    Finality of Distributions ............................................................... 34

    B.    No Substantive Consolidation ...................................................... 34

    C.    Sources of Consideration for Plan Distributions .......................... 34

    D.    New Debt ..................................................................................... 34

    E.    New Equity Interests .................................................................... 35

    F.    New Organizational Documents .................................................... 36

    G.    New Board .................................................................................... 36

H.    Vesting of Assets in the Reorganized Debtors ...................................................... 36

I.    Wind-Down Process and Wind-Down Officer ...................................................... 37

J.    Cancellation of Existing Interests, Indebtedness, and Other Obligations ............. 37

K.    Corporate Action ................................................................................................... 39

L.    Effectuating Documents; Restructuring Transactions ........................................... 40

M.    Exemption from Certain Taxes and Fees .............................................................. 41

N.    Preservation of Causes of Action ......................................................................... 41

O.    Insurance Policies ................................................................................................. 42

P.    Closing of Chapter 11 Cases ................................................................................. 43

Q.    Dissolution of Certain Debtors ............................................................................. 43

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ............................................................................................................. 43**

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ......... 43

B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ........... 45

C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ........ 45

D.    Dispute Resolution ................................................................................................ 46

E.    Modifications, Amendments, Supplements, Restatements, or Other Agreements 47

F.    Reservation of Rights ............................................................................................ 47

G.    Nonoccurrence of Effective Date; Bankruptcy Code Section 365(d)(4) .............. 48

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ......................................... 48**

A.    Timing and Calculation of Amounts to Be Distributed ........................................ 48

B.    Rights and Powers of Distribution Agent ............................................................. 48

C.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ........... 49

D.    Securities Registration Exemption ........................................................................ 51

E.    Compliance with Tax Requirements ...................................................................... 52

F.    Allocations ............................................................................................................ 53

G.    No Postpetition Interest on Claims ....................................................................... 53

H.    Setoffs and Recoupment ....................................................................................... 53

I.    Claims Paid or Payable by Third Parties .............................................................. 53

**ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
AND DISPUTED CLAIMS ................................................................................ 54**

A.    Allowance of Claims and Interests ....................................................................... 54

B.    Claims and Interests Administration Responsibilities .......................................... 55

C.    Estimation of Claims ............................................................................................. 55

D.    Adjustment to Claims Register Without Objection ............................................... 55

E.    Time to File Objections to Claims ........................................................ 56

F.    Disallowance of Claims ........................................................................ 56

G.    Amendments to Claims ........................................................................ 56

H.    Disputed Claims Reserve ..................................................................... 56

I.    Distributions After Allowance .............................................................. 57

J.    Single Satisfaction of Claims ............................................................... 58

**ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ........................................................................ 58**

A.    Compromise and Settlement of Claims, Interests, and Controversies ................. 58

B.    Discharge of Claims and Termination of Interests .............................. 58

C.    Releases by the Debtors ...................................................................... 59

D.    Releases by the Releasing Parties ....................................................... 60

E.    Exculpation .......................................................................................... 62

F.    Injunction ............................................................................................ 63

G.    Subordination Rights ........................................................................... 64

H.    Release of Liens .................................................................................. 64

**ARTICLE IX CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN .... 65**

A.    Conditions Precedent to the Effective Date ........................................ 65

B.    Waiver of Conditions ........................................................................... 66

C.    Substantial Consummation .................................................................. 67

D.    Effect of Non-Occurrence of Conditions to the Effective Date ........... 67

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ........................................................................................ 67**

A.    Modification and Amendments ............................................................ 67

B.    Effect of Confirmation on Modifications ............................................. 67

C.    Revocation or Withdrawal of the Plan ................................................ 68

**ARTICLE XI RETENTION OF JURISDICTION ........................................... 68**

**ARTICLE XII MISCELLANEOUS PROVISIONS ......................................... 71**

A.    Votes Solicited in Good Faith ............................................................. 71

B.    Immediate Binding Effect .................................................................... 71

C.    Additional Documents ......................................................................... 72

D.    Payment of Statutory Fees .................................................................. 72

E.    Reservation of Rights .......................................................................... 72

F.    Successors and Assigns ....................................................................... 72

G.    Service of Documents .......................................................................... 72

H.      Term of Injunctions or Stays..................................................................................... 74

I.      Entire Agreement ......................................................................................................... 74

J.      Nonseverability of Plan Provisions............................................................................ 74

K.      Dissolution of Committee ........................................................................................... 75

L.      Expedited Tax Determination ..................................................................................... 75

## INTRODUCTION

Hooters of America, LLC and its Debtor affiliates propose this *Joint Chapter 11 Plan of Reorganization of Hooters of America, LLC and Its Affiliated Debtors*. Capitalized terms used but not otherwise defined shall have the respective meanings ascribed to such terms in Article I.A of the Plan. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    ***Ad Hoc Group*** means the ad hoc group of Holders of Securitization Notes Claims under the Prepetition Securitization Indenture represented by the Ad Hoc Group Advisors.

2.    ***Ad Hoc Group Advisors*** means (i) White & Case LLP, counsel to the Ad Hoc Group, (ii) Gray Reed, local counsel to the Ad Hoc Group, and (iii) M3 Partners, LP, financial advisor to the Ad Hoc Group.

3.    ***Adjourned Cure Dispute*** shall have the meaning ascribed to such term in Article V.D of the Plan.

4.    ***Administrative Claim*** means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (ii) Professional Fee Claims; (iii) Restructuring Expenses; (iv) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; (v) fees payable to the U.S. Trustee pursuant to Section 1930 of the Judicial Code; and (vi) DIP Claims.

5.    ***Administrative Claims Bar Date*** means the deadline for filing request for payment of an Administrative Claim, except for Professional Fee Claims, Restructuring Expenses, and DIP Claims, which shall be the first Business Day that is thirty (30) days following the Effective Date, except as specifically set forth in the Plan or a Final Order, including the Claims Bar Date Order.

6.      **Affiliates** means "Affiliates" as such term is defined in section 101(2) of the Bankruptcy Code when used in reference to a Debtor, and when used in reference to an Entity other than a Debtor, means any other Entity that directly or indirectly wholly owns or controls such Entity or any other Entity that is directly or indirectly wholly-owned or controlled by such Entity.

7.      **Allowed** means with respect to any Claim or Interest, except as otherwise provided herein: (i) a Claim or Interest arising on or before the Effective Date that is either (a) evidenced by a Proof of Claim or Interest that is, as applicable, timely Filed by the Claims Bar Date in accordance with the Claims Bar Date Order, (b) for which Claim under the Plan, the Bankruptcy Code, DIP Orders, or a Final Order of the Bankruptcy Court a Proof of Claim is not or shall not be required to be Filed, (c) listed in the Schedules, if any, as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed by the applicable Claims Bar Date;  (z) Allowed pursuant to the Plan or a Final Order (including the DIP Order) provided that with respect to a Claim or Interest described in clauses (a) - (c) above, such Claim or Interest shall be considered Allowed only if and to the extent that, with respect to such Claim or Interest, no objection to the allowance thereof or motion for estimation has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, if such an objection or motion is so interposed and the Claim or Interest, as applicable, shall have been Allowed by a Final Order; provided, further, that unless expressly waived by the Plan, the Allowed amount of a Claim shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.

8.      **Approved Budget** means the budget approved by the Required DIP Lenders and Required Majority Consenting AHG Noteholders in accordance with the DIP Facility Documents.

9.      **Assumption Dispute** means a pending objection relating to assumption of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

10.      **Assumption Schedule** means the schedule of Executory Contracts and Unexpired Leases that will be assumed by the Debtors pursuant to the Plan, or assumed by the Debtors and assigned to another Entity pursuant to the Plan or the Buyer Group Arrangements, as applicable, to be Filed as part of the Plan Supplement, and as may be amended, supplemented, or modified from time to time in accordance with the Plan, the Confirmation Order, and the Buyer Group Documents.

11.      **Avoidance Actions** means any and all actual or potential avoidance, recovery, subordination, or other similar Claims and Causes of Action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies arising under chapter 5 of the Bankruptcy Code, including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553(b) of the Bankruptcy Code, or other similar related, local, state, federal statutes and common law.

12.      **Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

2

13. ***Bankruptcy Court*** means the United States Bankruptcy Court for the Northern District of Texas having jurisdiction over the Chapter 11 Cases, and, to the extent any reference made under section 157 of the Judicial Code is withdrawn or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the unit of the District Court having jurisdiction over the Chapter 11 Cases under section 151 of the Judicial Code.

14. ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under sections 2075 of title 28 of the United States Code, 27 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

15. ***Brand Co.*** means [●].

16. ***Brand License Agreement*** means that certain agreement between Brand Co. and RoyaltyCo with respect to the brand-related, franchising-related, and management-related functions to be performed by Brand Co. on and after the Effective Date, together with all schedules, exhibits, and ancillary documents thereto.

17. ***Business Day*** means any day, other than a Saturday, Sunday, or "*legal holiday*" (as defined in Bankruptcy Rule 9006(a)), or any other day on which banking institutions in New York, New York are required or authorized to close by law or other governmental action.

18. ***Buyer Group*** means Hooters, Inc. and Hoot Owl Restaurants, LLC, and, as applicable, their respective Buyer Group SPEs.

19. ***Buyer Group APAs*** means the two separate asset purchase agreement by and among the Debtors and the Buyer Group, pursuant to which the Buyer Group (or their respective Buyer Group SPEs) will acquire substantially all assets of certain Debtor-owned restaurants and assume certain limited liabilities related thereto, together with all schedules, exhibits, and ancillary documents thereto, on the terms and conditions set forth in therein.

20. ***Buyer Group Arrangements*** means the series of transactions and agreements contemplated by the Buyer Group APAs and the Brand License Agreement, each of which will be approved by the Bankruptcy Court pursuant to the Plan and the Confirmation Order.

21. ***Buyer Group Documents*** means the Buyer Group APAs, the Brand License Agreement, the Assumption Schedule, the Rejection Schedule, the Plan, and the Confirmation Order, together with all schedules, exhibits, and ancillary documents thereto, which shall be in form and substance reasonably acceptable to the Required Consenting Creditors and the Buyer Group.

22. ***Buyer Group SPE*** means a single purpose entity, wholly-owned, directly or indirectly, by a member of the Buyer Group, which will acquire certain assets and assume certain liabilities, in each case, on the terms and conditions set forth in the Buyer Group APAs.

23. ***Cash*** means the legal tender of the United States of America or the equivalent thereof.

24.    **Cause of Action** means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, "Cause of Action" includes (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) the right to object to Claims or Interests; (iii) any Claim pursuant to section 362; (iv) any claim or defense including fraud, mistake, duress, and usury; and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any Avoidance Actions.

25.    **Chapter 11 Cases** means (i) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (ii) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court under Chapter 11 Case No. 25-80078 (SWE).

26.    **Claim** shall have the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

27.    **Claims Bar Date** means such time and date established pursuant to the Claims Bar Date Order by which Proofs of Claim must be Filed for all Claims and Interests (other than Administrative Claims and Claims held by Governmental Units).

28.    **Claims Bar Date Order** means that certain order entered by the Bankruptcy Court on April 3, 2025 [Docket No. 99], establishing the Claims Bar Date.

29.    **Claims Objection Deadline** means the deadline for objecting to a Claim asserted against a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court, after notice and an opportunity for a hearing, upon a motion by the Reorganized Debtors or Wind-Down Entity that is Filed before the date that is 180 days after the Effective Date.

30.    **Claims Register** means the official register of Claims maintained by Kroll Restructuring Administration LLC, as the claims, noticing, and solicitation agent in the Chapter 11 Cases.

31.    **Class** means any group of Claims or Interests classified under the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

32.    **Class A-2 Notes** means those certain 4.723% senior secured notes, alphanumerically designated as "Class A-2" in accordance with, and outstanding in a principal amount of $266,579,032.04 under the Prepetition Securitization Indenture.

4

33.    ***Class B Notes*** means those certain 7.432% senior secured notes, alphanumerically designated as "Class B" in accordance with, and outstanding in a principal amount of $40,000,000.00 under the Prepetition Securitization Indenture.

34.    ***Combined Hearing*** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code and final approval of the Disclosure Statement.

35.    ***Confirmation*** means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

36.    ***Confirmation Date*** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

37.    ***Confirmation Order*** means the order entered by the Bankruptcy Court approving the Buyer Group Arrangements and confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be consistent with the Restructuring Support Agreement and reasonably acceptable to the Debtors, the Required Consenting Creditors, and the Buyer Group.

38.    ***Consenting AHG Noteholders*** means Holders of the Securitization Notes Claims that are members of the Ad Hoc Group (in each case solely in their capacity as such) or become a party to the Restructuring Support Agreement.

39.    ***Consenting Creditors*** means the Consenting AHG Noteholders and the Prepetition Lenders (in each case solely in their capacity as such).

40.    ***Consenting Stakeholders*** means the Buyer Group, Prepetition Lenders, and the Consenting AHG Noteholders that are or become party to the Restructuring Support Agreement together with their respective successors and permitted assigns.

41.    ***Control Party*** means Drivetrain Agency Services, LLC, not in its individual capacity but solely as the control party as defined under the Prepetition Securitization Indenture.

42.    ***Creditors' Committee*** means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on April 15, 2025, pursuant to the *Appointment of the Official Unsecured Creditors' Committee* [Docket No. 187] as amended by [Docket No. 189].

43.    ***Cure Claim*** means a Claim based upon the applicable Debtor's monetary defaults under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the applicable Debtor pursuant to section 365 of the Bankruptcy Code.

44.    ***Cure Notice*** means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include: (a) procedures for objection to proposed assumptions of Executory Contacts and Unexpired Leases; (b) Cure Claims

5

to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

45.    **_D&O Liability Insurance Policies_** means any insurance policy to which one or more of the Debtors is a party that provides liability coverage for any of the Debtors' directors and officers.

46.    **_Debtor_** means each of the Debtors, in its respective individual capacity as debtor and debtor in possession in the Chapter 11 Cases.

47.    **_Debtors_** means, collectively (i) Hooters of America, LLC; (ii) Owl Holdings, LLC; (iii) Hawk Parent, LLC; (iv) HOA Holdings, LLC; (v) Night Owl, LLC; (vi) Owl Wings, LLC; (vii) Owl Restaurant Holdings, LLC; (viii) HOA Restaurant Group, LLC; (ix) Derby Wings Holdings, LLC; (x) Derby Wings, LLC; (xi) HOA Gift Cards, LLC; (xii) Elf Owl Investments, LLC; (xiii) TW Lonestar Wings, LLC; (xiv) Alamo Wings, LLC; (xv) HOA Holdco, LLC; (xvi) HOA Systems, LLC; (xvii) HOA Funding, LLC; (xviii) HOA Restaurant Holder, LLC; (xix) HOOTS Restaurant Holder, LLC; (xx) HOA IP GP, LLC; (xxi) HOOTS Franchising, LLC; (xxii) HOA Franchising, LLC; (xxiii) HOA Maryland Restaurant Holder, LLC; (xxiv) HOA Kansas Restaurant Holder, LLC; (xxv) TW Restaurant Holder, LLC; (xxvi) DW Restaurant Holder, LLC; (xxvii) HI Limited Partnership; (xxviii) HOA Towson, LLC; (xxix) HOA Waldorf, LLC; and (xxx) HOA Laurel, LLC.

48.    **_Definitive Documents_** means all of the definitive documents implementing the Restructuring Transactions (which, for the avoidance of doubt, shall be Filed and entered in a form acceptable to the Required Consenting AHG Noteholders and the Buyer Group), including: (a) the Restructuring Support Agreement; (b) the Plan (and the Plan Supplement and all related, exhibits, term sheets, or agreements related thereto); (c) the Confirmation Order; (d) the Disclosure Statement and any documents or Solicitation Materials including the Disclosure Statement Approval Order; (e) the first day pleadings and all orders sought pursuant thereto, including the DIP Orders; (f) the DIP Facility Documents; (g) [reserved]; (h) the New Notes Documents; (i) the Buyer Group Documents (including the Buyer Group APAs and the Brand License Agreement); (j) the New Organizational Documents; (k) the Wind-Down Budget; and (l) any documents, instruments, schedules, or exhibits described in, related to, contemplated in, or necessary to implement any of the foregoing.

49.    **_DIP Agent_** means U.S. Bank Trust Company, National Association, in its capacity as collateral agent and calculation agent under the DIP Credit Agreement, and any successor and permitted assign.

50.    **_DIP Claims_** means Claims in respect of any obligations, including all interest, premiums, fees, expenses, and other amounts owing under the DIP Facility Documents and in accordance therewith, held by, or otherwise owing to, any or all of the DIP Agent and the DIP Lenders.

51.    **_DIP Credit Agreement_** means that certain _Superpriority Debtor-In-Possession Credit Agreement_ (as the same may be amended, restated, supplemented, waived, or otherwise modified from time to time) by and among Hawk Parent, LLC and Hooters of America, LLC, as

borrowers, certain subsidiaries from time to time party thereto as guarantors, the lenders from time party thereto, and U.S. Bank Trust Company, National Association, as collateral agent and calculation agent under the DIP Facility.

52.    ***DIP Facility Documents*** means, collectively, the DIP Credit Agreement, the DIP Order, the security and guaranty documents, fee letters, notes, the Approved Budget, and any other ancillary documents entered into in connection therewith.

53.    ***DIP Facility*** means that certain superpriority consensual, priming debtor-in-possession term-loan facility in an aggregate principal amount of up to $40,000,000 on the terms and conditions set forth in the DIP Facility Term Sheet and the DIP Credit Agreement.

54.    ***DIP Lenders*** means, collectively Celtic Master Fund LP and certain of its Affiliates and other persons that become lenders from time to time.

55.    ***DIP Liens*** means Liens on property of the Debtors arising out of or related to the DIP Facility as provided by the DIP Order.

56.    ***DIP Motion*** means the *Motion* Filed by the Debtors on the Petition Date seeking, among other things, entry of an order approving the Debtors' entry into the DIP Facility [Docket No. 4].

57.    ***DIP Noteholders*** means certain Holders of Securitization Notes Claims with the same investment advisor as the DIP Lenders.

58.    ***DIP Order*** means, as applicable, the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 98], the *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief*, and the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*.

59.    ***DIP Roll-Up Amount*** means $5,000,000.

60.    ***Disallowed*** means any Claim, or any portion thereof, that (i) has been disallowed by Final Order,  settlement, the Plan, or Confirmation Order; (ii) is scheduled at zero or as contingent, disputed, or unliquidated on the Schedules and as to which a Claims Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Claims Bar Date Order, or otherwise deemed timely Filed under applicable law; or (iii) is not scheduled on the Schedules and as to which a Claims Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy

Court, including the Claims Bar Date Order, or otherwise deemed timely Filed under applicable law.

61.     **Disclosure Statement** means the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Hooters of America, LLC and its Debtor Affiliates*, Filed by the Debtors in support of the Plan, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time in accordance with, among other things, applicable securities Law, sections 1125 and 1126 of the Bankruptcy Code, Rule 3018 of the Bankruptcy Rules, and other applicable law, in form and substance reasonably satisfactory to the Required Consenting Creditors.

62.     **Disclosure Statement Approval Order** means the [*Order*] entered by the Bankruptcy Court approving the Disclosure Statement.  The Disclosure Statement Order may be the Confirmation Order.

63.     **Disclosure Statement Motion** means the motion of the Debtors seeking entry of an order approving the Disclosure Statement and authorizing solicitation of the Plan.

64.     **Disputed** means, with respect to a Claim, a Claim that is (i) not yet Allowed or Disallowed, (ii) subject to a pending objection that has been Filed and has not been resolved pursuant to a Final Order, or (iii) is listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim is or has been timely Filed in accordance with the Claims Bar Date Order.

65.     **Disputed Claims Reserve** means, with respect to each Debtor, a reserve to be established by the Debtors on or before the Effective Date comprised of Cash or other sources of distributions under the Plan, as applicable, in an amount to be determined by the Debtors in consultation with the Required Consenting Creditors based on the amount of Disputed Claims as of the Combined Hearing.

66.     **Distribution Agent** means, as applicable, the Debtors or the Wind-Down Entity or any Entity that the Debtors or the Wind-Down Entity select, in consultation with the Creditors Committee and the Required Consenting Creditors, to make or to facilitate distributions in accordance with the Plan.

67.     **Distribution Record Date** means, other than with respect to securities deposited with the DTC, the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under the Plan, which date shall be two (2) Business Days following the Confirmation Date or such other date as agreed upon among the Debtors and the Required Consenting Creditors.

68.     **Divested Stores** means the Associated Restaurant Assets to be acquired, and the Associated Restaurant Liabilities to be assumed, by the Buyer Group SPEs on the terms and conditions set forth in the Buyer Group APAs.

69.     **DTC** means the Depository Trust Company.

70. ***Effective Date*** means, with respect to the Plan, the date that is a Business Day selected by the Debtors, in consultation with the Consenting Stakeholders and the Buyer Group, on which (i) no stay of the Confirmation Order is in effect; (ii) all conditions precedent specified in Article IX of the Plan have been satisfied or waived in accordance with the Plan; and (iii) the Plan is declared effective. Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

71. ***Entity*** shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

72. ***Estate*** means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

73. ***Exculpated Fiduciaries*** means, collectively, and in each case solely in their capacities as such: (i) the Debtors, (ii) each independent director of the Debtors, and (iii) the Creditors' Committee and each of its members.

74. ***Executory Contract*** means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

75. ***File***, ***Filed***, or ***Filing*** means file, filed, or filing with the Bankruptcy Court or other court of competent jurisdiction in the Chapter 11 Cases.

76. ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court that has not been reversed, vacated, revoked, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be Filed with respect to such order or judgment.

77. ***General Unsecured Claim*** means any Claim that is neither secured by collateral, subordinated,  nor entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court and is not a: (a) Priority Tax Claim; (b) Priority Non-Tax Claim; (c) Securitization Class A-2 Note Claim; (d) Securitization Class B Note Claim; (e) Non-Securitization Manager Advance Term Loan Claim; (f) Securitization Manager Advance Claim; (g) Other Secured Claim; or (h) Non-Securitization Term Loan Claim (Secured).  For the avoidance of doubt, General Unsecured Claims shall include any Prepetition Term Loan Deficiency Claims and any Claims or cause of action, whether existing now or arising in the future, known or unknown, and whether held by any governmental or quasi-governmental entity—

including but not limited to local, state, federal, or foreign or private party, against any of the Debtors (or their Affiliates) in any way arising out of or relating to the labor practices of the Debtors (or their Affiliates and any independent contractors or third party staffing agencies) or any of their respective predecessors prior to the Effective Date.

78.    ***Governmental Unit*** shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

79.    ***Holder*** means any Person or Entity holding a Claim or an Interest, as applicable, solely in its capacity as such.

80.    ***Impaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

81.    ***Incremental Loan*** means, the $ 5,000,000 funded to the Debtors on February 21, 2025, under the Prepetition MA Credit Agreement.

82.    ***Indemnification Obligations*** has the meaning set forth in <u>Article IV.N.2</u> of the Plan.

83.    ***Insider*** shall have the meaning as set forth in section 101(31) of the Bankruptcy Code.

84.    ***Intercompany Interest*** means an Interest held by a Debtor in another Debtor.

85.    ***Interest*** means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in any Debtor (including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in such Debtor), whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "*stock*" or a similar security.

86.    ***Judicial Code*** means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

87.    ***Lien*** shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

88.    ***Manager Advance*** shall have the meaning given to such term in the Prepetition Securitization Indenture.

89.    ***Master Issuer*** means HOA Funding, LLC, as Master Issuer under the Prepetition Securitization Indenture.

90.    ***New Board*** means the initial board of directors of RoyaltyCo selected in accordance with <u>Article IV.G</u> of the Plan.

91.    ***New Class A-1 Notes*** means the new first-lien, first-out notes to be issued by RoyaltyCo to Holders of DIP Claims under the Plan in a principal amount equal to the New Class

A-1 Principal Amount plus accrued and unpaid interest and on the terms set forth in the New Notes Documents (which shall be consistent with the Restructuring Support Agreement).

92.     *New Class A-1 Principal Amount* means the sum of the DIP Roll-Up Amount and the total new-money component actually funded and outstanding as a Manager Advance under the DIP Facility as of the Effective Date (which new money component shall be funded consistent with the terms of the DIP Order).

93.     *New Class A-2I Notes* means new first-lien notes to be issued by RoyaltyCo to Holders of Allowed Securitization Class A-2 Notes Claims under the Plan in a principal amount equal to that of the Securitization Class A-2 Notes Claims on the terms set forth in the New Notes Documents (which shall be consistent with the Restructuring Support Agreement).

94.     *New Class A-2II Notes* means new first-lien, second-out notes to be issued by RoyaltyCo to Holders of Allowed Manager Advance Term Loan Claims under the Plan in a principal amount not to exceed $18,000,000 on the terms set forth in the New Notes Documents (which shall be consistent with the Restructuring Support Agreement).

95.     *New Class B Notes* new first-lien notes to be issued by RoyaltyCo to Holders of Allowed Securitization Class B Notes Claims under the Plan in a principal amount equal to that of the Securitization Class B Notes Claims on the terms set forth in the New Notes Documents (which shall be consistent with the Restructuring Support Agreement).

96.     *New Debt* means the indebtedness to be issued by RoyaltyCo and guaranteed by the Reorganized Debtors under the New Notes Documents, including the New Class A-1 Notes, New Class A-2I Notes, New Class A-2II Notes, and New Class B Notes.

97.     *New Equity Interests* means the equity interests in RoyaltyCo after giving effect to the Restructuring Transactions.

98.     *New Organizational Documents* means the form of the certificates or articles of incorporation, bylaws, or such other applicable formation documents of RoyaltyCo, in form and substance satisfactory to the Required Consenting Creditors.

99.     *New Notes Documents* means, collectively, the New Notes Indenture and corresponding supplement(s) for the New Class A-1 Notes, New Class A-2I Notes, New Class A-2II Notes, and New Class B Notes, all guarantee and collateral arrangements, and, to the extent required and not addressed exclusively pursuant to the priority of payments provisions in the New Notes Indenture, an intercreditor agreement, and any other documents or agreements the Required Consenting Creditors and the Required DIP Lenders, in their sole discretion, deem necessary to effectuate the Plan and Restructuring Transactions.

100.     *New Notes Indenture* means the new base indenture for each of the New Class A-1 Notes, New Class A-2I notes, New Class A-2II notes, and New Class B notes, to be entered into and effective as of the Effective Date.

101.     *Non-Securitization Entities* means, collectively, Hawk Parent, LLC, HOA Holdings, LLC, Night Owl, LLC, Owl Wings, LLC, Owl Restaurant Holdings, LLC, Owl

Holdings, LLC, Elf Owl Investments, LLC, TW Lonestar Wings, LLC, Alamo Wings, LLC, HOA Restaurant Group, LLC, Derby Wings Holdings, LLC, Derby Wings, LLC, Hooters of America, LLC, and HOA Gift Cards, LLC.

102.    ***Noteholder Equity Entitlement*** means 50% of the New Equity Interests to be allocated among the Holders of Securitization Class B Notes Claims on a *pro rata* basis in accordance with their respective holdings of the Securitization Class B Notes Claims.

103.    ***Non-Securitization Manager Advance Term Loan Claims*** means Parent Funded Debt Claims, to the extent of the value of the Securitization Manager Advance Claims.

104.    ***Non-Securitization Prepetition Equity Interests*** means all Prepetition Equity Interests in the Non-Securitization Entities.

105.    ***Non-Securitization Term Loan Claims (Secured)*** means Parent Funded Debt Claims in excess of the value of the Securitization Manager Advance Claims but only to the extent of any Term Loan Non-Repayment Collateral.

106.    ***Other Intercompany Claim*** means any Claim held by a Debtor or a non-Debtor direct or indirect subsidiary of a Debtor against a Debtor arising before the Petition Date; provided, for the avoidance of doubt, the Other Intercompany Claims shall not include the Securitization Manager Advance Claims.

107.    ***Other Postpetition Intercompany Claim*** means any Claim held by a Debtor or a non- Debtor direct or indirect subsidiary of a Debtor against a Debtor arising after the Petition Date.

108.    ***Other Secured Claim*** means a Secured Claim, other than an Administrative Claim, a DIP Claim, a Priority Tax Claim, a Non-Securitization Manager Advance Term Loan Claim, or a Securitization Notes Claim, including, for the avoidance of doubt, any Claim arising under, derived from, or based upon any letter of credit issued in favor of one or more of the Debtors, the reimbursement obligation for which is either secured by a Lien on collateral of is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

109.    ***Other Securitization Prepetition Equity Interests*** means all Prepetition Equity Interests in the Securitization Entities other than the Master Issuer, HOA Holdco, LLC, and HOA Systems, LLC.

110.    ***Parent Funded Debt Claims*** means, collectively, (i) $8,387,000 in outstanding principal amount, plus all accrued and unpaid interest, fees, and other charges and expenses arising and payable under the Prepetition MA Credit Agreement, plus (ii) the Incremental Loan, plus (iii) $55,976,213 in outstanding principal amount, plus all accrued and unpaid interest, fees, and other charges and expenses arising and payable under the Prepetition Term Loan Credit Agreement, all as secured by the Securitization Manager Advance Claims.

111.    ***Person*** shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

112.    ***Petition Date*** means March 31, 2025.

113.   ***Plan*** means this joint chapter 11 plan of reorganization, including all appendices, exhibits, schedules, and supplements hereto (including any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code, and the terms hereof and with the consent of the Required Consenting Creditors and the Buyer Group.

114.   ***Plan Supplement*** means a supplemental appendix to the Plan containing, among other things, forms of applicable documents, schedules, and exhibits to the Plan to be Filed with the Bankruptcy Court (in each case, in form and substance reasonably satisfactory to the Required Consenting Creditors and, if such document constitutes a Buyer Group Document, the Buyer Group), including, but not limited to, the following: (i) Buyer Group APAs, (ii) Brand License Agreement, (iii) Identities of the New Board, (iv) Schedule of Retained Causes of Action, (v) Shareholders Agreement, (vi) Assumption Schedule, and (vii) Rejection Schedule; provided that through the Effective Date, the Debtors shall have the right to amend the documents contained in the Plan Supplement in accordance with the terms of the Plan and with the consent of the Required Consenting Creditors, and, to the extent such document is a Buyer Group Document, the Buyer Group. The Plan Supplement shall be Filed with the Bankruptcy Court no later than seven (7) calendar days prior to the deadline to object to the Plan.

115.   ***Prepetition Agents*** means US Bank as collateral agent and calculation agent under the Prepetition Term Credit Agreement and US Bank as collateral agent and calculation agent under the Prepetition MA Credit Agreement.

116.   ***Prepetition Credit Agreements*** means the Prepetition Term Loan Credit Agreement and the Prepetition MA Credit Agreement together with all collateral and security documents, control agreements, manager advance acknowledgements, other agreements, guarantees, pledges, instruments, certificates, notes and other documents executed, recorded and/or delivered in connection therewith, including without limitation the "Loan Documents" (as defined in the Prepetition MA Credit Agreement), in each case as amended, amended and restated, supplemented or otherwise modified from time to time.

117.   ***Prepetition Equity Interests*** means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor (in each case whether or not arising under or in connection with any employment agreement).

118.   ***Prepetition Lender Claim*** means any Claim against any Debtor arising under, derived from, based on or related to the loans under the Prepetition MA Credit Agreement or the Prepetition Term Loan Credit Agreement, including, for the avoidance of doubt, any Manager Advances (as defined in the Prepetition Term Loan Credit Agreement), and any guarantees thereof.

119.     ***Prepetition Lenders*** means those certain secured lenders under the Prepetition Credit Agreements that are party to the Restructuring Support Agreement.

120.     ***Prepetition MA Credit Agreement*** means that certain Credit Agreement, dated September 27, 2024 (as amended, modified, or restated from time to time) among Hawk Parent, LLC as borrower, the guarantors party thereto, the lenders thereto, and the administrative and collateral agent.

121.     ***Prepetition Management Agreement*** means that certain Amended and Restated Management Agreement, dated as of August 19, 2021 (as amended, restated, amended and restated, supplemented or otherwise modified and in effect immediately prior to the Petition Date).

122.     ***Prepetition Manager*** means Hooters of America, LLC.

123.     ***Prepetition Securitization Indenture*** means that certain Amended and Restated Base Indenture, dated August 19, 2021, by and between HOA Funding, LLC as the master issuer and CITIBANK, N.A., a national banking association, not in its individual capacity but solely as the indenture trustee under the Prepetition Securitization Indenture.

124.     ***Prepetition Securitization Trustee*** means CITIBANK, N.A., a national banking association, not in its individual capacity but solely as the indenture trustee under the Prepetition Securitization Indenture.

125.     ***Prepetition Term Loan Credit Agreement*** means that certain Credit Agreement, dated March 9, 2022, (as amended supplemented, restated, replaced, or otherwise modified from time to time) among Hawk Parent, LLC as borrower, the guarantors party thereto, the lenders thereto, and the administrative and collateral agent.

126.     ***Prepetition Term Loan Deficiency Claims*** means the Prepetition Lenders' deficiency Claims for the amount of the Parent Funded Debt Claims that exceed the total value of the Securitization Manager Advance Claims and the Term Loan Non-Repayment Right Collateral.

127.     ***Priority Non-Tax Claim*** means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than (i) an Administrative Claim and (ii) a Priority Tax Claim.

128.     ***Priority Tax Claim*** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

129.     ***Pro Rata*** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

130.     ***Professional*** means an Entity (i) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331,

or 363 of the Bankruptcy Code or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

131.    ***Professional Fee Claims*** means all Claims for compensation of any Professional Fees incurred by such Professional on or after the Petition Date through and including the Effective Date to the extent such fees and expenses have not been previously paid pursuant to an order of the Bankruptcy Court.

132.    ***Professional Fee Escrow*** means an escrow account established and funded by the Debtors on the Effective Date in an amount equal to the Professional Fee Reserve Amount pursuant to Article II.C.2 of the Plan.

133.    ***Professional Fee Reserve Amount*** means the aggregate unpaid Professional Fee Claims through and including the Effective Date, as estimated in accordance with Article II.C.3 of the Plan.

134.    ***Professional Fees*** means fees and expenses (including transaction and success fees) incurred by a Professional.

135.    ***Proof of Claim*** means a proof of Claim Filed in the Chapter 11 Cases.

136.    ***Reinstate, Reinstated, or Reinstatement*** means, with respect to Claims and Interests, leaving a Claim or Interest Unimpaired under the Plan.

137.    ***Rejection Schedule*** means the schedule of Executory Contracts and/or Unexpired Leases to be rejected pursuant to the Plan, as may be amended, supplemented, or modified from time to time in accordance with the Plan, and the Confirmation Order.

138.    ***Related Party*** means, in their capacities as such, with respect to (x) any Entity or Person, such Entity's or Person's predecessors, successors and assigns, parents, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, sub-advisors, or managers, (y) with respect to each of the foregoing in clause (x), such Entity's or Person's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, partners, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (z) with respect to each of the foregoing in clause (x), such Entity's or Person's respective heirs, executors, estates, servants, and nominees.

139.    ***Released Parties*** means, collectively, each of the following in their capacity as such: (a)(i) the Debtors, (ii) the Wind-Down Entity, (iii) the Consenting Creditors, (iv) the Sponsors, (v) the DIP Agent, (vi) the DIP Lenders, (vii) the Prepetition Securitization Trustee, (viii) the Control Party, (ix) the Prepetition Agents, and (x) each Holder of a Prepetition Lender Claim or Securitization Notes Claim that votes for, and does not object to, the Plan and (b) with respect to each of the foregoing Entities and Persons in clause (a), all of their respective Related Parties to the maximum extent permitted by law. Notwithstanding the foregoing, any Entity or

Person, other than the Prepetition Securitization Trustee and the Control Party, shall not be a Released Party if it: (x) does not opt into the releases set forth in Article VIII.D of the Plan or (y) Files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector, shall not be deemed a Released Party.

140.    ***Releasing Parties*** means, collectively, each of the following in their capacity as such: (i) all Holders of Claims or Interests that vote to accept the Plan, (ii) all Holders of Claims or Interests that are presumed to accept the Plan, (iii) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan, (iv) all Holders of Claims or Interests who abstain from voting on the Plan (v) each Released Party, (vi) each Related Party to each Entity in clause (i) through (v) solely to the extent such Related Party (a) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an entity in clause (i) through (v) or (b) would be obligated to grant a release under principles of agency if it were so directed by an entity in clauses (i) through (v); provided, that, in each case, an Entity shall not be a Releasing Party if it: (x) does not affirmatively elect to opt into the releases set forth in Article VIII.D of this Plan; or (y) timely objects to the releases set forth in Article VIII.D of this Plan, either through (1) a formal objection Filed on the docket of the Chapter 11 Cases or (2) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, before confirmation.

141.    ***Reorganized Debtors*** means collectively, a Debtor, or any successor or assign thereto, by merger, consolidation, or otherwise, on and after the Effective Date, including any new entity established by the Debtors in connection with the implementation of the Restructuring Transactions. For the avoidance of doubt, Reorganized Debtors shall not include any Wind-Down Entity, Brand Co., or the Buyer Group.

142.    ***Repayment Right*** means the Prepetition Manager's priority right to reimbursement of the Manager Advances that is part of the respective Prepetition Lenders' collateral under the Prepetition Term Loan Credit Agreement and the Prepetition MA Credit Agreement.

143.    ***Required Consenting AHG Noteholders*** means, as of the date of determination, Consenting AHG Noteholders holding, collectively, in excess of 66.67% of the aggregate outstanding principal amount of the Securitization Class A-2 Note Claims and the Securitization Class B Note Claims held by the Consenting AHG Noteholders (which, for the avoidance of doubt, shall be calculated without reference to Securitization Notes Claims held by the DIP Noteholders).

144.    ***Required Consenting Creditors*** means the Required Consenting AHG Noteholders (which, for the avoidance of doubt, shall be calculated without reference to Securitization Notes Claims held by the DIP Noteholders) and the Required Prepetition Lenders (in each case solely in their capacity as such).

145.    ***Required DIP Lenders*** means the DIP Lenders having DIP Loans and unused commitments representing more than 50% of the aggregate outstanding DIP Loans and unused commitments at such time.

146.   ***Required Majority Consenting AHG Noteholders*** means Consenting AHG Noteholders collectively holding in excess of 50% of the aggregate outstanding principal amount of the Securitization Notes Claims collectively held by the Consenting AHG Noteholders.

147.   ***Required Prepetition Lenders*** means, as of the date of determination, Prepetition Lenders holding at least 66.67% in aggregate outstanding principal amount of the Prepetition Lender Claims.

148.   ***Restructuring Expenses*** means the reasonable and documented fees and expenses related to the negotiation and implementation of the Restructuring Transactions pursuant to the Restructuring Support Agreement, incurred by the Prepetition Agents, the Ad Hoc Group, any Prepetition Lenders, any DIP Lender, the Prepetition Securitization Trustee, and the Control Party, including but not limited to the fees and expenses of: (i)  White & Case LLP, Sidley Austin LLP, and any other counsel; (ii)  Houlihan Lokey, Inc., as financial advisor to the Prepetition Lenders and DIP Lenders; and (iii) M3 Partners, LP, as financial advisor to the Ad Hoc Group.

149.   ***Restructuring Support Agreement*** means that certain Restructuring Support Agreement, dated as of March 31, 2025, by and between the Debtors and the Consenting Stakeholders, as the same may be amended, supplemented, or modified from time to time in accordance with its terms.

150.   ***Restructuring Transactions*** shall have the meaning set forth in <u>Article IV.K.1</u> of the Plan.

151.   ***Retained Causes of Action*** means the Causes of Action, if any, that belong to the Debtors or their Estates under section 1123(b)(3) of the Bankruptcy Code and are preserved and retained by the applicable Reorganized Debtors or Wind-Down Entity under the Plan, and are not released, waived or transferred to another Person pursuant to the Plan, which shall include (but not be limited to) all Causes of Actions or other claims  identified on the Schedule of Retained Causes of Action; provided, that the Retained Causes of Action shall not include any Causes of Action assigned or transferred to the Buyer Group or Brand Co. pursuant to the Buyer Group Documents (which, for the avoidance of doubt, shall be transferred to the Buyer Group or Brand Co. in accordance with the Buyer Group Documents).

152.   ***RoyaltyCo*** means, HOA Funding, LLC, as reorganized under the Plan and renamed pursuant to the New Organizational Documents on and after the Effective Date.

153.   ***Schedule of Retained Causes of Action*** means a schedule of certain Claims and Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan; provided, that in no instance shall Claims or Causes of Action against any Released Party or any Exculpated Party that is released pursuant to <u>Article VIII</u> of the Plan be retained.

154.   ***Schedules*** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs to be Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as the same may be amended, supplemented, or modified from time to time.

155.   **Secured Claim** means a Claim (a) secured by a Lien on any Debtor's interest in property, which Lien is valid, perfected, and enforceable pursuant to applicable law,  to the extent of the value of such interest as (i) set forth in the Plan, (ii) agreed to by the holder of such Claim and the Debtors, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code (including the DIP Order) or (b) secured by the amount of any right of setoff of the Holder thereof in accordance with section 553 of the Bankruptcy Code.

156.   **Securities Act** means the U.S. Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, together with the rules and regulations promulgated thereunder.

157.   **Security** shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

158.   **Securitization Class A-2 Note Claims** means $266,579,032.04 in outstanding principal amount of Class A-2 Notes, plus all accrued and unpaid interest, fees, and other charges and expenses arising and payable under the Prepetition Securitization Indenture, as supplemented by the Series 2021-1 Supplement, each dated August 19, 2021, in each case, to the Holders of Class A-2 Notes, and all other notes documents in connection therewith.

159.   **Securitization Class B Note Claims** means $40,000,000 in outstanding principal amount of Class B Notes, plus all accrued and unpaid interest, fees, and other charges and expenses arising and payable under the Prepetition Securitization Indenture, as supplemented by the Series 2021-1 Supplement, each dated August 19, 2021, in each case, to the Holders of Class B Notes, and all other notes documents in connection therewith.

160.   **Securitization Entities** means, collectively, HOA Funding, LLC, HOA Holdco, LLC, HOA Systems, LLC, HOA Restaurant Holder, LLC, HOOTS Restaurant Holder, LLC, HOA IP GP, LLC, HOOTS Franchising, LLC, HOA Franchising, LLC, HOA Maryland Restaurant Holder, LLC, HOA Kansas Restaurant Holder, LLC, TW Restaurant Holder, LLC, DW Restaurant Holder, LLC, HI Limited Partnership, HOA Towson, LLC, HOA Waldorf, LLC, and HOA Laurel, LLC.

161.   **Securitization Manager Advance Claims** means the claim of the Prepetition Manager against the Securitization Entities, which is Allowed hereunder, for reimbursement of (a) prepetition Manager Advances totalling $28,338,913 (including the Manager Advance made with proceeds of the Incremental Loan), (b) all additional Manager Advances extended to the Securitization Entities during the pendency of the Chapter 11 Cases in accordance with the DIP Order (including the Approved Budget) (c) accrued and unpaid interest, fees, and other charges and expenses arising and payable in respect of any such Manager Advances under the Prepetition Management Agreement, and (d) any other Manager Advances that form part of the "Obligations" (as defined in the Prepetition Securitization Indenture (as amended, restated, amended and restated or otherwise modified from time to time).

162.   **Securitization Notes Claims** means, collectively, the Securitization Class A-2 Note Claims and the Securitization Class B Note Claims, which for the avoidance of doubt shall include any Securitization Class A-2 Note Claims and any Securitization Class B Note Claims held by the DIP Noteholders.

163.    ***Securitization Noteholders*** means the Holders of Securitization Notes Claims.

164.    ***Securitization Notes Documents*** means the Prepetition Securitization Indenture together with all other agreements, guarantees, pledges, collateral and security documents, management agreements, control agreements, instruments, certificates, notes and other documents executed, recorded and/or delivered in connection therewith, including the "Indenture Documents" and "Related Documents" (each as defined in the Prepetition Securitization Indenture), in each case as amended, amended and restated, supplemented or otherwise modified from time to time.

165.    ***Securitization Prepetition Master Issuer Equity Interests*** means the Prepetition Equity Interests in the Master Issuer.

166.    ***Shareholders Agreement*** means any shareholders agreement, equity holders agreement, operating agreement, or other similar agreement for RoyaltyCo, as applicable, to which Holders of New Equity Interests shall become party to on or immediately after the Effective Date governing, among other things, the relative rights of Holders of New Equity Interests.

167.    ***Sponsors*** means the Holders of Interests in Hawk Parent, LLC.

168.    ***Solicitation Materials*** means all documents, forms, and other materials provided in connection with the solicitation of votes on this Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code.

169.    ***Term Loan Non-Repayment Right Collateral*** means any and all collateral securing the obligations under the Prepetition Term Loan Credit Agreement and Prepetition Manager Advance Credit Agreement other than the Repayment Right.

170.    ***U.S. Trustee*** means the Office of the United States Trustee for the Northern District of Texas.

171.    ***Unallocated Stores*** means the Excluded Assets and Excluded Liabilities that relate to stores owned by the Debtors that are not acquired by the Buyer Group pursuant to the Buyer Group Arrangements.

172.    ***Unexpired Lease*** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

173.    ***Unimpaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

174.    ***Voting Deadline*** means the date by which all Persons or Entities entitled to vote on the Plan must vote to accept or reject the Plan and submit an election with respect to the releases by holders of Claims and Interests provided in Article VIII.D of the Plan in accordance with the Disclosure Statement Approval Order.

175.    ***Waterfall*** means the priority of payments waterfall for the reimbursement of Manager Advances pursuant to the Prepetition Management Agreement, as may be amended from time to time in accordance with the terms of the Plan.

176. **_Wind-Down Budget_** means the budget governing the fees, expenses, and disbursements required to fund the Wind-Down Process, which shall be in form and substance reasonably acceptable to the Required Consenting Creditors.

177. **_Wind-Down Entity_** means, collectively, one or more liquidating trusts or other entities established for the purpose of winding down the Debtors' estates and otherwise implementing the Plan, which shall be acceptable to the DIP Lenders and Required Consenting AHG Noteholders; the Wind-Down Entities may be composed of one or more of the Non-Securitization Entities, and HOA Holdco, LLC and HOA Systems, LLC.[2]

178. **_Wind-Down Officer_** means the Person or Entity appointed pursuant to <u>Article IV.I</u> of the Plan, in his or her capacity as such, to oversee the Wind-Down Process.

179. **_Wind-Down Process_** means, upon the Effective Date, the orderly wind-down of the Wind-Down Entities in accordance with the Wind-Down Budget.

B. *Rules of Interpretation*

For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) except as otherwise specified herein, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan; (iv) unless otherwise specified herein, all references herein to "Articles" are references to Articles of the Plan or hereto; (v) unless otherwise stated herein, the words "herein," "hereof," and "hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (viii) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (x) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases; (xi) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (xii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (xiii) any immaterial effectuating

---

[2]   The Composition of the Wind-Down Entities shall be determined prior to Confirmation in consultation with the Required Consenting Creditors.

provisions may be interpreted by the Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (xiv) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; and (xv) any reference to an Entity as a Holder of a Claim or Interest includes such Entity's permitted successors and assigns.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, that corporate or limited liability company governance matters relating to the Debtors not incorporated or formed (as applicable) in the State of New York shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors, the Reorganized Debtors, or the Wind-Down Entity shall mean the Debtors and the Reorganized Debtors or the Wind-Down Entity, as applicable, to the extent the context requires.

G.      *Controlling Document*

In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement) and the terms and provisions in the Disclosure Statement, the Plan Supplement (other than the Buyer Group Documents), any other instrument or document created or executed pursuant to the Plan (other than the Buyer Group Documents), or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), the Plan (without reference to the Plan Supplement) shall govern and control; provided, however, that in the event of a conflict between the Confirmation Order, on the one hand, and any of the Plan and the Plan Supplement, on the other hand, the Confirmation Order shall govern and control in all respects. In the event of any

inconsistency between the Plan and the Buyer Group Documents, the Buyer Group Documents shall control.

H.      *Certain Consent Rights*

Notwithstanding anything in the Plan to the contrary, any and all consent rights set forth in the Restructuring Support Agreement with respect to the form and substance of the Plan and the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A of the Plan) and fully enforceable as if stated in full herein, subject to the limitations and other terms and conditions set forth in the Restructuring Support Agreement.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the Restructuring Support Agreement shall not impair such rights and obligations.

Further, any and all consultation, information, notice, and consent rights of the DIP Agent and DIP Lenders as set forth in the DIP Facility Documents and DIP Order, as applicable, relating to the form and substance of this Plan, all exhibits to the Plan, the Plan Supplement, all other Definitive Documents, and any consents, waivers, or other rights under or from any such documents, shall be incorporated herein by this reference and fully enforceable as if stated in full herein.  Failure to reference such rights in specific provisions of this Plan shall not impair such rights and obligations.

Further, any and all consultation, information, notice, and consent rights of the Buyer Group as set forth in the Buyer Group Documents, as applicable, relating to the form and substance of this Plan, all exhibits to the Plan, the Plan Supplement, all other Definitive Documents, and any consents, waivers, or other rights under or from any such documents, shall be incorporated herein by this reference and fully enforceable as if stated in full herein.  Failure to reference such rights in specific provisions of this Plan shall not impair such rights and obligations.

**ARTICLE II**

**ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Priority Tax Claims, and Administrative Claims, including Professional Fee Claims, and Other Postpetition Intercompany Claims, have not been classified and, thus, are excluded from the classification of Claims and Interests set forth in Article III of the Plan.

A.      *Administrative Claims*

Except with respect to Professional Fee Claims and Restructuring Expenses, and except to the extent that an Administrative Claim (i) has been assumed by the Buyer Group or Brand Co. under the terms and conditions set forth in the Buyer Group Documents, (ii) has already been paid during the Chapter 11 Cases or (iii) a Holder of an Allowed Administrative Claim and the applicable Debtor agree to less favorable treatment, each Holder of an Allowed Administrative

Claim shall be paid in full in Cash (x) on the Effective Date, if such Administrative Claim is Allowed as of the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter) or (y) if such Administrative Claim is not Allowed as of the Effective Date, upon entry of an order of the Bankruptcy Court Allowing such Claim, or as soon as reasonably practicable thereafter; provided that if an Allowed Administrative Claim arises from liabilities incurred by the Debtors' Estates in the ordinary course of business after the Petition Date, such Claim shall be paid in accordance with the terms and conditions of the particular transaction giving rise to such Claim in the ordinary course.

On the later of (a) the Effective Date and (b) the date on which such fees, expenses, or disbursements would be required to be paid under the terms of the DIP Order, the Debtors, the Reorganized Debtors, or the Wind-Down Entity, as applicable, shall pay in full in Cash all Restructuring Expenses due and owing pursuant to invoices delivered to the Debtors at least one (1) Business Day prior to the Effective Date and that are required to be paid under or pursuant to the DIP Order.

Except as otherwise provided in this Article II.A or the Claims Bar Date Order, and except with respect to Administrative Claims that are DIP Claims, Restructuring Expenses, or Professional Fee Claims, requests for payment of Administrative Claims must be Filed and served on the Debtors or, from and after the Effective Date, the Reorganized Debtors and Wind-Down Entity pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date; provided that the Administrative Claims Bar Date does not apply to Professional Fee Claims or Administrative Claims arising in the ordinary course of business.

**HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIMS AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE WIND-DOWN ENTITY, THE ESTATES, OR THE PROPERTY OF ANY OF THE FOREGOING, AND SUCH ADMINISTRATIVE CLAIMS SHALL BE DEEMED DISCHARGED AS OF THE EFFECTIVE DATE.**

Objections to such requests, if any, must be Filed and served on the Debtors, or from and after the Effective Date, the Reorganized Debtors and the Wind-Down Entity (if not the objecting party) and the requesting party on or before the Claims Objection Deadline.

For the avoidance of doubt, any dispute with respect to the amount of an Assumed Liability (as defined in the Buyer Group Documents) under the Buyer Group Documents shall be resolved between the Brand Co. or the Buyer Group, as applicable, and the Holder of such Assumed Liability.

B.    *DIP Claims*

All DIP Claims shall be deemed Allowed as of the Effective Date in an amount equal to the New Class A-1 Principal Amount plus all interest accrued and unpaid thereon through and including the date of payment.

Except to the extent that a Holder of a DIP Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such DIP Claim, and subject to <u>Article II.B.</u>, on the Effective Date or as soon as reasonably practicable thereafter, each such Holder of a DIP Claim shall receive, pursuant to the Restructuring Transactions, New Class A-1 Notes issued by RoyaltyCo in an amount equal to its respective DIP Claims.

C.    *Professional Fee Claims*

1.    <u>FINAL FEE APPLICATIONS</u>

All final requests for payment of Professional Fee Claims must be Filed with the Bankruptcy Court no later than the first Business Day that is sixty (60) calendar days after the Effective Date unless otherwise ordered by the Bankruptcy Court. Objections to any Professional Fee Claims must be Filed and served on counsel to the Debtors, counsel to the Ad Hoc Group, counsel to the DIP Lender, counsel to the Creditors' Committee, the U.S. Trustee, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the Debtors and the party requesting compensation of a Professional Fee Claim).

2.    <u>PROFESSIONAL FEE ESCROW</u>

If the Professional Fee Reserve Amount is greater than zero, as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount, and no Liens, claims, or interests shall encumber the Professional Fee Escrow in any way (whether on account of the New Debt or otherwise). The Professional Fee Escrow Account (including funds held in the Professional Fee Escrow Account) (i) shall not be and shall not be deemed property of the Debtors, the Estates, the Reorganized Debtors, or the Wind-Down Entity and (ii) shall be held in trust for the Professionals; <u>provided</u>, <u>that</u> funds remaining in the Professional Fee Escrow after all Professional Fee Claims have been Allowed and irrevocably paid in full or Disallowed shall promptly be paid to RoyaltyCo without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. Allowed Professional Fee Claims shall be paid in Cash by the Debtors, the Reorganized Debtors, or the Wind-Down Entity, as applicable, to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court.  For the avoidance of doubt, the Professional Fee Escrow shall not constitute collateral, including for the DIP Lenders, the DIP Agent, the Holders of Prepetition Lender Claims, the Prepetition Credit Agreements Agent, the Holders of Securitization Notes Claims, or be subject to claims, including any DIP Claims, Adequate Protection Claims, 507(b) Claims, or claims held by the Prepetition Lenders or the Securitization Noteholders, and shall not be subject to any cash sweep and/or foreclosure

provisions in the Prepetition Credit Agreements, the Prepetition Securitization Indenture, or the DIP Facility Documents, nor shall the Prepetition Lenders, the Securitization Noteholders, or the DIP Lenders  be entitled to sweep or foreclose on such amounts notwithstanding any provision to the contrary in the Prepetition Credit Agreements, the Prepetition Securitization Indenture, the DIP Facility Documents, or the DIP Order

3.      PROFESSIONAL FEE RESERVE AMOUNT

No later than one (1) Business Day prior to the Effective Date, holders of Professional Fee Claims shall provide a reasonable estimate of unpaid Professional Fee Claims incurred in rendering services to the Debtors prior to approval by the Bankruptcy Court through and including the Effective Date, including any fees and expenses projected to be outstanding as of the Effective Date, and the Debtors shall escrow such estimated amounts for the benefit of the holders of the Professional Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties; provided, that such estimate shall not be deemed to limit the amount of fees and expenses that are the subject of a Professional's final request for payment of Filed Professional Fee Claims. If a holder of a Professional Fee Claim does not provide an estimate, the Debtors shall estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Professional Fee Claim. When all Professional Fee Claims have been Allowed and paid in full or Disallowed, any remaining amount in such escrow shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Reorganized Debtors without any further action or order of the Bankruptcy Court.

4.      POST-EFFECTIVE DATE FEES AND EXPENSES

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Reorganized Debtors or Wind-Down Entity shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan incurred after the Effective Date by (i) the Debtors,  (ii) the DIP Lenders, (iii) the Ad Hoc Group, (iv) the Prepetition Securitization Trustee, and (v) Creditors' Committee, within five (5) Business Days of receipt of invoice therefor. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors and Wind-Down Entity may employ and pay any Professional for fees incurred after the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the applicable Debtor agree to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive cash equal to the full amount of its Claim or such other treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code, and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims shall receive interest on such

Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Summary of Classification*

All Claims and Interests, except for Claims addressed in Article II of the Plan, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below.  The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.  Classes 2, 3, 7, 11, and 12 are comprised of Claims or Interests in or against the Securitization Entities.  Classes 4, 6, and 13 are comprised of Claims or Interests in or against the Non-Securitization Entities.  Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Article III.F of the Plan.

1.    CLASS IDENTIFICATION

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Securitization Class A-2 Note Claims | Impaired | Yes |
| 3 | Securitization Class B Note Claims | Impaired | Yes |
| 4 | Non-Securitization Manager Advance Term Loan Claims | Impaired | Yes |
| 5 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 6 | Non-Securitization Term Loan Claims (Secured) | Unimpaired | No (Presumed to Accept) |
| 7 | Securitization Manager Advance Claims | Impaired | No (Deemed to Reject) |
| 8 | General Unsecured Claims | Impaired | No (Deemed to Reject) |
| 9 | Other Intercompany Claims | Impaired | No (Deemed to Reject) |
| 10 | Intercompany Interests | Impaired | No (Deemed to Reject) |
| 11 | Securitization Prepetition Master Issuer Equity Interests | Impaired | No (Deemed to Reject) |
| 12 | Other Securitization Prepetition Equity Interests | Unimpaired | No (Presumed to Accept) |
| 13 | Non-Securitization Prepetition Equity Interests | Impaired | No (Deemed to Reject) |

B.     *Treatment of Claims and Interests*

1.     <u>CLASS 1 – PRIORITY NON-TAX CLAIMS</u>

a.     *CLASSIFICATION*: Class 1 consists of all Priority Non-Tax Claims.

b.     *TREATMENT*: Except to the extent that a Holder of an Allowed Priority Non-Tax Claim against the Debtors agrees to a less favorable treatment of such Claim, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim, at the option of the Debtors: (i) each such holder shall receive payment in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is reasonably practicable; or (ii) on the Effective Date, such other treatment as to render such Holder's Allowed Priority Non-Tax Claim unimpaired.

c.     *VOTING*: Class 1 is Unimpaired under the Plan. Each Holder of a Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan,

and the votes of such Holders shall not be solicited with respect to Priority Non-Tax Claims.

2. <u>CLASS 2 – SECURITIZATION CLASS A-2 NOTE CLAIMS</u>

    a.    *CLASSIFICATION*: Class 2 consists of all Securitization Class A-2 Note Claims.

    b.    *TREATMENT*: Except to the extent that a Holder of a Securitization Class A-2 Note Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, on the Effective Date or as soon as reasonably practicable thereafter, each such Holder shall receive, pursuant to the Restructuring Transactions, New Class A-2I Notes issued by RoyaltyCo in an amount equal to its respective Allowed Securitization Class A-2 Note Claims, which Securitization Class A-2 Note Claims are Allowed in full.

    c.    *VOTING:* Class 2 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

3. <u>CLASS 3 – SECURITIZATION CLASS B NOTE CLAIMS</u>

    a.    *CLASSIFICATION*: Class 3 consists of all Securitization Class B Note Claims.

    b.    *TREATMENT*: On or after the Effective Date, each holder of Securitization Class B Notes will receive (i) its Pro Rata share of the Noteholder Equity Entitlement and (ii) New Class B Notes issued by RoyaltyCo in an amount equal to its respective Allowed Securitization Class B Note Claims, which Securitization Class B Note Claims are Allowed in full.

    c.    *VOTING*: Class 3 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

4. <u>CLASS 4 – NON-SECURITIZATION MANAGER ADVANCE TERM LOAN CLAIMS</u>

    a.    *CLASSIFICATION*: Class 4 consists of all Non-Securitization Manager Advance Term Loan Claims.

    b.    *TREATMENT*: Except to the extent that a Holder of an Allowed Non-Securitization Manager Advance Term Loan Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Non-Securitization Manager Advance Term Loan Claim, on the Effective Date, each such Holder shall receive, pursuant to the Restructuring Transactions, its Pro Rata share (based on its respective Non-Securitization Manager Advance Term Loan Claim) of (i) New Class A-2II Notes issued

28

by RoyaltyCo which will be subject to the terms and conditions in the New Notes Documents and (ii) 50% of the New Equity Interests.

c.    *VOTING*: Class 4 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

5.    <u>CLASS 5 – OTHER SECURED CLAIMS</u>

a.    *CLASSIFICATION*: Class 5 consists of all Other Secured Claims.

b.    *TREATMENT*: Except to the extent that a Holder of an Allowed Other Secured Claim against the Debtors agrees to a less favorable treatment of such Claim, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Other Secured Claim, at the option of the Debtors: (i) each such Holder shall receive Cash in an amount equal to the Allowed amount of such Claim on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Claim; (ii) on the Effective Date, such Holder's Allowed Other Secured Claim shall be Reinstated; (iii) on the Effective Date, such Holder shall receive such other treatment sufficient to render such Holder's Allowed Other Secured Claim Unimpaired; or (iv) on the Effective Date, such Holder shall receive delivery of, or shall retain, the applicable collateral securing any such Claim up to the secured amount of such Claim pursuant to section 506(a) of the Bankruptcy Code and payment of any interest required under section 506(b) of the Bankruptcy Code in satisfaction of the Allowed amount of such Other Secured Claim.

c.    *VOTING*: Class 5 is Unimpaired under the Plan. Each Holder of an Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to Other Secured Claims.

6.    <u>CLASS 6 – NON-SECURITIZATION TERM LOAN CLAIMS (SECURED)</u>

a.    *CLASSIFICATION*: Class 6 consists of all Non-Securitization Term Loan Claims (Secured).

b.    *TREATMENT*:  Except to the extent that a Holder of an Allowed Non-Securitization Term Loan Claim (Secured) against the Debtors agrees to a less favorable treatment of such Claim, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Non-Securitization Term Loan Claims (Secured), on the Effective Date, Holders of Allowed Non-Securitization Term Loan Claims (Secured) shall receive the value of any Term Loan Non-Repayment Right Collateral and/or any proceeds of such Term Loan Non-Repayment Right Collateral,

29

as applicable, which Non-Securitization Term Loan Claims (Secured) are Allowed in full to the extent of the value of any Term Loan Non-Repayment Right Collateral.

c.    *VOTING*: Class 6 is Unimpaired under the Plan. Each Holder of Non-Securitization Term Loan Claims (Secured) is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Non-Securitization Term Loan Claims (Secured) are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to the Non-Securitization Term Loan Claims (Secured).

7.    <u>CLASS 7 – SECURITIZATION MANAGER ADVANCE CLAIMS</u>

a.    *CLASSIFICATION*: Class 7 consists of all Securitization Manager Advance Claims.

b.    *TREATMENT*: Holders of Class 7 Securitization Manager Advance Claims agree that the treatment provided to Class 4 Non-Securitization Manager Advance Term Loan Claims and the DIP Claims in <u>Article II.B</u> of this Plan shall be in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for all Class 7 Securitization Manager Advance Claims.

c.    *VOTING*: Class 7 is Impaired under the Plan. Holders of Securitization Manager Advance Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Securitization Manager Advance Claims are not entitled to vote to accept or reject the Plan.

8.    <u>CLASS 8 – GENERAL UNSECURED CLAIMS</u>

a.    *CLASSIFICATION*: Class 8 consists of all General Unsecured Claims.

b.    *TREATMENT*: On the Effective Date, General Unsecured Claims shall be cancelled, released, discharged, and extinguished as of the Effective Date and shall be of no further force or effect, and Holders of General Unsecured Claims shall not receive any distribution on account of such Claims.

c.    *VOTING:* Class 8 is Impaired under the Plan. Holders of General Unsecured Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan.

9.    <u>CLASS 9 – OTHER INTERCOMPANY CLAIMS</u>

a.    *CLASSIFICATION*: Class 9 consists of all Other Intercompany Claims.

b.    *TREATMENT*: On the Effective Date, except as provided herein, including with respect to the Securitization Manager Advance Claims, (i) each allowed Intercompany Claim shall either be cancelled, released, reinstated, contributed, distributed, or transferred such that  Other Intercompany Claims are, to the extent reasonably practicable, treated in a tax-efficient manner and (ii) no distributions shall be made on account of any Other Intercompany Claims.

c.    *VOTING*: Except as provided herein, including with respect to the Securitization Manager Advance Claims, holders of allowed Other Intercompany Claims will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of allowed Other Intercompany Claims will not be entitled to vote to accept or reject the Plan.

10.    CLASS 10 – INTERCOMPANY INTERESTS

a.    *CLASSIFICATION*: Class 10 consists of all Intercompany Interests.

b.    *TREATMENT*: On the Effective Date, each Intercompany Interest shall either be cancelled, released, extinguished, reinstated, or transferred pursuant to the Buyer Group Arrangements such that Intercompany Interests are, to the extent reasonably practicable, treated in a tax-efficient manner. Each holder of an Intercompany Interest shall not receive or retain any distribution, property, or other value on account of its Intercompany Interest.

c.    *VOTING*: Class 10 is Impaired under the Plan. Holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

11.    CLASS 11 – SECURITIZATION PREPETITION MASTER ISSUER EQUITY INTERESTS

a.    *CLASSIFICATION*: Class 11 consists of all Securitization Prepetition Master Issuer Equity Interests.

b.    *TREATMENT*: On the Effective Date, Securitization Prepetition Master Issuer Equity Interests shall be cancelled, released, and extinguished, and be of no further force or effect, whether surrendered for cancellation or otherwise, and there shall be no distributions for Holders of Securitization Prepetition Master Issuer Equity Interests on account of such Interests.

c.    *VOTING*: Class 11 is Impaired under the Plan. Holders of Securitization Prepetition Master Issuer Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore,

Holders of Securitization Prepetition Master Issuer Equity Interests are not entitled to vote to accept or reject the Plan.

12.    <u>CLASS 12 – OTHER SECURITIZATION PREPETITION EQUITY INTERESTS</u>

 a. *CLASSIFICATION*: Class 12 consists of all Other Securitization Prepetition Equity Interests.

 b. *TREATMENT*: On the Effective Date, Other Securitization Prepetition Equity Interests shall continue in full force and shall not be impaired.

 c. *VOTING*: Class 12 is Unimpaired under the Plan. Holders of Other Securitization Prepetition Equity Interests are presumed to have accepted the Plan. Therefore, Holders of Other Securitization Prepetition Equity Interests are not entitled to vote to accept or reject the Plan.

13.    <u>CLASS 13 – NON-SECURITIZATION PREPETITION EQUITY INTERESTS</u>

 a. *CLASSIFICATION*: Class 13 consists of all Non-Securitization Prepetition Equity Interests.

 b. *TREATMENT*: On the Effective Date, Non-Securitization Prepetition Equity Interests shall be cancelled, released, and extinguished, and be of no further force or effect, whether surrendered for cancellation or otherwise, and there shall be no distributions for Holders of Non-Securitization Prepetition Equity Interests on account of such Interests.

 c. *VOTING*: Class 13 is Impaired under the Plan. Holders of Non-Securitization Prepetition Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Non-Securitization Prepetition Equity Interests are not entitled to vote to accept or reject the Plan.

C. *Special Provision Governing Unimpaired Claims*

Except as otherwise specifically provided in the Plan, nothing herein shall be deemed to affect, diminish, or impair the Debtors', the Reorganized Debtors', or the Wind-Down Entity's rights and defenses, both legal and equitable, with respect to any Reinstated Claim or Unimpaired Claim, including legal and equitable defenses to setoffs or recoupment against Reinstated Claims or Unimpaired Claims, and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date against or with respect to any Claim that is Unimpaired by the Plan. Except as otherwise specifically provided in the Plan, the Debtors, the Reorganized Debtors, and the Wind-Down Entity shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors', the Reorganized Debtors', and the Wind-Down Entity's legal and equitable rights with respect to any Reinstated

Claim or Claim that is Unimpaired by this Plan may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

D.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of confirmation by acceptance of the Plan by any Impaired Class of Claims. The Debtors shall seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

E.    *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors, the Reorganized Debtors', and the Wind-Down Entity reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

F.    *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Combined Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

G.    *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

H.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Finality of Distributions*

As discussed in greater detail in the Disclosure Statement and as otherwise discussed herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan, reflecting the agreement among the Consenting Stakeholders pursuant to the Restructuring Support Agreement and for the payment of Professional Fees as provided for therein. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests, as applicable, in any Class are intended to be and shall be final.

B.    *No Substantive Consolidation*

The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor. The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan.

C.    *Sources of Consideration for Plan Distributions*

The Debtors, the Reorganized Debtors, and the Wind-Down Entity, as applicable, shall fund distributions under the Plan with (i) Cash on hand, (ii) the issuance of the New Debt, and (iii) the issuance of the New Equity Interests.

D.    *New Debt*

On the Effective Date, the Master Issuer will be renamed [RoyaltyCo, LLC] and all the Other Securitization Prepetition Equity Interests shall revest in and be directly or indirectly held by RoyaltyCo. RoyaltyCo shall issue the New Debt and provide any related guarantees, pursuant to and subject to the terms and conditions set forth in the New Notes Documents. The Reorganized Debtors shall provide guarantees related to the New Debt pursuant to and subject to the terms and conditions set forth in in the New Notes Documents.

Confirmation shall be deemed approval of the issuance and incurrence of the New Debt (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations and guarantees to be incurred and fees paid in connection therewith), and to the extent not approved by the Bankruptcy Court previously, the Reorganized Debtors shall be

authorized to execute and deliver those documents necessary or appropriate to issue and incur the New Debt and related guarantees, including the New Notes Documents, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors (with the consent of the Required Consenting Creditors) or the Reorganized Debtors may deem to be necessary to consummate the New Debt. The foregoing does not extend to any equity holder or board actions required under applicable law with respect to RoyaltyCo and any affiliate of RoyaltyCo. The obligations incurred by the Reorganized Debtors pursuant to the New Notes Indenture and the New Notes Documents shall be secured and paid or otherwise satisfied pursuant to, and as set forth in, the New Notes Documents.

On the Effective Date, the New Notes Documents shall constitute legal, valid, binding, and authorized obligations of RoyaltyCo and the other Reorganized Debtors enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the New Notes Documents are being extended, and shall be deemed to have been extended, and all related payments made in connection therewith shall have been made, in each case, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recovery, turnover, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the Liens and security interests to be granted under the New Notes Documents (1) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted in accordance with the terms of the New Notes Documents, (2) shall be deemed automatically perfected on the Effective Date, and (3) shall not be subject to avoidance, recovery, turnover, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

E.      *New Equity Interests*

On the Effective Date, the New Equity Interests shall be issued and distributed pursuant to the Plan. Any Person's acceptance of New Equity Interests shall be deemed to constitute its agreement to be bound by the Shareholders Agreement, if any, and the New Organizational Documents, as the same may be amended, supplemented, or modified from time to time following the Effective Date in accordance with their terms. The Shareholders Agreement, if any, and the New Organizational Documents shall be binding on all holders of the New Equity Interests (and their respective successors and assigns), whether such New Equity Interests are received or to be received on or after the Effective Date and regardless of whether such holder executes or delivers

a signature page to the Shareholders Agreement, if any, or the New Organizational Documents. Notwithstanding the foregoing, RoyaltyCo may condition the receipt of any New Equity Interests issued pursuant to the Plan upon the receipt of duly executed counter - signature pages to the Shareholders Agreement, if any.

All of the New Equity Interests issued and/or distributed pursuant to the Plan shall be duly authorized, validly issued, and, as applicable, fully paid, and non-assessable. Each distribution and issuance of the New Equity Interests under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

F.    *New Organizational Documents*

On or prior to the Effective Date, the New Organizational Documents shall be Filed with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation or organization in accordance with the corporate laws of the respective states, provinces, or countries of incorporation or organization. The New Organizational Documents shall prohibit the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, the New Organizational Documents may be amended and restated as permitted by such documents and the laws of their respective states, provinces, or countries of incorporation or organization.

For the avoidance of doubt, any claimant's acceptance of New Equity Interests shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with its terms.

G.    *New Board*

As of the Effective Date, except as set forth in this Article IV.G, all directors, managers, and other members of existing boards or governance bodies of the Debtors, as applicable, shall cease to hold office or have any authority from and after such time to the extent not expressly included in the roster of the New Board.

The New Board will be comprised of three individuals, one selected by the Prepetition Term Loan Lender, one selected by a majority of holders of the Securitization A-2 Notes Claims that are Consenting AHG Noteholders, and one selected by a majority of holders the Securitization B Notes Claims that are Consenting AHG Noteholders.  The identities of the New Board will be disclosed in the Plan Supplement prior to Confirmation.

H.    *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement (including the Buyer Group Documents), on the Effective Date, all property in each Estate, all Causes of Action, all Executory Contracts and Unexpired Leases assumed by any of the Debtors, and any property acquired by any of the Debtors, including Interests held by the Debtors in non-Debtor subsidiaries, shall vest in each respective Reorganized Debtor and Wind-Down Entity, free and clear of all Liens, Claims, charges, or other

encumbrances unless expressly provided otherwise by the Plan or the Confirmation Order. On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

I.    *Wind-Down Process and Wind-Down Officer*

The Wind-Down Officer shall be appointed by the Debtors in consultation with the DIP Lenders and Required Consenting AHG Noteholders to serve on behalf of the Wind-Down Entity and to implement and take all actions on behalf of the Debtors and their Estates under the Plan, in consultation with the DIP Lenders and Required Consenting AHG Noteholders. Once identified the identity of the Wind-Down Officer shall be disclosed in the Plan Supplement, and the Wind-Down Officer's engagement letter shall be included in the Plan Supplement. The Wind-Down Officer shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan, and as otherwise provided in the Confirmation Order.

On and after the Effective Date, subject to the terms of the Plan, the Wind-Down Officer will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Wind-Down Officer shall have the power and authority to take any action(s) necessary to effectuate the Wind-Down Process using funds in accordance with the Wind-Down Budget. As soon as practicable after the Effective Date, the Wind-Down Officer shall cause the Debtors or Reorganized Debtors to comply with, and abide by, the terms of the Plan and take any actions as the Wind-Down Officer may determine to be necessary or desirable to carry out the purposes of the Plan, subject to the terms of the Plan.

The Wind-Down Entity shall be a successor to the rights, title and interests to the respective Non-Securitization Entities' property and assets. The Wind-Down Entity will not be involved in any business operations on a go-forward basis and will be charged with conducting the Wind-Down Process.

The Wind-Down Officer shall serve as successor to and representative of the Wind-Down Entity's Estate under section 1123(b) of the Bankruptcy Code for the purposes of effectuating the Wind-Down Process, including to commence, litigate and settle any Retained Causes of Action, sell or monetize any remaining Assets of the Wind-Down Entity, and make distributions pursuant to the terms of the Plan. The Wind-Down Officer shall act in a fiduciary capacity on behalf of the interests of the Holders of Claims and Interests entitled to distributions under the Plan. The Wind-Down Officer shall serve in such capacity through the earlier of (i) the date on which the Wind-Down Entity is dissolved in accordance with the Plan and (ii) the date on which the Wind-Down Officer resigns, is terminated or is otherwise unable to serve.

J.    *Cancellation of Existing Interests, Indebtedness, and Other Obligations*

Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan, or the Plan Supplement, on the Effective Date (i) the Prepetition Credit Agreements, the other Prepetition Loan Documents, the Prepetition Securitization Indenture, the other Securitization Notes Documents, the DIP Credit Agreement, the other DIP Facility

Documents, and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be deemed cancelled, discharged and of no force or effect, except, with respect to the Prepetition Credit Agreements, the other Prepetition Loan Documents, the Prepetition Securitization Indenture, the other Securitization Notes Documents, the DIP Credit Agreement, and the other DIP Facility Documents, as applicable, as necessary to (a) enforce the rights, claims and interests of the Prepetition Agent, the Prepetition Securitization Trustee, the Control Party, or the DIP Agent, as applicable, and any predecessor thereof vis-a-vis parties other than the Released Parties under this Plan; (b) allow the receipt of and to make distributions under the Plan in accordance with the terms of the Prepetition Credit Agreements, the Prepetition Securitization Indenture, or the DIP Credit Agreement, as applicable; and (c) preserve any rights of (1) the Prepetition Agent and any predecessor thereof as against any money or property distributable to Holders of Non-Securitization Manager Advance Term Loan Claims, including any priority in respect of payment and the right to exercise any charging liens, (2) the Prepetition Securitization Trustee, any predecessor thereof, and the Control Party as against any money or property distributable to Holders of Securitization Notes Claims, including the Prepetition Securitization Trustee's priority in respect of payment under section 6.10 of the Securitization Notes Indenture and the right to exercise the Prepetition Securitization Trustee's charging lien under section 7.06(d) of the Prepetition Securitization Notes Indenture, and (3) the DIP Agent and any predecessor thereof as against any money or property distributable to Holders of DIP Claims, including any priority in respect of payment and the right to exercise any charging liens; and (d) allow the Prepetition Agent, the Prepetition Securitization Trustee, the Control Party, or the DIP Agent to appear and participate in the Chapter 11 Cases or any other proceeding with respect to clauses (a) through (c) above, as applicable, and any other proceedings or appeals related to the Plan; and (ii) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation, or similar documents governing the equity, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; provided, that notwithstanding Confirmation or the occurrence of the Effective Date, any agreement that governs the rights of a Holder of a Claim shall also continue in effect to allow each of the Prepetition Agent, the Prepetition Securitization Trustee, the Control Party, and the DIP Agent to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court to enforce the respective obligations owed to such parties under the Plan.

Except for the foregoing, (i) subject to the performance by the Prepetition Agent of its obligations under the Plan, the Prepetition Agent and its agents shall be relieved of all further duties and responsibilities related to the Prepetition Loan Documents upon the occurrence of the Effective Date (provided, that the Surviving Prepetition Credit Facility Provisions shall survive in accordance with the terms of the Prepetition Loan Documents); (ii) subject to the performance by the Prepetition Securitization Trustee of its obligations under the Plan, the Prepetition Securitization Trustee and the Control Party and each of its agents shall be relieved of all further duties and responsibilities related to the Securitization Notes Documents upon the occurrence of

the Effective Date; and (iii) subject to the performance by the DIP Agent of its obligations under the Plan, the DIP Agent and its agents shall be relieved of all further duties and responsibilities related to the DIP Facility Documents upon the occurrence of the Effective Date (provided, that the Surviving DIP Provisions shall survive in accordance with the terms of the DIP Facility Documents).

The commitments and obligations (if any) of the Prepetition Lenders and/or any of the DIP Lenders to extend any further or future credit or financial accommodations to any of the Debtors, any of their respective subsidiaries, or any of their respective successors or assigns under the Prepetition Term Loan Credit Agreement or the DIP Facility Documents, as applicable, shall fully terminate and be of no further force or effect on the Effective Date.

Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in the Plan shall be deemed null and void and shall be of no force and effect. Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court or hereunder.

K.    *Corporate Action*

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable (i) the issuance of the New Debt and the New Equity Interests; (ii) the issuance of the New Debt; (iii) entry into the New Notes Documents; (iv) consummation of the Buyer Group Arrangements; (v) implementation of the Restructuring Transactions; and (vi) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Debtors, Reorganized Debtors, or the Wind-Down Entity, and any corporate or other organizational action required by the Debtors, the Reorganized Debtors, or the Wind-Down Entity, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, or officers of the Debtors, the Reorganized Debtors, or the Wind-Down Entity. Before, on, or after the Effective Date, as applicable, the appropriate officers of the Debtors and the Reorganized Debtors, and the Wind-Down Entity, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan), in the name of and on behalf of the Debtors, the Reorganized Debtors, or the Wind-Down Entity, as applicable, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV.K shall be effective notwithstanding any requirements under non-bankruptcy law. The foregoing does not extend to any equity holder or board actions required under applicable law with respect to RoyaltyCo and any affiliate of RoyaltyCo after the Effective Date.

L.    *Effectuating Documents; Restructuring Transactions*

1.    <u>RESTRUCTURING TRANSACTIONS</u>

Following the Confirmation Date or as soon as reasonably practicable thereafter, the Debtors, the Reorganized Debtors and the Wind-Down Entity, as applicable, with the consent of the Required Consenting Creditors (such consent not to be unreasonably withheld), may take all actions as may be necessary or appropriate in their discretion to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan or the Buyer Group Arrangements, including (i) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or law; (iv) the issuance of securities; (v) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Buyer Group Documents; (vii) the issuance of the New Debt; (viii) performing the Debtors' obligations under the Buyer Group Documents and any related agreements entered into in connection therewith, including the Transition Services Agreement (as defined in the Buyer Group APAs); and (ix) all other actions that the Debtors, Reorganized Debtors, or the Wind-Down Entity determines to be necessary or appropriate, including in connection with making filings or recordings that may be required by applicable law in connection with the Plan, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order, or rule or the governing documents of the Debtors, the Reorganized Debtors, or the Wind-Down Entity (collectively, the "**Restructuring Transactions**").  The foregoing does not extend to any equity holder or board actions required under applicable law with respect to RoyaltyCo and any direct or indirect parent entity of RoyaltyCo after the Effective Date.

2.    <u>BUYER GROUP ARRANGEMENTS</u>

On the Effective Date, certain of the Debtors will enter into a series of transactions with the Buyer Group or Brand Co. pursuant to which: (i) each Divested Store will be acquired by a Buyer Group SPE; (ii) each lease related to a Divested Store will be assigned by the corresponding Debtor to the corresponding Buyer Group SPE; (iii) a franchisee agreement (or license agreement, if applicable) with respect to each Divested Store will be entered into by the corresponding Buyer Group SPE; (iv) royalty arrangements will be entered into between RoyaltyCo and Brand Co. in respect of the royalties generated by the Divested Stores and certain other licenses or monetization of IP; (v) all gift card liabilities shall be borne by Brand Co. or the applicable franchisee (in each case, solely to the extent that such gift cards were issued on or prior to March 21, 2025 and have not been redeemed as of the closing of the Buyer Group Arrangements); (vi) each Buyer Group SPE will assume, for its corresponding Divested Store, certain current store-related liabilities incurred in the ordinary course that are not more than 30 days past due as of closing; and (vii) the parties will enter into certain other agreements and arrangements as agreed upon by the Debtors,

the Buyer Group, or Brand Co., as applicable, and the Consenting Creditors. The Plan Supplement will contain any agreements entered into to effectuate the Buyer Group Arrangements.

M.    *Exemption from Certain Taxes and Fees*

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, (i) the issuance, transfer or exchange of any securities, instruments or documents, (ii) the creation of any Lien, mortgage, deed of trust or other security interest, (iii) any transfers (directly or indirectly) of property pursuant to the Plan or the Plan Supplement, including the Buyer Group Arrangements, (iv) any assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, (v) the grant of collateral under the New Notes Indenture, and (vi) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

N.    *Preservation of Causes of Action*

For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned or sold pursuant to the Buyer Group Documents, in accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII of the Plan and the Buyer Group Documents, the Reorganized Debtors or the Wind-Down Entity, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action and notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan, other than Avoidance Actions and the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived as of the Effective Date.

The Reorganized Debtors and Wind-Down Entity may pursue such Retained Causes of Action in accordance with their respective best interests. The Reorganized Debtors and Wind-Down Entity shall retain and may exclusively enforce any and all such Retained Causes of Action. The Reorganized Debtors and Wind-Down Entity shall have the exclusive right, authority, and discretion to determine and to initiate, File, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court; provided, that any proceeds received by the Reorganized Debtors or the Wind-Down Entity, as applicable, on account of Causes of Action assigned to the Buyer Group or Brand Co., shall be immediately transferred to the Buyer Group or Brand Co., as applicable.

**No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Reorganized Debtors or Wind-Down Entity shall not pursue any such Causes of Action against it, except as otherwise expressly provided in the Plan, including this <u>Article IV</u> and <u>Article VIII</u> of the Plan.** Unless any such Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, assigned, or settled in the Plan or a Final Order, or are assigned or transferred to Brand Co. or the Buyer Group pursuant to the Buyer Group Documents, all such Causes of Action shall be expressly reserved by the Reorganized Debtors and Wind-Down Entity for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or consummation of the Plan.

O.    *Insurance Policies*

1.    <u>DIRECTOR AND OFFICER LIABILITY INSURANCE</u>

Each insurance policy, including any director and officer liability insurance policies, to which the Debtors are a party as of the Effective Date, shall be deemed Executory Contracts and shall be assumed by the Reorganized Debtors or Wind-Down Entity on behalf of the applicable Debtor effective as of the Effective Date unless such insurance policy (i) was rejected by the Debtors pursuant to a Bankruptcy Court order or (ii) is the subject of a motion to reject pending on the date of the Combined Hearing, and coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in the D&O Liability Insurance Policies. In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies (including any "tail" policy) in effect or purchased as of the Petition Date for the full term of such policy, regardless of whether such officers, directors, agents, and/or employees remain in such positions with the Debtors after the Effective Date, in each case, to the extent set forth in the D&O Liability Insurance Policies.

2.    <u>OTHER INSURANCE POLICIES</u>

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, each insurance policy to which the Debtors are a party as of the Effective Date shall be assumed by the Reorganized Debtor or Wind-Down Entity unless such insurance policy (i) was rejected by the Debtors pursuant to a Bankruptcy Court order or (ii) is the subject of a motion to reject pending on the date of the Combined Hearing.

Except as set forth in <u>Article IV.Q.1</u> of the Plan, nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening) (i) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of the Debtors' insurance policies, including the D&O Liability Insurance Policies, or (ii) alters or modifies the duty, if any, that the insurers or third party administrators have to pay claims covered by such

insurance policies and their right to seek payment or reimbursement from the Debtors or the Wind-Down Entity or draw on any collateral or security therefor.

Nothing in the Plan shall affect, impair, or prejudice the rights of the insurance carriers, insureds, Debtors, the Reorganized Debtors, and the Wind-Down Entity, as applicable, under the insurance policies in any manner, and such insurance carriers, insureds, Debtors, the Reorganized Debtors, and the Wind-Down Entity, as applicable, shall retain all rights and defenses under such insurance policies, and such insurance policies shall apply to, and be enforceable by and against, the insureds, the Reorganized Debtors and the Wind-Down Entity, as applicable, in the same manner and according to the same terms and practices applicable to the Debtors, as existed prior to the Effective Date.

P.      *Closing of Chapter 11 Cases*

After an Estate has been fully administered, the Reorganized Debtors and Wind-Down Entity shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) in accordance with the Bankruptcy Code and Bankruptcy Rules; provided that, as of the Effective Date, the Reorganized Debtors may submit orders to the Bankruptcy Court under certification of counsel closing individual Chapter 11 Cases and changing the caption of the Chapter 11 cases accordingly; provided further that, matters concerning Claims may be heard and adjudicated in one of the Debtors' Chapter 11 Cases that remains open regardless of whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed.

Q.      *Dissolution of Certain Debtors*

On or after the Effective Date, certain of the Debtors may be dissolved without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, the board of directors, or similar governing body of the Debtors, Reorganized Debtors, or the Wind-Down Entity. The Reorganized Debtors and Wind-Down Entity shall have the power and authority to take any action necessary to wind down and dissolve the foregoing Debtors, and may, to the extent applicable: (1) file a certificate of dissolution for such entities, together with all other necessary corporate and company documents, to effect the dissolution of such entities under the applicable laws of their states of formation; (2) complete and file all final or otherwise required federal, state, and local tax returns and pay taxes required to be paid for such Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of such Debtors, as determined under applicable tax laws; and (3) represent the interests of such Debtors before any taxing authority in all tax matters, including any action, proceeding or audit.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan (including the Buyer Group Documents), the Plan shall serve as a motion under sections 365 and 1123(b)(2) of

the Bankruptcy Code to assume, assume and assign, or reject Executory Contracts and Unexpired Leases, and each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (i) is specifically designated on the Assumption Schedule Filed with the Plan Supplement; (ii) as of the Effective Date, is subject to a pending motion to assume or reject such Executory Contract or Unexpired Lease Filed by the Debtors on or before the Confirmation Date; (iii) terminated pursuant to its own terms or by agreement of the parties thereto; (iv) is a D&O Liability Insurance Policy; (v) is deemed assumed pursuant to Article IV.O of the Plan; or (vi) is to be assumed by the Debtors and assigned to Brand Co. or the Buyer Group in connection with the Buyer Group Arrangements.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Assumption Schedule, and the Rejection Schedule pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Reorganized Debtors and Wind-Down Entity has provided adequate assurance of future performance under such assumed Executory Contracts and Unexpired Leases; provided, that any assumption of an Executory Contract or Unexpired Lease is further subject to the resolution of any Assumption Dispute in accordance with Article V.D of the Plan and payment of the applicable Cure Claim, if any; provided, further, that the Plan shall not be construed as limiting the Debtors' authority to assume and assign Executory Contracts and Unexpired Leases pursuant to the Buyer Group Documents. Any Executory Contract or Unexpired Lease assumed under the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable Reorganized Debtor or Wind-Down Entity in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment under applicable federal law.  Except as otherwise specifically set forth herein or in the Confirmation Order, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Any motions to reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date (or as soon as reasonably practicable thereafter) by a Final Order.

Subject to applicable law, including section 365(d)(4) of the Bankruptcy Code, any motions to assume or assume and assign Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors and Wind-Down Entity with any such disposition to be deemed to effect an assumption, assumption and assignment, or rejection, as applicable, as of the Effective Date.  Notwithstanding anything to the contrary in the Plan, the Debtors, the Reorganized Debtors, and the Wind-Down Entity, as applicable, reserve the right to alter, amend, modify, or supplement the Assumption Schedule or Rejection Schedule with the consent of the Required Consenting Creditors, and subject to the terms of the Buyer Group Documents, at any time prior to the date that is forty-five

(45) days after the Effective Date on no less than seven (7) days' notice to the applicable non-Debtor counterparties.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan or the Buyer Group Documents restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan and the Buyer Group Documents shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. The consummation of the Plan and the Buyer Group Arrangements and the implementation of the Restructuring Transactions are not intended to, and shall not, constitute a "change of control" or "change in control" under any lease, contract, or agreement to which a Debtor is a party.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court by the later of thirty (30) days from (i) the date of entry of an order of the Bankruptcy Court approving such rejection, (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease, and (iii) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be Disallowed pursuant to the Confirmation Order, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, or the Wind-Down Entity, or property of the foregoing parties, without the need for any objection by the Debtors, the Reorganized Debtors, or the Wind-Down Entity, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary**. Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and may be objected to in accordance with the provisions of <u>Article VII.E</u> of the Plan and applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Except as set forth below, any Cure Claims shall be satisfied for the purposes of section 365(b)(1) of the Bankruptcy Code by payment in Cash, on the Effective Date, or as soon as reasonably practicable thereafter, of the cure amount set forth on the Assumption Schedule for the applicable Executory Contract or Unexpired Lease, or on such other terms as the parties to such Executory Contracts or Unexpired Leases and the Debtors may otherwise agree, in consultation with the DIP Lenders and Required Consenting AHG Noteholders. Any Cure Claim shall be deemed fully satisfied, released, and discharged upon the payment of the Cure Claim. The Debtors, in consultation with the DIP Lenders and Required Consenting AHG Noteholders, may settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court.

Any party that fails to object to the applicable cure amount listed on the Assumption Schedule within fourteen (14) calendar days of the filing thereof shall be forever barred, estopped, and enjoined from disputing the cure amount set forth on the Assumption Schedule (including a cure amount of $0.00) and/or from asserting any Claim against the applicable Debtor or Reorganized Debtor arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Assumption Schedule.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any such Executory Contract or Unexpired Lease at any time before the date that the Debtors assume or assume and assign such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

D. *Dispute Resolution*

Prior to the Combined Hearing, the Debtors shall provide Cure Notices of proposed Cures to counterparties to Executory Contracts and Unexpired Leases, which shall include a description of the procedures for objecting to assumption thereof based on the proposed Cures or the Debtors', the Reorganized Debtors', Brand Co.'s, the Buyer Group's, or the Wind-Down Entity's ability to provide "adequate assurance of future performance thereunder" (within the meaning of section 365 of the Bankruptcy Code). Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure must be Filed, served, and received by counsel to the Debtors by the objection deadline set forth in the applicable Cure Notice. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure will be deemed to have consented to such assumption or Cure.

In the event of a timely Filed objection regarding (i) the amount of any Cure Claim; (ii) the ability of the Debtors, the Reorganized Debtors, Brand Co., the Buyer Group, the Wind-Down Entity, or any other assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under an Executory Contract or Unexpired Lease to be assumed; or (iii) any other matter pertaining to assumption or the cure of defaults required by section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon by the Debtors and the counterparty to the Executory Contract or Unexpired Lease without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

To the extent an Assumption Dispute relates solely to the amount of a Cure Claim, the Debtors may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of such Assumption Dispute; provided that the Debtors reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the party or parties to such Executory Contract or Unexpired Lease or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the Debtor, the Reorganized Debtor, or Wind-Down Entity, as applicable. To the extent that the Assumption Dispute is resolved or determined unfavorably to the Debtors, the Debtors,

Reorganized Debtor, or Wind-Down Entity (as applicable) may reject the applicable Executory Contract or Unexpired Lease after such determination.

For the avoidance of doubt, if the Debtors are unable to resolve an Assumption Dispute relating solely to the amount of a Cure Claim prior to the Combined Hearing, such Assumption Dispute may be scheduled to be heard by the Bankruptcy Court after the Combined Hearing (an "*Adjourned Cure Dispute*"); provided, that the Reorganized Debtor and the Wind-Down Entity may settle any Adjourned Cure Dispute after the Effective Date without further notice to any party or any action, order, or approval of the Bankruptcy Court.

E.     *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests in favor of the Debtors, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, and supplements to, or restatements of, prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.     *Reservation of Rights*

Neither the inclusion of any Executory Contract or Unexpired Lease on the Debtors' Schedules, the Assumption Schedule, or the Rejection Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or, after the Effective Date, the Reorganized Debtors, or Wind-Down Entity shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

Except as explicitly provided in this Plan, nothing in this Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors, the Reorganized Debtors, Brand Co., the Buyer Group, or the Wind-Down Entity under any Executory Contract or non-Executory Contract or Unexpired Lease or expired lease.

Nothing in this Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, Reorganized Debtors, Brand Co., the Buyer Group, or the Wind-Down Entity, as applicable, under any Executory Contract or non-Executory Contract or Unexpired Lease or expired lease.

G.    *Nonoccurrence of Effective Date; Bankruptcy Code Section 365(d)(4)*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases of nonresidential real property pursuant to section 365(d)(4) of the Bankruptcy Code.

# ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), the Distribution Agent shall make initial distributions under the Plan on account of each Allowed Claim or Allowed Interest in the amount that the Plan provides. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as specifically provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

For all purposes associated with distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single distribution under the Plan; provided, that Claims held by a single entity at different Debtors that are not based on guarantees or joint and several liability shall be entitled to the applicable distribution for such Claim at each applicable Debtor. Any such Claims shall be released pursuant to Article VIII of the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code. For the avoidance of doubt, this shall not affect the obligation of each and every Debtor to pay fees payable pursuant to section 1930(a) of the Judicial Code until such time as a particular Chapter 11 Case is closed, dismissed, or converted, whichever occurs first.

B.    *Rights and Powers of Distribution Agent*

The Distribution Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all distributions contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

C.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    RECORD DATE FOR DISTRIBUTION

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled, but not required, to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date, unless otherwise set forth in the DIP Order or the DIP Facility Documents.  The Distribution Record Date shall not apply to distributions in respect of securities deposited with DTC, the holders of which shall receive distributions, if any, in accordance with the customary exchange procedures of DTC or this Plan or otherwise in accordance with the applicable procedures of DTC. For the avoidance of doubt, in connection with a distribution through the facilities of DTC (if any), DTC shall be considered a single Holder for purposes of distributions.

2.    DELIVERY OF DISTRIBUTIONS

Subject to Bankruptcy Rule 9010, all distributions to any Holder or permitted designee, as applicable, of an Allowed Claim or Allowed Interest shall be made to the Distribution Agent, who shall transmit such distribution to the applicable Holders or permitted designees of Allowed Claims or Allowed Interests on behalf of the applicable Debtors. In the event that any distribution to any Holder or permitted designee is returned as undeliverable, no further distributions shall be made to such Holder or such permitted designee unless and until the Distribution Agent is notified in writing of such Holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such Holder as soon as reasonably practicable thereafter without interest. Nothing herein shall require the Distribution Agent to attempt to locate Holders or permitted designees, as applicable, of undeliverable distributions.

Notwithstanding the foregoing, all distributions of Cash on account of Non-Securitization Manager Advance Term Loan Claims or DIP Claims, if any, shall be deposited with the Prepetition Agent and the DIP Agent, as applicable, for distribution to Holders of Non-Securitization Manager Advance Term Loan Claims or DIP Claims in accordance with the terms of the Prepetition Term Loan Credit Agreement and the DIP Credit Agreement, as applicable. All distributions other than of Cash on account of Non-Securitization Manager Advance Term Loan Claims or DIP Claims, if any, may, with the consent of the Prepetition Agent and the DIP Agent, as applicable, be made by the Distribution Agent directly to Holders of Non-Securitization Manager Advance Term Loan Claims and DIP Claims in accordance with the terms of the Plan, the Prepetition Term Loan Credit Agreement, and the DIP Credit Agreement, as applicable. Notwithstanding the foregoing, all distributions (whether of Cash or other than of Cash) on account of Securitization Notes Claims, if any, shall be deposited with the Prepetition Securitization Trustee for distribution to Holders of Securitization Notes Claims in accordance with the terms of the Plan and the Prepetition Securitization Indenture, except to the extent that the Prepetition Securitization Trustee provides prior written consent to the Debtors that some or all of such distributions may be made by the Distribution Agent directly to Holders of Securitization Notes Claims in accordance with the terms of the Plan and the Prepetition Securitization Indenture. To the extent the Prepetition Agent, the Prepetition Securitization Trustee, or the DIP Agent effectuates, or is requested to effectuate, any

distributions hereunder, the Prepetition Agent, the Prepetition Securitization Trustee, and the DIP Agent shall be deemed a "Distribution Agent" for purposes of the Plan.

The amount of any reasonable and documented fees and expenses incurred by the Prepetition Agents, the Prepetition Securitization Trustee, and the DIP Agent in connection with making distributions (including, without limitation, reasonable attorneys' fees and other professional fees and expenses) shall be paid in Cash by the Reorganized Debtor or Wind-Down Entity and will not be deducted from distributions made to Holders of Non-Securitization Manager Advance Term Loan Claims, Securitization Notes Claims, or DIP Claims, as applicable. The foregoing reasonable and documented fees and expenses shall be paid in the ordinary course, upon presentation of invoices to the Reorganized Debtor and Wind-Down Entity and without the need for approval by the Bankruptcy Court.

All securities to be distributed under the Plan shall be issued in the names of such holders or their nominees in accordance with DTC's book-entry exchange procedures or on the books and records of a transfer agent, as determined by the Debtors or the Reorganized Debtors, as applicable.

3.    NO FRACTIONAL SHARES

No fractional shares or units of New Equity Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an Allowed Claim otherwise would result in the issuance of shares or units of New Equity Interests that is not a whole number, such New Equity Interests shall be rounded as follows: (i) fractions of greater than one-half shall be rounded to the next higher whole number and (ii) fractions of one-half or less shall be rounded to the next lower whole number with no further payment on account thereof. The total number of authorized and/or issued shares or units of New Equity Interests to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

4.    UNDELIVERABLE DISTRIBUTIONS AND UNCLAIMED PROPERTY

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the time of such distribution. After such date, all unclaimed property or interests in property shall be redistributed Pro Rata as provided under the Plan (it being understood that, for purposes of this Article VI.C.4, "Pro Rata" shall be determined as if the Claim underlying such unclaimed distribution had been Disallowed), except for such unclaimed New Equity Interests, which shall be cancelled, and all other unclaimed property or interests in property shall revert to and vest in the Reorganized Debtors and the Wind-Down Entity without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

A distribution shall be deemed unclaimed if a Holder has not (i) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (ii) given notice to the Distribution Agent of an intent to accept a particular distribution; (iii) responded to the Distribution Agent's requests for information necessary to facilitate a particular distribution; or (iv) taken any other action necessary to facilitate such distribution.

D.    *Securities Registration Exemption*

The offer, issuance, and sale under the Plan of the New Equity Interests in exchange for Claims pursuant to Article III of the Plan and, where applicable, in accordance with the terms of the Confirmation Order, shall be exempt from registration under the Securities Act or any other applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code, except with respect to any New Equity Interests issued to an Entity that is an "underwriter" with respect to such New Equity Interests, as that term is defined in section 1145(b) of the Bankruptcy Code, which shall be issued in reliance upon Section 4(a)(2) of the Securities Act and/or Regulation D promulgated thereunder and on equivalent state law registration exemptions or, solely to the extent such exemptions are not available, other available exemptions from registration under the Securities Act.

The offering, issuance, and distribution of the New Debt in exchange for Claims pursuant to Article II and Article III of the Plan and, where applicable, in accordance with the terms of the Confirmation Order, shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable United States or state securities laws pursuant to section 4(a)(2) of the Securities Act and equivalent state law registration exemptions or, solely to the extent such exemptions are not available, other available exemptions from registration under the Securities Act. Accordingly, the New Debt, and any New Equity Interests issued pursuant to section 4(a)(2) of the Securities Act, if any, will be subject to resale restrictions and may be resold, exchanged, assigned or otherwise transferred only pursuant to registration or an applicable exemption from registration under the Securities Act and other applicable law, such as under certain conditions, the resale provisions of Rule 144 or Rule 144A of the Securities Act, and subject, further, to any restrictions on transferability thereof included in the New Notes Documents, the Shareholders Agreement, if any, and the New Organizational Documents, as applicable

With respect to the foregoing securities issued pursuant to section 1145(a) of the Bankruptcy Code, such securities may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder (i) is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code, (ii) is an "affiliate" of the issuer (as defined in rule 144(a)(1) in the Securities Act), or (iii) has been such an "affiliate" within ninety (90) days of such transfer, in each case subject to the restrictions, if any, on the transferability thereof in the Shareholders Agreement, if any, and the New Organizational Documents. In addition, such section 1145 exempt securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

None of the Debtors, the Wind-Down Entity, or any other Person shall be required to provide any further evidence other than the Plan or the Confirmation Order with respect to the

treatment of the New Equity Interests under applicable securities laws. DTC and any transfer agent (as applicable) shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether the New Equity Interests are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services (to the extent applicable).

Notwithstanding anything to the contrary in this Plan, no Person (including DTC and any transfer agent) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including whether the New Equity Interests or New Debt are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services. All such Persons and Entities including DTC shall be required to accept and conclusively rely upon the Plan or the Confirmation Order in lieu of a legal opinion regarding whether the New Equity Interests and the New Debt are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

E.      *Compliance with Tax Requirements*[3]

In connection with the Plan, to the extent applicable, the Distribution Agent, the Reorganized Debtors, and Wind-Down Entity, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. In the case of a Plan Distribution that is subject to withholding, the distributing party may request a holder of an Allowed Claim or Allowed Interest to complete and return a Form W-8 or W-9, as applicable to each such holder, and any other applicable forms. Notwithstanding any provision in the Plan to the contrary, the Distribution Agent, the Reorganized Debtors, and Wind-Down Entity, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, requiring the intended recipient of such distribution to provide an amount of Cash sufficient to satisfy such withholding tax or establishing any other mechanisms they believe are reasonable and appropriate. If an intended recipient of a Plan Distribution has agreed to provide the Distribution Agent, the Reorganized Debtors, or Wind-Down Entity, as applicable, with the Cash necessary to satisfy the withholding tax pursuant to this section and such person fails to comply before the date that is 180 days after the request is made, the amount of such Plan Distribution that was not distributed shall irrevocably revert to the applicable Reorganized Debtor or Wind-Down Entity and such Claim in respect of such Plan Distribution shall be discharged and forever barred from assertion against such Reorganized Debtor or its respective property. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the above, each Holder of an Allowed Claim or Allowed Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. The Distribution Agent reserves the right to allocate all distributions made under the Plan in

---

[3]      Subject to ongoing review.

compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

F.      *Allocations*

Unless otherwise required by law (as reasonably determined by the Debtors), distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remainder of such Claims, including any portion of such Claims for accrued but unpaid interest as Allowed herein.

G.      *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

H.      *Setoffs and Recoupment*

Except as otherwise expressly provided herein, the Debtors, the Reorganized Debtors or the Wind-Down Entity, as applicable, may, but shall not be required to, set off against or recoup from any claims of any nature whatsoever that the Debtors, the Reorganized Debtors, or the Wind-Down Entity may have against the Holder, but neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Reorganized Debtors or the Wind-Down Entity of any such claim they may have against the Holder of such Claim. In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor, the Reorganized Debtor, or the Wind-Down Entity, as applicable, unless (i) the Debtors have consented (which consent shall not be unreasonably withheld) and (ii) such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise. Notwithstanding anything herein to the contrary, neither the Reorganized Debtors, the Wind-Down Entity, nor the Debtors may set off or recoup against any distributions made on account of any Non-Securitization Manager Advance Term Loan Claims, Securitization Notes Claims, or DIP Claims or any distributions to be made to parties to the Restructuring Support Agreement.

I.      *Claims Paid or Payable by Third Parties*

1.      <u>CLAIMS PAID BY THIRD PARTIES</u>

A Claim shall be reduced in full, and such Claim shall be Disallowed without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, the Reorganized Debtor, the Wind-Down Entity, or the Distribution Agent. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, the Reorganized

Debtor, the Wind-Down Entity, or the Distribution Agent on account of such Claim, such Holder shall repay, return or deliver any distribution held by or transferred to the Holder to the Debtor, the Reorganized Debtor, the Wind-Down Entity, or the Distribution Agent to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. In the event such Holder fails to timely repay or return such distribution, the Debtors or the Wind-Down Entity may pursue any rights and remedies against such Holder under applicable law.

2.    <u>CLAIMS PAYABLE BY INSURANCE CARRIERS</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    <u>APPLICABILITY OF INSURANCE POLICIES</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII**

**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS**

A.    *Allowance of Claims and Interests*

After the Effective Date, the Reorganized Debtors and the Wind-Down Entity shall have and retain any and all rights and defenses each Debtor had with respect to any Claim or Interest immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order, Allowing such Claim or Interest.

For the avoidance of doubt, all Assumed Liabilities (as defined in the Buyer Group Arrangements) shall be subject solely to the terms of the Buyer Group Arrangements and shall not be subject to the terms of the Plan.

B.      *Claims and Interests Administration Responsibilities*

Except as otherwise expressly provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors and the Wind-Down Entity shall have the authority (i) to File, withdraw, or litigate to judgment objections to Claims or Interests; (ii) to settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Reorganized Debtors and the Wind-Down Entity shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim or Disputed Interest, including the Retained Causes of Action.

C.      *Estimation of Claims*

Before or after the Effective Date, the Debtors, the Reorganized Debtors, or the Wind-Down Entity, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any Disputed, contingent, or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Debtors, the Reorganized Debtors, or the Wind-Down Entity, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) calendar days after the date on which such Claim or Interest is estimated. All of the aforementioned objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims and Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Adjustment to Claims Register Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors, the Reorganized Debtors, or the Wind-Down Entity upon stipulation between the parties in interest without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Time to File Objections to Claims*

The Debtors, the Reorganized Debtors, and the Wind-Down Entity, as applicable, shall be entitled to object to Claims before the Claims Objection Deadline, as such deadline may be extended from time to time. After the Effective Date, except as expressly provided herein to the contrary, the Reorganized Debtors and the Wind-Down Entity shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed. Any objections to proofs of Claim and requests for payment of Administrative Claims shall be served and Filed on or before the Claims Objection Deadline. The expiration of such period shall not limit or affect the Debtors', the Reorganized Debtors', or the Wind-Down Entity's rights to dispute Claims asserted in the ordinary course of business other than through a proof of Claim.

F.    *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable pursuant to a Cause of Action under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable pursuant to a Cause of Action under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the applicable Reorganized Debtor or the Wind-Down Entity. All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

G.    *Amendments to Claims*

On or after the Claims Bar Date and Administrative Claims Bar Date, as applicable, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the applicable Reorganized Debtor or the Wind-Down Entity. Absent such authorization, any new or amended Claim Filed after the General Claims Bar Date and Administrative Claims Bar Date, as applicable, shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

H.    *Disputed Claims Reserve*

Any amounts or property that would be distributable in respect of any Disputed Claim had such Disputed Claim been Allowed on the Effective Date, together with all earnings thereon (net of any taxes imposed thereon or otherwise payable by the Disputed Claims Reserve), as applicable, shall be deposited in the Disputed Claims Reserve. The amount of, or the amount of property constituting, the Disputed Claims Reserve shall be determined prior to the Combined Hearing in consultation with the Required Consenting Creditors, based on the Debtors' good faith estimates

or an order of the Bankruptcy Court estimating such Disputed Claims, and shall be established on or about the Effective Date.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination by the IRS, the Distribution Agent shall treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B- 9 and to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Debtors, the Reorganized Debtors, the Distribution Agent, and the holders of Disputed General Unsecured Claims) shall be required to report for tax purposes consistently with the foregoing.

The Disputed Claim Reserve shall be responsible for payment, out of the assets of the Disputed Claim Reserve, of any taxes imposed on the Disputed Claim Reserve or its assets. In the event, and to the extent, any Cash in the Disputed Claim Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such reserve (including any income that may arise upon the distribution of the assets in such reserve), assets of the Disputed Claim Reserve may be sold to pay such taxes.

To the extent that a Disputed General Unsecured Claim becomes an Allowed Claim after the Effective Date, the Distribution Agent shall distribute to the holder thereof out of the Disputed Claims Reserve any amount or property to which such holder is entitled hereunder (net of any allocable taxes imposed thereon or otherwise incurred or payable by the Disputed Claims Reserve, including in connection with such distribution). No interest shall be paid with respect to any Disputed Claim that becomes an Allowed Claim after the Effective Date.

In the event the remaining assets of the Disputed Claims Reserve are insufficient to satisfy all the Disputed General Unsecured Claims that have become Allowed, such Allowed General Unsecured Claims shall be satisfied pro rata from such remaining assets. After all assets have been distributed from the Disputed Claims Reserve, no further distributions shall be made in respect of Disputed General Unsecured Claims. At such time as all Disputed General Unsecured Claims have been resolved, any remaining assets in the Disputed Claims Reserve shall be distributed Pro Rata to all holders of Allowed General Unsecured Claims.

The Distribution Agent may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns Filed for or on behalf of the Disputed Claims Reserve for all taxable periods through the date on which final distributions are made.

I.      *Distributions After Allowance*

As soon as reasonably practicable after the date that the order or judgment of a court of competent jurisdiction allowing any Disputed Claim becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable nonbankruptcy law.

J.      *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed one-hundred percent (100%) of the underlying Allowed Claim plus applicable interest, if any.

## ARTICLE VIII

## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the Plan is and shall be deemed a good-faith compromise and settlement of all Claims, Interests, Causes of Action and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest, or any distribution to be made on account of such Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, Causes of Action, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors and the Wind-Down Entity may compromise and settle Claims against, and Interests in, the Debtors and their Estates and the Retained Causes of Action.

B.      *Discharge of Claims and Termination of Interests*

For the avoidance of doubt, upon consummation of the Buyer Group Arrangements as set forth in the Buyer Group Documents, the assets sold in such Buyer Group Arrangements shall be transferred to and vest in Brand Co. or the Buyer Group, as applicable, free and clear of all Liens, Claims, charges, interests, or other encumbrances (other than Permitted Liens and Assumed Liabilities, each as defined in the applicable Buyer Group Documents) pursuant to sections 363(f) and 1141(c) of the Bankruptcy Code and in accordance with the terms of the Sale Order and the Asset Purchase Agreement, as applicable.

Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan (including with respect to Claims that are Reinstated by the Plan) or in a contract, instrument, or other agreement or document executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action

of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has voted to accept the Plan. Any default or "*event of default*" by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, and, upon the Effective Date, all Holders of such Claims and Interests shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such Claim or Interest against the Debtors, the Reorganized Debtors, the Wind-Down Entity, or any of their Assets or property.

C.      *Releases by the Debtors*

**Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, except for the rights and remedies that remain in effect to enforce the Plan, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by and on behalf of the Debtors and the Estates, in each case on behalf of themselves and their respective successors and assigns, representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether liquidated or unliquidated, fixed or contingent, mature or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, by statute, violations of federal or state securities laws or otherwise that the Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, any Restructuring Transactions, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of or Claim against the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, solicitation, entry into, and/or consummation of**

the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, DIP Facility, DIP Credit Agreement, New Notes Indenture, the Buyer Group Documents, Definitive Documents, or related contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the foregoing, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related to the foregoing.

Notwithstanding anything to the contrary in the foregoing, (I) the releases set forth in this **Article VIII.C** shall not be construed as (i) releasing any Released Party from Claims or Causes of Action arising from an act or omission judicially determined by a Final Order to have constituted intentional fraud (provided that fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), gross negligence, recklessness or willful misconduct, (ii) releasing any contractual, post- Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Buyer Group Documents, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or (iii) any Retained Causes of Action or any Causes of Action assigned or transferred pursuant to the Buyer Group Documents and (II) to the extent that the special committee of officers of Hooters of America, LLC determines to recommend that any Debtor should not grant releases in favor of any party with respect to any Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including those that are proposed to be released herein by the Debtors, any such releases given by the Debtors will be null and void against such party and its Related Parties; **provided** **however**, that the special committee of officers of Hooters of America, LLC shall not so designate the Prepetition Lenders, the Prepetition Agent, the Prepetition Securitization Trustee, the Control Party, the DIP Lenders, or the DIP Agent, and the Prepetition Lenders, the Prepetition Agent, the DIP Lenders, the Prepetition Securitization Trustee, the Control Party, and the DIP Agent shall be and shall indefinitely remain Released Parties under the terms of the Plan. Notwithstanding anything to the contrary in the foregoing or in the defined term "Released Parties", Avoidance Actions against any Released Parties shall be deemed to have been conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged by the Debtors, the Wind-Down Entity, and the Estates.

D.      *Releases by the Releasing Parties*

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, except for the rights and remedies that remain in effect to enforce the Plan, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the

Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, the Wind-Down Entity, the Estates, and the Released Parties, in each case on behalf of themselves and their respective successors and assigns, representatives and any other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest, whether liquidated or unliquidated, fixed or contingent, mature or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, any Restructuring Transaction, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of or Claim against the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, solicitation, entry into, and/or consummation of the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the DIP Facility, DIP Credit Agreement, New Notes Indenture, the Buyer Group Documents, the Prepetition Credit Agreements, the Definitive Documents, or related contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the foregoing, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related to the foregoing. Notwithstanding anything to the contrary in the foregoing, the (I) releases set forth in this <u>Article VIII.D</u> shall not be construed as releasing, and do not release, (i) any Released Party from Claims or Causes of Action arising from an act or omission judicially determined by a Final Order to have constituted intentional fraud (provided that fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), gross negligence, recklessness or willful misconduct, (ii) any contractual, post- Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, the Buyer Group Documents, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or (iii) any rights of Holders of Allowed Claims to receive

**distributions under the Plan, and (II) to the extent that the special committee of officers of Hooters of America, LLC determines to recommend that any Debtor should not grant releases in favor of any party with respect to any Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, any such releases given by the applicable Releasing Party will be null and void and the Releasing Party will have no obligations to offer or consent to such releases of such party or any of its Related Parties.**

E.    *Exculpation*

**Without affecting or limiting the releases set forth in <u>Article VIII.C</u> and <u>Article VIII.D</u> of the Plan, and notwithstanding anything herein to the contrary, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the DIP Facility Documents, the Restructuring Support Agreement, the Plan (including the New Notes Documents and the Plan Supplement), the Disclosure Statement, the Restructuring Transactions, the New Debt, the Prepetition Loan Documents, the Securitization Notes Documents, the prepetition and postpetition marketing process, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, or participation in the New Debt, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in this <u>Article VIII.E</u> of the Plan shall not be construed as exculpating any party or Entity from its post-Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including, without limitation, the New Notes Documents, and the New Organizational Documents.**

F.    *Injunction*

UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST, ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AFFILIATES, AND RELATED PARTIES SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN IN RELATION TO ANY CLAIM EXTINGUISHED, DISCHARGED, OR RELEASED PURSUANT TO THE PLAN.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTORS AND OTHER PARTIES IN INTEREST (OTHER THAN CLAIMS THAT ARE REINSTATED UNDER THE PLAN), ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AFFILIATES, AND RELATED PARTIES, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE WIND-DOWN ENTITY, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES (TO THE EXTENT OF THE EXCULPATION PROVIDED PURSUANT TO <u>ARTICLE VIII.E</u> OF THE PLAN WITH RESPECT TO THE EXCULPATED PARTIES): (I) COMMENCING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE SUCH ENTITIES FROM EXERCISING THEIR RIGHTS

**PURSUANT TO AND CONSISTENT WITH THE TERMS HEREOF AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN.**

**BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST EXTINGUISHED, DISCHARGED, OR RELEASED PURSUANT TO THE PLAN WILL BE DEEMED TO HAVE AFFIRMATIVELY AND SPECIFICALLY CONSENTED TO BE BOUND BY THE PLAN, INCLUDING, WITHOUT LIMITATION, THE INJUNCTIONS SET FORTH IN THIS <u>ARTICLE VIII.F</u>.**

**THE INJUNCTIONS IN THIS <u>ARTICLE VIII.F</u> SHALL EXTEND TO ANY SUCCESSORS OF THE DEBTORS, THE REORGANIZED DEBTORS, THE WIND-DOWN ENTITY, THE RELEASED PARTIES, AND THE EXCULPATED PARTIES AND THEIR RESPECTIVE PROPERTY AND INTERESTS IN PROPERTY.**

G.    *Subordination Rights*

The classification and manner of satisfying all Claims and Interests under the Plan take into consideration all subordination rights, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code, or otherwise that a Holder of a Claim or Interest may have against other Holders of Claims or Interests with respect to any distribution made pursuant to the Plan. Except as provided in the Plan, all subordination rights that a Holder of a Claim may have with respect to any distribution to be made pursuant to the Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined.

H.    *Release of Liens*

Except (i) with respect to the Liens securing the New Debt or (ii) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan or the Buyer Group Documents, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and the holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors, the Reorganized Debtors, or the Wind-Down Entity, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors or the Wind-Down Entity and its successors and assigns.  On and after the Effective Date, the Reorganized Debtors and the Wind-Down Entity (and any of its respective agents, attorneys or designees) shall be authorized to execute and file on behalf of creditors Form UCC-3 termination statements, intellectual property assignments, mortgage or deed of trust releases or such other forms or release documents as may be necessary or appropriate to evidence such releases and implement the provisions of this <u>Article VIII.H</u>.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

64

# ARTICLE IX

## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to the Effective Date*

It shall be a condition to consummation of the Plan that the following conditions shall have been satisfied or occur in conjunction with the occurrence of the Effective Date (or shall be waived pursuant to Article IX.B of the Plan):

1.    The Restructuring Support Agreement shall not have been terminated and shall remain in full force and effect;

2.    The Definitive Documents shall (i) be consistent in all respects with the Restructuring Support Agreement and otherwise approved by the applicable parties thereto consistent with their respective consent and approval rights as set forth in the Restructuring Support Agreement (ii) have been executed or deemed executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the applicable party or parties, and (iii) shall be adopted on terms consistent in all respects with the RSA and this Restructuring Term Sheet;

3.    The DIP Facility shall be in full force and effect and there shall be no defaults continuing unless waived by the Required DIP Lenders party thereto;

4.    The Bankruptcy Court shall have entered an order approving the Disclosure Statement, which order shall be in full force and effect and not have been stayed, modified, or vacated on appeal;

5.    The Confirmation Order confirming the Plan and approving the Buyer Group Arrangements shall have been entered by the Bankruptcy Court, which orders shall be in full force and effect and not have been stayed, modified, or vacated on appeal;

6.    The New Notes Documents shall have been executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived (with the consent of the Debtors, the Required DIP Lenders, and the Required Consenting AHG Noteholders), other than such conditions that relate to the effectiveness of the Plan and related transaction;

7.    The New Equity Interests shall have been issued (with all conditions precedent thereto having been satisfied or waived) and a shareholder rights agreement shall have been entered into by the appropriate parties;

8.    All Restructuring Expenses and any other fees, expenses, and other amounts required to be paid pursuant to the Restructuring Support Agreement pursuant to an order of the Bankruptcy Court shall have been paid in full in cash;

9.    Buyer Group shall have provided to the DIP Lenders and the Required Consenting AHG Noteholders definitive documentation satisfactory to the DIP Lenders and the Required

65

Consenting AHG Noteholders in respect of committed capital the Buyer Group has available to fund capital expenditures, operational expenditures, and other funding expenditures needed for the Divested Stores;

10.     The conditions precedent to closing the Buyer Group Arrangements and the Plan becoming effective shall have been satisfied or shall be satisfied contemporaneously with the occurrence of the Effective Date;

11.     Any and all requisite regulatory approvals, and any other authorizations, consents, rulings, or documents required to implement and effectuate the Restructuring Transactions, the Buyer Group Arrangements, and the Plan shall have been obtained (including as set forth in the applicable purchase agreement);

12.     No court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing, or prohibiting the consummation of the Restructuring Transactions, the Plan, or any other transaction contemplated hereby;

13.     The Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount; and

14.     There shall not be in effect any order by a governmental authority or court of competent jurisdiction restraining, enjoining, or otherwise prohibiting the consummation of the Restructuring Transactions or the Buyer Group Arrangements or any material portion or aspect thereof.

provided, that, notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously with the other conditions precedent to the Effective Date; provided, further, that to the extent a condition precedent (a "***Prerequisite Condition***") may be required to occur prior to another condition precedent (a "***Subsequent Condition***") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to the Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

B.     *Waiver of Conditions*

The conditions to the Effective Date of the Plan set forth in this Article IX may be waived only by the Debtors, with the consent of (i) the Required Consenting AHG Noteholders (which consent shall not be unreasonably withheld, conditioned, or delayed); (ii) the DIP Lenders (such consent not to be unreasonably withheld, conditioned, or delayed); and (iii) the Buyer Group or Brand Co., to the extent the waiver adversely affects the Buyer Group or Brand Co., as applicable (such consent not to be unreasonably withheld, conditioned, or delayed), without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan, subject to the terms of the Bankruptcy Code and the Bankruptcy Rules.

C.      *Substantial Consummation*

"Substantial consummation" of the Plan, as defined by section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D.      *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (ii) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect.

## ARTICLE X

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

The Debtors, with the consent of (i) the Required Consenting AHG Noteholders (which consent shall not be unreasonably withheld, conditioned, or delayed); (ii) the Required DIP Lenders (such consent not to be unreasonably withheld, conditioned, or delayed); and (iii) the Buyer Group and Brand Co. (such consent not to be unreasonably withheld, conditioned, or delayed), as applicable, reserve the right to modify the Plan and seek confirmation of the Plan consistent with the Bankruptcy Code and the Bankruptcy Rules and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and those restrictions on modifications set forth in the Plan, the Debtors, with the consent of (a) the Required Consenting Creditors (which consent shall not be unreasonably withheld, conditioned, or delayed); (b) the DIP Lenders (such consent not to be unreasonably withheld, conditioned, or delayed); and (c) the Buyer Group and Brand Co. (such consent not to be unreasonably withheld, conditioned, or delayed), as applicable, expressly reserve their rights to alter, amend, or modify materially the Plan one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan and the Buyer Group Arrangements.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan, in accordance with Article X.A of the Plan occurring after the solicitation thereof but before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.     *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date, in consultation with the DIP Lenders and Required Consenting AHG Noteholders.  If the Debtors revoke or withdraw the Plan or if confirmation and consummation of the Plan do not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests, (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims or the non-Debtor subsidiaries, (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity, or (d) be used against the Debtors or any other Entity as evidence (or in any other way) in any litigation, including with regard to the strengths and weaknesses of any of the parties' positions, arguments, or claims.

## ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.     Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or Allowance of Claims or Interests; provided, that for the avoidance of doubt, the Bankruptcy Court's retention of jurisdiction with respect to such matters shall not preclude the Debtors, the Reorganized Debtors, or the Wind-Down Entity, as applicable, from seeking relief from any other court, tribunal, or other legal forum of competent jurisdiction with respect to such matters;

2.     decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.     resolve any matters related to (i) the assumption,  assumption and assignment, or rejection  of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable in any manner (whether through amendment of the Assumption Schedule or Rejection Schedule or otherwise) and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, cure costs pursuant to section 365 of the Bankruptcy

Code, or any other matter related to such Executory Contract or Unexpired Lease and (ii) any dispute regarding whether a contract or lease is or was executory or unexpired;

4.      adjudicate controversies, if any, with respect to distributions to Holders of Allowed Claims;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action related to the Chapter 11 Cases;

7.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, injunctions, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement, including the Buyer Group Arrangements;

9.      enter and enforce any order for the sale of property pursuant to sections 1123 or 1146(a) of the Bankruptcy Code;

10.     resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the consummation of the Plan, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, implementation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan, including with respect to the Buyer Group Arrangements;

12.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other

provisions contained in <u>Article VIII</u> of the Plan and enter such orders as may be necessary or appropriate to implement such releases, exculpations, injunctions, and other provisions;

14.    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to <u>Article VI.I</u> of the Plan;

15.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.    enforce or determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, the DIP Facility Documents, the DIP Orders, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement, including the Restructuring Support Agreement;

17.    hear and determine disputes arising in connection with Buyer Group Arrangements;

18.    ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

19.    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order, in each case, in accordance with the Restructuring Support Agreement;

20.    determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

21.    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

22.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

23.    hear and determine matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code;

24.    hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, injunctions, and releases granted in the Plan, including under <u>Article VIII</u> hereof;

25.    enforce all orders previously entered by the Bankruptcy Court;

26.    hear any other matter not inconsistent with the Bankruptcy Code and the Judicial Code;

27.     enter an order concluding or closing the Chapter 11 Cases;

28.     recover all assets of the Debtors and property of the Debtors' Estates, wherever located, and

29.     enforce the compromise, settlement, discharge, injunction, release, and exculpation provisions set forth in <u>Article VIII</u> of the Plan.

Notwithstanding the foregoing, the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court, and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

# ARTICLE XII

## MISCELLANEOUS PROVISIONS

A.     *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Ad Hoc Group, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under this Plan and any previous plan, and, therefore, neither any of such parties, any of such individuals, the Reorganized Debtors, nor the Wind-Down Entity will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under this Plan and any previous plan.

B.     *Immediate Binding Effect*

Subject to <u>Article IX.A</u> of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, on the Effective Date, upon the effectiveness of the Plan, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and the Wind-Down Entity, as applicable, and any and all Holders of Claims or Interests (regardless of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, the Confirmation Order and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

C.      *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan; *provided*, that any material documents Filed shall be in consultation with the DIP Lenders, the Required Consenting AHG Noteholders, and the Buyer Group.  The Debtors and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

D.      *Payment of Statutory Fees*

All fees due and payable pursuant to section 1930(a) of the Judicial Code prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date.  On and after the Effective Date, the Reorganized Debtors and Wind-Down Entity, as applicable, shall pay any and all such fees in full in Cash when due and payable and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to File a Proof of Claim or any other request for payment of quarterly fees.

E.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order in accordance with Article IX.A of the Plan. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor or any other party with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or any other party, including the Released Parties, with respect to the Holders of Claims or Interests or any other matter prior to the Effective Date.

F.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, Related Party, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors, the Reorganized Debtors or Wind-Down Entity, the Consenting AHG Noteholders, Counsel to the DIP Lender, and the Buyer Group or Brand Co. shall be served on:

| | |
|---|---|
| Debtors: | Hooters of America, LLC<br>1815 The Exchange SE,<br>Atlanta, GA 30339<br>Attn: Keith Maib (kmaib@accordion.com)<br><br>with copies to: |
| Counsel to Debtors: | Ropes & Gray LLP<br>191 North Wacker, 32nd Floor<br>Chicago, IL 60606<br>Attn:  Chris L. Dickerson<br>(chris.dickerson@ropesgray.com)<br>Rahmon J. Brown (rahmon.brown@ropesgray.com)<br>Michael Wheat (michael.wheat@ropesgray.com)<br><br>- and -<br><br>Foley & Lardner LLP<br>2021 McKinney Avenue, Suite 1600<br>Dallas, TX 75201<br>Attn: Holland N. O'Neil (honeil@foley.com)<br>Stephen A. Jones (sajones@foley.com)<br>Zachary C. Zahn (zzahn@foley.com) |
| Counsel to the<br>Consenting AHG<br>Noteholders: | White & Case LLP<br>200 South Biscayne Blvd., Suite 4900<br>Miami, FL 33131<br>Attn:   Brian Pfeiffer (brian.pfeiffer@whitecase.com)<br>Amanda Parra Criste (aparracriste@whitecase.com)<br><br>-and-<br><br>White & Case LLP<br>1121 Avenue of the Americas<br>New York, NY 10020<br>Attn:  David Thatch (dthatch@whitecase.com) |
| Counsel to the DIP<br>Lender: | Sidley Austin LLP<br>1999 Avenue of the Stars, 17th Floor<br>Los Angeles, CA 90067<br>Attention:  Genevieve G. Weiner<br>(gweiner@sidley.com)<br><br>and<br><br>Sidley Austin LLP<br>787 7th Avenue |

New York, NY 10019
Attention:  Elizabeth R. Tabas Carson
(etabas@sidley.com)
Juliana L. Hoffman (jhoffman@sidley.com)

Counsel to the Buyer
Group and Brand Co.

Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
Attention: Benjamin W. Butterfield
(bbutterfield@mofo.com)
Ilayna Guevrekian
(iguevrekian@mofo.com)

H.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.    *Entire Agreement*

The Plan, Plan Supplement, Confirmation Order, and the Restructuring Support Agreement (assumption of which agreements is approved by the Confirmation Order) supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and Confirmation Order.

J.    *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, at the request of the Debtors, which request shall be consistent with the terms of the Restructuring Support Agreement, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted provided that any such alteration or interpretation shall be reasonably acceptable to (x) the Debtors , (y) the Required Consenting Creditors, and (z) the Buyer Group and Brand Co. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without consent (such consent not to be unreasonably withheld, conditioned, or delayed) from (x) the Debtors, (y) the Required Consenting Creditors, and (z) the Buyer Group and Brand Co; and (iii) nonseverable and mutually dependent.

K.      *Dissolution of Committee*

On the Effective Date, any official committees appointed in the Chapter 11 Cases, including the Creditors' Committee, shall dissolve; provided that following the Effective Date, any such committees, including the Creditors' Committee, shall continue in existence solely for the purpose of filing and prosecuting applications for allowance of Professional Fee Claims. Upon the dissolution of any official committees appointed in the Chapter 11 Cases, including the Creditors' Committee, such committee members and their respective Professionals shall cease to have any duty, obligation, or role arising from or related to the Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

L.      *Expedited Tax Determination*

The Debtors and Reorganized Debtors may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns Filed or to be Filed for or on behalf of the Debtors for all taxable periods ending after the Petition Date through the Effective Date.

****

Respectfully submitted, as of May 6, 2025

Hawk Parent, LLC
HOA Holdings, LLC
Night Owl, LLC
Owl Wings, LLC
Owl Restaurant Holdings, LLC
Owl Holdings, LLC
Elf Owl Investments, LLC
TW Lonestar Wings, LLC
Alamo Wings, LLC
HOA Restaurant Group, LLC
Derby Wings Holdings, LLC
Derby Wings, LLC
Hooters of America, LLC
HOA Funding, LLC
HOA Holdco, LLC
HOA Systems, LLC
HOA Restaurant Holder, LLC
HOOTS Restaurant Holder, LLC
HOA IP GP, LLC
HOOTS Franchising, LLC
HOA Franchising, LLC
HOA Maryland Restaurant Holder, LLC
HOA Kansas Restaurant Holder, LLC
TW Restaurant Holder, LLC
DW Restaurant Holder, LLC
HI Limited Partnership
HOA Towson, LLC
HOA Waldorf, LLC
HOA Laurel, LLC
HOA Gift Cards, LLC

By: _/s/ Keith Maib_
Name: Keith Maib
Title:  Authorized Officer