**ROPES & GRAY LLP**
Ryan Preston Dahl (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Email: ryan.dahl@ropesgray.com

- and -

**ROPES & GRAY LLP**
Chris L. Dickerson (admitted *pro hac vice*)
Rahmon J. Brown (admitted *pro hac vice*)
Michael K. Wheat (admitted *pro hac vice*)
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
Email: chris.dickerson@ropesgray.com
rahmon.brown@ropesgray.com
michael.wheat@ropesgray.com

*Proposed Counsel to the Debtors*

**FOLEY & LARDNER LLP**
Holland N. O'Neil (TX 14864700)
Stephen A. Jones (TX 24101270)
Zachary C. Zahn (TX 24137675)
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
Email: honeil@foley.com
sajones@foley.com
zzahn@foley.com

*Proposed Co-Counsel to the Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Hooters of America, LLC, *et al.*,[1] | Case No. 25-80078 (SWE) |
| Debtors. | (Jointly Administered) |

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Hooters of America, LLC (5288); Owl Holdings, LLC (3103); Hawk Parent, LLC (2323); HOA Holdings, LLC (1180); Night Owl, LLC (4511); Owl Wings, LLC (4583); Owl Restaurant Holdings, LLC (7751); HOA Restaurant Group, LLC (7654); Derby Wings Holdings, LLC (8081); Derby Wings, LLC (6578); HOA Gift Cards, LLC (3684); Elf Owl Investments, LLC (3342); TW Lonestar Wings, LLC (3465); Alamo Wings, LLC (3702); HOA Holdco, LLC (8828); HOA Systems, LLC (2439); HOA Funding, LLC (4390); HOA Restaurant Holder, LLC (3883); HOOTS Restaurant Holder, LLC (5840); HOA IP GP, LLC (9555); HOOTS Franchising, LLC (8375); HOA Franchising, LLC (4451); HOA Maryland Restaurant Holder, LLC (1608); HOA Kansas Restaurant Holder, LLC (9045); TW Restaurant Holder, LLC (6927); DW Restaurant Holder, LLC (8261); HI Limited Partnership (2355); HOA Towson, LLC (1942); HOA Waldorf, LLC (5425); HOA Laurel, LLC (5010). The Debtors' service address is 1815 The Exchange SE, Atlanta, GA 30339.

**DEBTORS' MOTION FOR ENTRY OF ORDER (I) SCHEDULING A COMBINED HEARING ON (A) ADEQUACY OF DISCLOSURE STATEMENT ON A FINAL BASIS AND (B) PLAN CONFIRMATION; (II) FIXING DEADLINES RELATED TO DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION; (III) APPROVING (A) SOLICITATION AND VOTING PROCEDURES, (B) FORM AND MANNER OF COMBINED HEARING NOTICE AND OBJECTION DEADLINE, AND (C) NOTICE OF NON-VOTING STATUS; (IV) CONDITIONALLY APPROVING THE DISCLOSURE STATEMENT, AND (V) GRANTING RELATED RELIEF**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txnb.uscourts.gov/ no more than fourteen (14) days after the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk and filed on the docket no more than fourteen (14) days after the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Hooters of America, LLC and its affiliated debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through undersigned proposed counsel, respectfully submit this motion (the "Motion") for entry of an order granting the relief described below. In support hereof, the Debtors rely on the *Declaration of Keith Maib, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 19] (the "First Day Declaration") and further represent as follows:[2]

**PRELIMINARY STATEMENT**

1. The Debtors commenced these Chapter 11 Cases with a restructuring support agreement (as it may be amended, supplemented, or modified from time to time in accordance with the terms thereof, the "Restructuring Support Agreement") with the Buyer Group, the Prepetition Lenders, and the Consenting AHG Noteholders (each as defined therein), and all have

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan or the Disclosure Statement (as defined herein), as applicable, filed substantially contemporaneously herewith.

committed to support the Debtors' Plan. The transactions described in and contemplated by the Restructuring Support Agreement and Plan will substantially deleverage the Debtors' balance sheet and provide the go-forward credit support to allow the Debtors to achieve their business plan. More specifically, the transactions described in and contemplated by the Restructuring Support Agreement, Plan, and Disclosure Statement, provide for, among other things:

(a) consummation of a sale transaction with the Buyer Group pursuant to the *Joint Chapter 11 Plan of Reorganization of Hooters of America, LLC, and its Affiliated Debtors* (as amended, supplemented, or otherwise modified from time to time, the "Plan") whereby the Buyer Group will acquire a portfolio of a significant majority of the Company-owned stores;

(b) a new entity established by the Buyer Group will operate as Manager of the acquired stores, the existing franchised stores, and any newly franchised stores;

(c) renaming of HOA Funding, LLC to ("RoyaltyCo") that will own 100% equity interests in the Reorganized Debtors, which will, among other things, (i) collect all royalty payments from all franchised stores and the Buyer Group acquired stores, (ii) issue the New Equity Interests, and (iii) issue the New Securitization Documents to distribute to the holders of DIP Claims, certain Non-Securitization Manager Advance Term Loan Claims, and Securitization Note Claims;

(d) liquidation or monetization of any Company-owned stores that are not acquired by the Buyer Group;

(e) entry into a superpriority consensual priming debtor-in-possession term-loan facility in an aggregate principal amount of up to $40 million (the "DIP Facility"); and

(f) prompt emergence from chapter 11.

2. The Debtors commenced these Chapter 11 Cases to implement the transactions contemplated by the Restructuring Support Agreement and believe that the proposed restructuring transactions are value-maximizing for all of the Debtors' stakeholders. The Restructuring Support Agreement—and each party's respective rights and obligations thereunder—is the product of extensive good faith, arm's length negotiations between the Debtors and those holding a

substantial majority of the Debtors' prepetition total funded debt obligations. The Plan and Disclosure Statement, filed contemporaneously herewith, implement the terms of the carefully negotiated Restructuring Support Agreement, satisfy all requirements of the Bankruptcy Code, and should be approved and confirmed as quickly as the Court's schedule and the requisite notice periods permit. The Debtors' timely emergence from chapter 11 is a critical element of the consensual restructuring embodied in the Restructuring Support Agreement and the Plan. In fact, the Restructuring Support Agreement and DIP Facility approved by the Court on an interim basis initially required that the Court hold a hearing to consider conditional approval of the adequacy of the Disclosure Statement no later than **May 23, 2025** (subject to the Court's availability). The parties agreed to extend the milestones for a short period of time, but continue to be focused on minimizing disruption of the Debtors' business as well as the administrative costs of the Debtors' restructuring.

3.       Therefore, the Debtors respectfully request that this Court (i) set a Combined Hearing to simultaneously consider approval of the Disclosure Statement on a final basis and confirmation of the Plan, and (ii) set certain deadlines related to the Combined Hearing no later than **July 1, 2025** (subject to the Court's availability). The Debtors also request that the Court approve the form and manner of the Debtors' solicitation of votes on the Plan (including the conditional approval of the Disclosure Statement for solicitation purposes) and the mechanism for creditors to opt-in to third-party releases contained therein, and the notices to parties in interest about the Combined Hearing, all as described in more detail below.

4.       Importantly, the timeline proposed in this Motion does not prejudice any parties in interest, as all will have the time allotted under the Bankruptcy Code to object to final approval of the Disclosure Statement and confirmation of the Plan. Moreover, as set forth herein, the Debtors

have complied with all notice requirements under the Bankruptcy Rules and Local Rules and have proposed a robust noticing program that ensures that all stakeholders are given due process in these Chapter 11 Cases.

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 3016, 3017, 3018, 3020, and 9006 of the Bankruptcy Rules, rules 2002-1, 3017-1, and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), and Section H of the Procedures for Complex Cases in the Northern District of Texas.

## RELIEF REQUESTED

6. By this Motion, the Debtors seek entry of an order (the "Scheduling Order"), substantially in the form attached hereto, granting the following relief:

(a) scheduling a combined hearing (the "Combined Hearing") on **July 1, 2025** or as soon thereafter as the Court's calendar allows to (i) approve the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Hooters of America, LLC, and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") on a final basis and (ii) consider confirmation of the Plan;

(b) establishing **June 24, 2025 at 4:00 p.m.** (prevailing Central Time), as the deadline (a) to file objections to the adequacy of the Disclosure Statement or confirmation of the Plan (the "Objection Deadline"); (b) to opt-in to the third-party releases contained in the Plan (the "Opt-In Deadline"); and (c) for voting to accept or reject the Plan (the "Voting Deadline");

(c) approving the form and manner of notice of the Combined Hearing (the "Combined Hearing Notice"), pursuant to section 1129 of the Bankruptcy Code, substantially in the form attached to the Scheduling Order as Exhibit 3;

(d) approving the form and manner of notice of publication of the Combined Hearing substantially in the form attached to the Scheduling Order as Exhibit 4 (the "Publication Notice");

(e) approving the procedures (the "Solicitation and Voting Procedures") to be utilized by the Debtors in connection with the Debtors' solicitation of votes on the Plan substantially in the form attached to the Scheduling Order as Exhibit 2, including the ballots substantially in the form attached to the Scheduling Order as Exhibit 5-A (the "Class 2 Beneficial Holder Ballots"), as Exhibit 5-B (the "Class 2 Master Ballots"), as Exhibit 6-A (the "Class 3 Beneficial Holder Ballots"), as Exhibit 6-B (the "Class 3 Master Ballots"), and as Exhibit 7 (the "Class 4 Ballots" and, together with the Class 2 Beneficial Holder Ballots, Class 2 Master Ballots, Class 3 Beneficial Holder Ballots, and Class 3 Master Ballots, the "Ballots");

(f) approving the form and manner of notice of non-voting status applicable to certain Holders of Claims against or Interests in the Debtors, substantially in the form attached to the Scheduling Order as Exhibit 8 (the "Notice of Non-Voting Status"), and the form (the "Opt-In Form") and manner by which such Holders may opt-in to the third-party releases contained in the Plan, substantially in the form attached to the Scheduling Order as Exhibit 9;

(g) conditionally approving the Disclosure Statement substantially in the form attached to the Scheduling Order as Exhibit 1; and

(h) granting related relief.

7. In connection with the Combined Hearing, the Debtors will seek an order (a) approving the adequacy of the Disclosure Statement, (b) confirming the Plan, and (c) granting related relief (the "Confirmation Order").

8. Subject to the Court's availability, the Debtors respectfully request that the Court approve the following schedule of proposed dates to govern approval of the Disclosure Statement and confirmation of the Plan (the "Confirmation Schedule"):

| **PROPOSED SOLICITATION AND CONFIRMATION TIMELINE** | |
|---|---|
| **Event** | **Date (prevailing Central Time)** |
| Filing Date for Plan / Disclosure Statement / Scheduling Motion | May 6, 2025 |
| Voting Record Date | May 19, 2025 |
| Objection Deadline for Conditional Approval of the Disclosure Statement | May 20, 2025 |
| Proposed Conditional Disclosure Statement Hearing | May 23, 2025 |
| Deadline to Mail Combined Hearing Notice / Commencement of Solicitation | On or before the date that is one Business Day after entry of the Scheduling Order, or as soon as reasonably practicable thereafter |
| Publication Deadline | On or before the date that is two (2) Business Days after entry of the Scheduling Order, or as soon as reasonably practicable thereafter |
| Deadline to Complete Solicitation | On or before the date that is three (3) Business Days after entry of the Scheduling Order, or as soon as reasonably practicable thereafter |
| Plan Supplement Filing Deadline | June 17, 2025 |
| Confirmation Order Filing Deadline | June 17, 2025 |
| Voting Deadline | June 24, 2025 at 4:00 p.m. (prevailing Central Time) |
| Opt-In Deadline | June 24, 2025 at 4:00 p.m. (prevailing Central Time) |
| Deadline to File Objections to adequacy of the Disclosure Statement and Plan Confirmation | June 24, 2025 at 4:00 p.m. (prevailing Central Time) |
| Deadline to File (1) Reply to Plan Objections, (2) Brief in Support of Plan Confirmation, (3) Declarations in Support of Plan Confirmation, and (4) Voting Report | June 27, 2025 |
| Proposed Combined Hearing | July 1, 2025 |

9. For further reference of the Court and parties in interest, the Debtors provide below a list of the various exhibits cited throughout this Motion:

| **Document** | **Exhibit** |
|---|---|
| **Scheduling Order** | **Exhibit A to the Motion** |
| **Disclosure Statement** | **Exhibit 1 to the Scheduling Order** |
| **Form of Solicitation and Voting Procedures** | **Exhibit 2 to the Scheduling Order** |
| **Combined Hearing Notice** | **Exhibit 3 to the Scheduling Order** |

| Document | Exhibit |
|---|---|
| **Publication Notice** | **Exhibit 4 to the Scheduling Order** |
| **Form of Class 2 Beneficial Holder Ballots** | **Exhibit 5-A to the Scheduling Order** |
| **Form of Class 2 Master Ballot** | **Exhibit 5-B to the Scheduling Order** |
| **Form of Class 3 Beneficial Holder Ballots** | **Exhibit 6-A to the Scheduling Order** |
| **Form of Class 3 Master Ballot** | **Exhibit 6-B to the Scheduling Order** |
| **Form of Class 4 Ballots** | **Exhibit 7 to the Scheduling Order** |
| **Notice of Non-Voting Status** | **Exhibit 8 to the Scheduling Order** |
| **Opt-In Form** | **Exhibit 9 to the Scheduling Order** |

## BACKGROUND

10.     On March 31, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On April 15, 2025, the U.S. Trustee appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "Creditors' Committee") [Docket No. 189].  No request has been made for the appointment of a trustee or examiner.

11.     Founded in 1983, the Debtors own and operate Hooters, an iconic brand in the casual dining and sports entertainment dining industries.  The Debtors' global portfolio of restaurants includes 151 Debtor-owned and operated locations and 154 franchised locations in 17 countries.  The Debtors are known for their world-famous chicken wings, beverages, live sports, and legendary hospitality.  The Debtors also partner with a major food products licensor to offer shoppers Hooters-branded frozen meals products at 1,250 grocery store locations.

12.     Additional factual background regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the First Day Declaration [Docket No. 19], which is incorporated herein by reference.

# I. The Solicitation and Voting Procedures.

## A. Solicitation Packages Provided to Voting Classes

13. On or before the date that is one (1) Business Day after entry of the Scheduling Order, or as soon as reasonably practicable thereafter (the "Deadline to Mail Combined Hearing Notice"), the Debtors propose to cause Kroll Restructuring Administration LLC (the "Voting Agent") to distribute to all known parties in interest the Combined Hearing Notice.

14. On or before the date that is three (3) Business Days after entry of the Scheduling Order, or as soon as reasonably practicable thereafter (the "Deadline to Mail Solicitation Packages"), the Debtors propose to cause the Voting Agent to distribute to Holders of Claims in the Voting Classes (as defined below) as of **May 19, 2025** (the "Voting Record Date") solicitation packages including the (i) Combined Hearing Notice, (ii) Scheduling Order, without exhibits (except the Solicitation and Voting Procedures annexed thereto as Exhibit 2), (iii) fully compiled Disclosure Statement, as approved by the Court, with all exhibits thereto, including the Plan and all exhibits thereto, and (iv) appropriate form of Ballot and prepaid pre-addressed business reply envelope (the "Solicitation Package(s)"). In addition, the Debtors will cause the Voting Agent to serve a Solicitation Package (without Ballots) on the U.S. Trustee and all parties in interest required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-1. Following the Voting Deadline, the Debtors, with the assistance of the Voting Agent, will complete a final tabulation of the Ballots and submit a final voting report on or before the date that is four (4) days prior to the Combined Hearing.

15. To reduce costs and the impact on the environment, the Debtors propose to send the Disclosure Statement, Plan, and Scheduling Order (without attachments, except the Solicitation and Voting Procedures annexed as Exhibit 2 thereto) in electronic format (on a USB flash drive) instead of printed hard copies. Only the Ballots and the Combined Hearing Notice, and such other

materials as the Court may ordered included with the Solicitation Packages, will be provided in paper format.  Moreover, the Plan and the Disclosure Statement will be available at no charge through the Debtors' restructuring website maintained by the Voting Agent at https://cases.ra.kroll.com/Hooters/.  However, the Debtors propose that if online access or service by USB flash drive imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (e.g., the party does not own or have access to a computer or the internet), such party may request a paper copy of the Plan, Disclosure Statement, and Scheduling Order (without attachments, except the Solicitation and Voting Procedures annexed as Exhibit 2 thereto) by contacting the Voting Agent by: (a) calling + 1 (646) 844-3894 (international, toll) or (888) 575-4910 (U.S./Canada, toll free), (b) writing to Hooters Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (if by first-class mail, hand delivery or overnight mail), or (c) emailing HootersInfo@ra.kroll.com (with "Hooters Solicitation Inquiry" in the subject line).  Upon receipt of such request, the Debtors will provide such party with a paper copy of the Plan and the Disclosure Statement free of charge.

16.    The Debtors' procedures and standard assumptions for tabulating Ballots include the following criteria:

| | |
|---|---|
| **Votes Not Counted** | ▪ Any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;<br>▪ Any Ballot that is not actually received by the Voting Agent by the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Court;<br>▪ Any unsigned Ballot;<br>▪ Any Ballot that partially rejects and partially accepts the Plan in a particular Voting Class;<br>▪ Any Ballot not marked to accept or reject the Plan in a particular Voting Class or marked both to accept and reject the Plan in a particular Voting Class;<br>▪ Any Ballot superseded by a later, timely submitted valid Ballot; and<br>▪ Any improperly submitted Ballot. |
| **No Vote Splitting** | ▪ Holders are required to vote all of their Claims in a particular Voting Class to either accept or reject the Plan and are not permitted to split any votes in a particular Voting Class. |

| | |
|---|---|
| **Establishing Claim Amounts for Voting Purposes** | ▪ Holders must indicate the aggregate Claim amount for each Voting Class in which the Holder votes Claims, as applicable;<br>▪ Claim Amounts for voting purposes shall (i) in the case of Class 4 Non-Securitization Manager Advance Term Loan Claims, be based on and reconciled against the applicable lender registry maintained by the Debtors and/or the applicable administrative agent for such loan facility, as applicable, and (ii) in the case of Class 2 Securitization Class A-2 Note Claims and Class 3 Securitization Class B Note Claims, be based (a) on the applicable Notes held by each registered Holder thereof, if any, as evidenced on the books and records of the applicable indenture trustee or (b) on the amount of applicable Notes held by a Beneficial Holder (as defined below) thereof through a Nominee (as defined below) as of the Voting Record Date as evidenced by the securities position report(s) from the Depository Trust Company ("DTC"), or other similar depository.<br>▪ To the extent that any discrepancy exists between the aggregate Claims amount as indicated on a Ballot by a Holder of Claims in one or more Voting Classes and the aggregate Claims amount as listed on the applicable lender registry, books and records or securities position report, for each Voting Class in which a Holder votes Claims, the aggregate Claims amount as listed on the applicable lender registry, books and records or securities position report, as applicable, shall govern for tabulation purposes. |

The Debtors reserve the right to, in consultation with the DIP Lenders, Ad Hoc Group, and Creditors' Committee, to make any exception to any of the foregoing assumptions and criteria.

17. The Plan classifies Holders of Claims or Interests into the below Classes of Claims and Interests for all purposes, including with respect to voting on the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtors intend to solicit the votes of only those Holders of Claims that are entitled to vote to accept or reject the Plan. The following chart summarizes the Classes of Claims and Interests under the Plan and whether they are entitled to vote:

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Securitization Class A-2 Note Claims | Impaired | Yes |
| 3 | Securitization Class B Note Claims | Impaired | Yes |
| 4 | Non-Securitization Manager Advance Term Loan Claims | Impaired | Yes |
| 5 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 6 | Non-Securitization Term Loan Claims (Secured) | Unimpaired | No (Presumed to Accept) |
| 7 | Securitization Manager Advance Claims | Impaired | No (Deemed to Reject) |
| 8 | General Unsecured Claims | Impaired | No (Deemed to Reject) |
| 9 | Other Intercompany Claims | Impaired | No (Deemed to Reject) |
| 10 | Intercompany Interests | Impaired | No (Deemed to Reject) |
| 11 | Securitization Prepetition Master Issuer Equity Interests | Impaired | No (Deemed to Reject) |
| 12 | Other Securitization Prepetition Equity Interests | Unimpaired | No (Presumed to Accept) |
| 13 | Non-Securitization Prepetition Equity Interests | Impaired | No (Deemed to Reject) |

18. Based on the foregoing (and as discussed in greater detail in the Disclosure Statement) the Debtors are proposing to solicit votes to accept or reject the Plan from Holders of Claims in Class 2 (Securitization Class A-2 Note Claims), Class 3 (Securitization Class B Note Claims), and Class 4 (Non-Securitization Manager Advance Term Loan Claims) (each, a "Voting Class" and, collectively, the "Voting Classes"). The Debtors are proposing ***not*** to solicit votes from Holders of Claims and Interests in Classes: 1 (Priority Non-Tax Claims), 5 (Other Secured Claims), 6 (Non-Securitization Term Loan Claims (Secured)), 7 (Securitization Manager Advance Claims), 8 (General Unsecured Claims), 9 (Other Intercompany Claims), 10 (Intercompany Interests), 11 (Securitization Prepetition Master Issuer Equity Interests), 12 (Other Securitization Prepetition Equity Interests), and 13 (Non-Securitization Prepetition Equity Interests) (each, a "Non-Voting Class" and, collectively, the "Non-Voting Classes").

**II. Notice of Non-Voting Status and Opt-In Form**

19. As soon as practicable following entry of the Order, the Debtors will mail, or cause to be delivered, to Holders of Claims and Interests in the Non-Voting Classes, including all equity

Holders of record as of the Voting Record Date, a notice of non-voting status and opportunity to opt-in, which will (a) inform recipients of their status as Holders or potential Holders of Claims or Interests in Non-Voting Classes, (b) conspicuously provide the full text of the release, exculpation, and injunction provisions set forth in the Plan, (c) include a form by which Holders may elect to opt into the Third-Party Release (as defined in the Plan) (the "Opt-In Form"), substantially in the form attached to the Scheduling Order as **Exhibit 9**, by checking a prominently featured and clearly labeled box, and (d) enclose a postage prepaid, return-addressed envelope in which Holders may return their opt-in elections to the Voting Agent (such notice, the "Notice of Non-Voting Status") substantially in the form attached to the Scheduling Order as **Exhibit 8**.  The Debtors request a waiver of any requirement to serve the Notice of Non-Voting Status and the Opt-In Form on Holders of Other Intercompany Claims or Intercompany Interests since such Claims or Interests are held by the Debtors.

20.    The following chart summarizes the notices provided or to be provided to each stakeholder by the Debtors through their noticing program:

| Party | Type of Notice to be Provided Following Entry of the Order |
|---|---|
| **Impaired Voting Creditors** | ▪ The Combined Hearing Notice<br>▪ The applicable Ballot<br>▪ The Disclosure Statement, which contains the following documents: (i) the Plan, (ii) the Restructuring Support Agreement, (iii) the Debtors' capital and corporate organization structure chart, (iv) the Liquidation Analysis, (v) the Financial Projections, and (vi) the Valuation Analysis |
| **Non-Voting Creditors** | ▪ The Combined Hearing Notice<br>▪ The Notice of Non-Voting Status, which details the non-voting status of the individual creditor and provides information regarding how to access relevant chapter 11 information and how to opt-in to the third-party releases contained in Article VIII.D of the Plan (the "Third-Party Release")<br>▪ The Opt-In Form<br>▪ A pre-addressed postage paid envelope for the return of executed Opt-In Form |
| **Impaired Equity Holders** | ▪ The Combined Hearing Notice<br>▪ The Notice of Non-Voting Status, which details the non-voting status of the individual equity holder and provides information regarding how to access relevant chapter 11 information and how to opt-in to the Third-Party Release |

| Party | Type of Notice to be Provided Following Entry of the Order |
|---|---|
| | ▪ The Opt-In Form<br>▪ A pre-addressed postage-paid return envelope for the return of executed Opt-In Form |

## BASIS FOR RELIEF

### I.    The Court Should Conditionally Approve the Disclosure Statement

#### A.    The Standard for Approval of the Disclosure Statement.

21.    Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent must provide holders of claims and interests with "adequate information" regarding a proposed chapter 11 plan of reorganization.  Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.]

11 U.S.C. § 1125(a)(1).

22.    A debtor's disclosure statement must therefore provide sufficient information to permit an informed judgment by impaired creditors entitled to vote on the plan.  *See, e.g., Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Phoenix Petrol., Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and Interest Holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan.").  The essential requirement of a disclosure statement is that it "'clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution.'"  *In re Keisler*, 2009

WL 1851413, at *4 (Bankr. E.D. Tenn. June 29, 2009) (quoting *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991)).

23. Whether a disclosure statement contains adequate information "is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation." 11 U.S.C. § 1125(d). Instead, bankruptcy courts have broad discretion to determine the adequacy of the information contained in a disclosure statement. *See, e.g.*, H.R. Rep. 95-595, at 409 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6365; *Mabey v. SW Elec. Power Co.* (*In re Cajun Elec. Power Coop., Inc.*), 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history of § 1125 indicates that, in determining what constitutes 'adequate information' with respect to a particular disclosure statement, both the kind and form of information are left essentially to the judicial discretion of the court and that the information required will necessarily be governed by the circumstances of the case.") (internal citations omitted), *cert. denied*, 526 U.S. 1144 (1999); *Tex. Extrusion Corp. v. Lockheed Corp.* (*In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case-by-case basis. This determination is largely within the discretion of the bankruptcy court."). Congress granted bankruptcy courts such wide discretion in determining the adequacy of a disclosure statement to facilitate effective reorganizations of debtors in a broad range of businesses, taking into account the various circumstances that accompany chapter 11 cases. *See* H.R. REP. NO. 595, 95TH CONG., 1ST SESS. 408–09 (1977); *see also In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (noting that the adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed Interested parties"). Accordingly, the determination of whether a disclosure statement contains adequate information is made on a case-

by-case basis, focusing on the unique facts and circumstances of each case. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case.").

24.    Examples of the type of information that may be included in a disclosure statement so as to provide stakeholders with adequate information include:

a.  the circumstances that gave rise to the filing of the bankruptcy petition;

b.  an explanation of the available assets and their value;

c.  the anticipated future of the debtor(s);

d.  the source of the information provided in the disclosure statement;

e.  a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

f.  the condition and performance of the debtor while in chapter 11;

g.  information regarding claims against the estate;

h.  a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

i.  the accounting and valuation methods used to produce the financial information in the disclosure statement;

j.  information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;

k.  a summary of the plan of reorganization or liquidation;

l.  the collectability of any accounts receivable;

m.  any financial information, valuations, or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

n.  information relevant to the risks being taken by creditors and interest holders;

o.  the actual or projected value that can be obtained from avoidable transfers;

    p. the existence, likelihood, and possible success of non-bankruptcy litigation;

q. the tax consequences of the plan; and

r. the relationship of the debtor with its affiliates.

*See, e.g., In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); *see also In re Oxford Homes, Inc.,* 204 B.R. 264, 269 n.17 (Bankr. D. Me. 1997) (using a similar list); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same). Such a list is not meant to be comprehensive, and a debtor is not required to provide all the information on the list. Rather, the bankruptcy court must decide what is appropriate in each case in light of the particular facts and circumstances present. *See Ferretti*, 128 B.R. at 18–19 (adopting a similar list); *see also Phoenix Petroleum*, 278 B.R. at 393 (making use of a similar list but cautioning that "no one list of categories will apply in every case").

**B. The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code.**

25. The Disclosure Statement provides "adequate information" to allow Holders of Claims in the Voting Classes to make an informed decision about whether to vote to accept or reject the Plan. Specifically, the Disclosure Statement Contains a number of categories of information that collectively constitute "adequate information," including, without limitation:

| **Category** | **Description** | **Location in Disclosure Statement** |
|---|---|---|
| Introduction | An overview of the Plan, the Restructuring Support Agreement, and the DIP Facility. | Article I |
| Overview of Debtors' Business Operations | An overview of the Debtors' corporate history structure and operations, operations and assets, the Debtors' employees, and the Debtors' prepetition capital structure. | Article II |
| Events Leading to the Chapter 11 Filings | An overview of the Debtors' out-of-court restructuring efforts in response to macroeconomic headwinds. | Article II.D |

| **Category** | **Description** | **Location in Disclosure Statement** |
|---|---|---|
| Overview of the Chapter 11 Cases | An overview of the expected timetable of the Chapter 11 Cases, first day relief, retention applications, the Debtors' lease optimization process, and approach to LAGS Royalties. | Article III |
| Liquidation Analysis | An analysis of the hypothetical liquidation value of the Debtors. | Exhibit E |
| Financial Projections | Consolidated pro forma financial statements for the Debtors. | Exhibit D |
| Risk Factors | Certain risks associated with the Debtors' business, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. | Article IX |
| Voting Procedures and Requirements | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | Article VIII |
| Confirmation of the Plan | Confirmation procedures and statutory requirements for Confirmation of the Plan. | Article X |
| Important Securities Law Disclosures | An overview of the plan securities, the section 1145 of the Bankruptcy Code exemption, issuance and resale of the new common stock, definition of "underwriter" under section 1145(b) of the Bankruptcy Code, and section 4(a)(2) of the Securities Act Exemption and Subsequent Transfers. | Article VI |
| Certain Tax Consequences of the Plan | A description of certain U.S. Federal income tax law consequences of the Plan to the Debtors and to Holders of Allowed Claims. | Article VII |
| Recommendation | A recommendation by the Debtors that Holders of Claims in the Voting Classes should support the Confirmation and vote to accept the Plan. | Article XI |

26. In addition to the type of information that courts typically look for in a disclosure statement, the Disclosure Statement provides an analysis of the alternatives to confirmation and consummation of the Plan (Article V) and concludes with the Debtors' recommendation that Holders of Claims eligible to vote should vote to accept the Plan because it provides the highest and best recoveries to Holders of Claims against the Debtors.

27. Based on the foregoing, the Debtors will request at the Combined Hearing that the Court approve the Disclosure Statement as containing "adequate information" under section 1125(a) of the Bankruptcy Code. The Debtors submit that the Disclosure Statement contains sufficient information for a voting creditor to make an informed judgment regarding whether to vote to accept or reject the Plan. For solicitation purposes, the Debtors respectfully request that the Court approve the Disclosure Statement, on a conditional basis, as containing adequate information in satisfaction of the requirements of section 1125 of the Bankruptcy Code.

### C. The Disclosure Statement Provides Sufficient Notice of the Injunction, Release, and Exculpation Provisions in the Plan.

28. Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction. Fed R. Bankr. P. 3016(c). Similarly, Bankruptcy Rule 2002(c) requires that such disclosure be provided for the notice of the time fixed for filing objections and the hearing to consider confirmation of the chapter 11 plan.

29. Article VIII.F of the Plan and Article IV.H.6 of the Disclosure Statement describe the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing. The operative language is in bold or capitalized font, making it conspicuous to anyone who reads it. Articles VIII.C and VIII.D of the Plan and Articles IV.H.3 and IV.H.4 of the Disclosure Statement describe in detail the entities subject to or providing a release under the Plan, the Claims and Causes of Action so related, and Article VIII.E of the Plan and Article IV.H.5 of the Disclosure Statement describe in detail the entities entitled to exculpation under the Plan. Each of the foregoing sections is set forth, conspicuously, in bold typeface. Finally, the Disclosure Statement, the Ballot, the Non-Voting Status Notice, and the Combined Hearing Notice describe in detail and

in conspicuous, bold typeface the entities that are subject to or providing a release under the Plan

and the Claims and Causes of Action that are so released under the Plan.  Each of the Disclosure

Statement, the Ballot, the Non-Voting Status Notice, and the Combined Hearing Notice

conspicuously states that any party who does not affirmatively opt into the Third-Party Release as

a Releasing Party will not be bound by the Plan's release provisions.  Accordingly, the Disclosure

Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and

parties enjoined, released, or exculpated by the Plan, and the Combined Hearing Notice complies

with Bankruptcy Rule 2002(c) by conspicuously describing the nature and entities subject to the

Plan's release provisions.

## II.    The Court Should Approve the Combined Hearing

30.    Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least

28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to

consider the disclosure statement and any objections or modifications thereto." Local Rule 3017-1

provides that a hearing on a disclosure statement "shall be at least thirty-five (35) days following

service of the disclosure statement."  Section 1128(a) of the Bankruptcy Code provides that "[a]fter

notice, the court shall hold a hearing on confirmation of a plan."

31.    The Court may combine the hearing on the adequacy of the Disclosure Statement

and the hearing to confirm the Plan.  See 11 U.S.C. § 105(d)(2)(B)(vi) (authorizing the Court to

combine a hearing on approval of a disclosure statement with the confirmation hearing).  The

Debtors submit that a Combined Hearing would promote judicial economy and the expedient

reorganization of the Debtors.  Additionally, courts in this district have permitted combined

hearings in multiple other chapter 11 cases.  *See In re Zips Car Wash, LLC*, Case No. 25-80069

(MVL), Docket No. 240 (Bankr. N.D. Tex. March 18, 2025) (order entered March 18, 2025,

conditionally approving the disclosure statement and scheduling a combined hearing for April 18,

2025); *In re Eye Care Leaders Portfolio Holdings, LLC*, Case No. 24-80001 (MVL), Docket No. 583 (Bankr. N.D. Tex. June 23, 2024) (order entered June 23, 2024, conditionally approving the disclosure statement and scheduling a combined hearing for September 11, 2024); *In re Tarrant Cnty. Senior Living Ctr., Inc.*, Case No. 19-33756 (SGJ), Docket No. 44 (Bankr. N.D. Tex. Nov. 8, 2019) (order entered on November 8, 2019, conditionally approving the disclosure statement and scheduling a combined hearing for December 19, 2019); *In re Taco Bueno Restaurants, Inc.*, Case No. 18-33678 (SGJ), Docket No. 56 (Bankr. N.D. Tex. Nov. 9, 2018) (order entered on November 9, 2018, conditionally approving the disclosure statement and scheduling a combined hearing for December 19, 2018).[3] Therefore, the Debtors seek entry of an order conditionally approving the Disclosure Statement and scheduling the Combined Hearing on or before **July 1, 2025**, during which the Court will consider final approval of the adequacy of the Disclosure Statement and confirmation of the Plan.

32. The most sensitive and difficult task required to effectuate a successful reorganization—the formulation and negotiation of the key terms of a chapter 11 plan supported by critical creditor constituencies—was accomplished prior to the Petition Date. Accordingly, a Combined Hearing in these Chapter 11 Cases would promote judicial economy and enable the Debtors to expeditiously effectuate their restructuring, thus preserving value for their stakeholders. An expeditious emergence from chapter 11 will minimize the adverse effects of the chapter 11 filing on the Debtors' businesses and will serve to minimize administrative expenses of the estates.

33. The Debtors further request that the Scheduling Order provide that the Combined Hearing may be adjourned from time to time without further notice other than an announcement

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

of the adjourned date or dates in open court or notice of such adjourned date(s) available on the electronic case filing docket.

### III. The Court Should Approve the Confirmation Schedule

34. In order to determine who is entitled to notice, the Debtors request that the Court set **May 19, 2025 at 4:00 p.m. (prevailing Central Time)** as the record date for purposes of determining the Holders of Claims or Interests who are entitled to vote to accept or reject the Plan or receive the notices contemplated by this Motion (the "Voting Record Date"). Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan of reorganization, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. *See* Fed. R. Bankr. P. 3018(a). Bankruptcy Rule 3018(b) provides, among other things, that prepetition acceptances or rejections of a plan are valid only if the plan was "transmitted to substantially all creditors and equity security holders of the same class" and that the time for voting was not "unreasonably short." Fed. R. Bankr. P. 3018(b).

35. Here, the Voting Record Date is clearly identified in the Disclosure Statement and in each of the Ballots. Moreover, setting the Voting Record Date as **May 19, 2025** will allow the Debtors enough time to determine who is a Holder of a Claim in the Voting Classes so that such Holders may be provided with sufficient notice of the Combined Hearing and relevant deadlines, as explained below.

36. Specifically, Bankruptcy Rules 2002(b) and 3017(a) require twenty-eight (28) days' notice be given by mail to the debtor, creditors, equity security holders, and other parties in

interest of the time fixed for filing objections to, and the time of the hearing to consider, approval of a disclosure statement or confirmation of a plan of reorganization (subject to the Court's discretion to shorten such period under Bankruptcy Rule 9006(c)(1)). By this Motion, the Debtors seek to have the Court set the Objection Deadline (along with the Voting Deadline and Opt-In Deadline) as **June 24, 2025 at 4:00 p.m. (prevailing Central Time)**—which is thirty-one (31) days after the commencement of mailing of the Solicitation Packages to the Voting Classes and the Non-Voting Materials to the Non-Voting Classes under the proposed Confirmation Schedule. As described in more detail below, the materials in the Solicitation Packages and Non-Voting Materials provide numerous references to the Objection Deadline, Voting Deadline, and Opt-In Deadline. The Confirmation Schedule therefore satisfies Bankruptcy Rule 2002(b)'s requirement that parties receive at least twenty-eight (28) days' notice of the time to file an objection to the Plan and Disclosure Statement and the time to consider approving the Disclosure Statement. *See* Fed. R. Bankr. P. 2002(b)(1)-(2).

37. The Debtors further request that the Court require that objections to the adequacy of the Disclosure Statement and confirmation of the Plan (including objections related to the assumption of executory contracts and unexpired leases as provided thereunder) or proposed modifications to the Plan, if any, must:

a) be in writing;

b) comply with the Bankruptcy Rules and the Local Rules;

c) state the name and address of the objecting party and the amount and nature of the claim or interest owned by such entity against the estates or property of the Debtors;

d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such objections; and

e) be filed with the clerk of the Court with proof of service thereof and served upon: (i) co-counsel to the Debtors, Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, Illinois 60606 Attn: Chris Dickerson (Chris.Dickerson@ropesgray.com), Rahmon J. Brown (Rahmon.Brown@ropesgray.com), and Michael K. Wheat (Michael.Wheat@ropesgray.com) and Foley & Lardner LLP, 2021 McKinney Avenue, Suite 1600, Dallas, Texas 75201, Attn: Holland N. O'Neil (honeil@foley.com), Stephen A. Jones (sajones@foley.com), and Zachary C. Zahn (zzahn@foley.com); (ii) counsel to the DIP Lender, Sidley Austin LLP, 1999 Avenue of the Stars, Floor 17, Los Angeles, CA 90067, Attn: Genevieve Weiner (gweiner@sidley.com) and 787 7th Avenue, New York, NY 10019, Attn: Juliana Hoffman (jhoffman@sidley.com); (iii) counsel to the Ad Hoc Group of Noteholders, White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131 Attn: Brian Pfeiffer (brian.pfeiffer@whitecase.com) and Amanda Parra Criste (aparracriste@whitecase.com); (v) counsel to the Creditors' Committee, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, NY 10017, Attn: Robert J. Feinstein (rfeinstein@pszjlaw.com) and (iv) those parties who have filed a notice of appearance in these Chapter 11 Cases so as to be **actually received** by the Objection Deadline (collectively, the "Notice Parties").

38. The Debtors believe that the proposed timing for filing and service of objections and proposed modifications, if any, will afford the Court, the U.S. Trustee, the Debtors, and all other parties in interest sufficient time to consider the objections and proposed modifications prior to the Combined Hearing.

39. The Debtors further seek by this Motion to have the Court set the Combined Hearing for **July 1, 2025**, or as soon thereafter as the Court's schedule permits. By mailing the Combined Hearing Notice to all known parties in interest within one (1) Business Day of entry of the scheduling order, all known parties in interest will be given at least thirty-seven (37) days' notice of the Combined Hearing. This proposed schedule satisfies Bankruptcy Rule 2002(b)'s requirement that parties in interest be given at least twenty-eight (28) days' notice of the date of a disclosure statement or plan confirmation hearing. *See id.*

40. Subject to approval by the Court, the Debtors also intend to publish notice substantially in the form of the Combined Hearing Notice in the *Wall Street Journal*, or a similar

national publication, on or before the date that is two (2) Business Days after entry of the Scheduling Order, or as soon as reasonably practicable thereafter. This will afford unknown parties in interest with at least the same amount of days' notice of the relevant deadlines and the Combined Hearing. Thus, under the proposed Confirmation Schedule, all parties in interest—known and unknown will receive sufficient notice of the Combined Hearing and the related deadlines.

41. The Confirmation Schedule also conforms with the terms of the Restructuring Support Agreement. Specifically, the failure of the Effective Date to occur by July 7, 2025, which reflects an extension of the milestone set forth in the Restructuring Support Agreement and the DIP Credit Agreement, would constitute an event of default under such agreements and threaten the comprehensive restructuring transactions contemplated under the Restructuring Support Agreement and the Plan, both of which were heavily negotiated at arm's-length and a result of substantial bargained-for consideration by the Debtors and their key stakeholders. More importantly, the Debtors' failure to emerge from chapter 11 by the milestone set forth in the Restructuring Support Agreement and DIP Credit Agreement would lead to inevitable, material business disruption to the detriment of the Debtors, all of their stakeholders, and their employees. The Debtors must expeditiously confirm the Plan and emerge from chapter 11 to consummate the restructuring transactions contemplated in the Restructuring Support Agreement and Plan to ensure the near-term and long-term viability of the Debtors' businesses. The proposed Confirmation Schedule allows the Debtors to confirm the Plan by the milestone while also complying with all of the requirements of the Bankruptcy Code and Bankruptcy Rules.

42. Accordingly, pursuant to Bankruptcy Rules 2002(b), 3017, and 9006(c), the Debtors request that the Court approve the Confirmation Schedule, which includes scheduling

(a) the Combined Hearing for **July 1, 2025**, or as soon thereafter as the Court's calendar permits and (b) the Objection Deadline, Voting Deadline, and Opt-In Deadline for **June 24, 2025 at 4:00 p.m. (prevailing Central Time)**.

## IV. The Court Should Approve the Solicitation and Voting Procedures, Form and Manner of the Combined Hearing Notice, Notice of Non-Voting Status, and Opt-In Form

### A. Solicitation and Voting Procedures

43. The Debtors request that the Court approve the solicitation, balloting, tabulation, and related activities to be undertaken in connection with solicitation of the Plan (collectively, the "Solicitation and Voting Procedures"), substantially in the form attached to the Scheduling Order as Exhibit 2, which are proposed to be completed on the Confirmation Schedule set forth herein. As set forth below, the Debtors submit that the proposed Solicitation and Voting Procedures comply with the various applicable provisions of the Bankruptcy Rules, Bankruptcy Code, and non-bankruptcy laws and should be approved.

44. The Debtors seek conditional approval of the Disclosure Statement so that they may commence solicitation (and be able to accept votes from) all Holders of Claims in the Voting Classes within one (1) Business Day after the entry of the Scheduling Order, or as soon as reasonably practicable thereafter. Holders of Claims in Voting Classes will receive the Solicitation Package through their brokers, dealers, commercial banks, trust companies, or other agents or nominees (collectively, "Nominees"). The Nominees will be served with Ballots via electronic mail service. The Nominees will be provided with instructions to distribute (or to make available through customary means)[4] the Solicitation Packages to the beneficial Holders of the Claims in

[4] Notwithstanding the foregoing, Nominees are authorized to transmit Solicitation Packages and collect votes to accept or to reject the Plan from Beneficial Holders in accordance with their customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Ballot and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

the applicable Voting Classes. The Solicitation and Voting Procedures, as applicable to the Debtors' post-petition solicitation of the Plan, comply with the Bankruptcy Code and Bankruptcy Rules and should be approved.

45. Furthermore, the Debtors request that the Voting Agent be authorized to assist the Debtors in (a) distributing the Solicitation Package, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against and Interests in the Debtors, (c) responding to inquiries from Holders of Claims, Holders of Interests, and other parties in interest relating to the Disclosure Statement, the Plan, the Solicitation Package (including the Ballots) and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting Holders of Interests regarding the Plan. The Solicitation and Voting Procedures and the authorization of the Voting Agent's assistance therewith comply with Bankruptcy Rule 3018(c) and should be approved.

(i) <u>Approval of Form of Ballots</u>

46. The Debtors propose to send the Ballots to all Holders of Claims in the Voting Classes. Bankruptcy Rule 3017(d) requires that the Debtors use a form of ballot substantially conforming to Official Form No. 314. Although based on Official Form No. 314, the Ballots have been modified to (a) address the particular circumstances of the Chapter 11 Cases and (b) include certain additional information that is relevant and appropriate for Holders of Claims in the Voting Classes to consider in voting to accept or reject the Plan.

47. The Ballots advise recipients that such Ballots must be returned to the Voting Agent by the Voting Deadline and specify the applicable methods by which Ballots may be transmitted to the Voting Agent. Each Ballot also contains detailed instructions on how to complete it and how to make any applicable elections contained therein, including how to vote to accept or reject

the Plan.  The Ballots also inform Holders of Claims that the Plan contains certain release, exculpation, and injunction provisions, including the Third-Party Releases, and provides the full text of such provisions in bold typeface.  The Ballots advise such Holders that they may opt-in to granting the Third-Party Releases by marking a conspicuous "opt in" box on Item 2 of the Ballot and returning the ballot to the Voting Agent by the Voting Deadline.

48.     As an alternative to submitting a Class 2 Master Ballot or Class 3 Master Ballot, Nominees are authorized to "pre-validate" the Class 2 Beneficial Holder Ballot or Class 3 Beneficial Holder Ballot and forward it with the Solicitation Package to the beneficial holders with instructions to submit the pre-validated Class 2 Beneficial Holder Ballot or Class 3 Beneficial Holder Ballot directly to the Voting Agent.

49.     The materials in the Ballots and the Disclosure Statement also communicate how the Voting Agent will tabulate the votes and elections contained in the Ballots.  As set forth above, to be counted as votes to accept or reject the Plan, the Ballots are required to be properly executed, completed, and delivered to the Voting Agent so that they are received no later than the Voting Deadline.  That being the case, the Ballots advise Holders of Claims who receive a Ballot from a Nominee to return such Ballot to such Nominee with sufficient time for such Nominee to complete and return the Ballot to the Voting Agent prior to the Voting Deadline (in accordance with the Nominee's instructions).  For these reasons, the Debtors submit that the Ballots, substantially in the forms attached to the Scheduling Order as Exhibit 5-A, Exhibit 5-B, Exhibit 6-A, Exhibit 6-B, and Exhibit 7 are appropriate to each Voting Class and should be approved.

(ii)     Non-Solicitation of Classes Presumed to Accept or Reject the Plan

50.     The Debtors do not intend to provide Solicitation Packages to the Holders of Claims or Interests in the Non-Voting Classes.  Section 1126(f) of the Bankruptcy Code provides that each holder of a claim or interest in an unimpaired class is "conclusively presumed to have accepted the

plan, and solicitation of acceptances with respect to such class . . . is not required," 11 U.S.C. § 1126(f), and section 1126(g) provides that a class "is deemed not to have accepted a plan if such plan provides" that class members will not "receive or retain any property under the plan on account of such claims or interests," 11 U.S.C. § 1126(g). Pursuant to sections 1126(f) and (g), courts routinely have held that plan proponents are not required to solicit votes from, nor provide solicitation materials to, holders of claims or interests in classes that are not entitled to vote on the plan.[5]

51. Providing the Solicitation Packages to Holders of Claims or Interests in the Non-Voting Classes would be a significant and unnecessary administrative burden on the Debtors. It would mean providing hundreds of pages of documents to thousands of different entities, all of whom are ***not*** entitled to vote on the Plan. Instead of pursuing such a wasteful endeavor, the Debtors propose to send to Holders of Claims or Interests in the Non-Voting Classes copies of the: (a) Combined Hearing Notice; (b) Notice of Non-Voting Status; and (c) Opt-In Form. The Combined Hearing Notice, among other things, sets forth a summary of the key provisions of the Plan, the treatment of such Non-Voting Classes, and how to obtain a copy of the Plan and the Disclosure Statement.

52. The Notice of Non-Voting Status advises Holders of Claims or Interests in the Non-Voting Classes, among other things, of (a) the date of the Combined Hearing and the Objection Deadline, (b) their status as non-voting creditors or equity holders, and (c) the settlement, release, exculpation, and injunction language set forth in the Plan, including the Third-Party Releases. As with the Ballots, the Notice of Non-Voting Status and the Opt-In Form

---

5 *See*, *e.g.*, *In re PM Mgmt. – Killeen I NC LLC*, 2024 WL 1882915, at *2 (Bankr. N.D. Tex. Apr. 29, 2024) (holding that debtors "were not obligated to solicit votes" to accept or reject prepackaged plan from holders of claims and interests in non-voting classes pursuant to sections 1126(f) and (g) of the Bankruptcy Code) and *In re Taco Bueno Rests., Inc.*, 2018 WL 6720774, at *6 (Bankr. N.D. Tex. Dec. 20, 2018) (similar).

includes the full text of such release provisions in bold typeface.  The Notice of Non-Voting Status and the Opt-In Form further advise Holders of Claims or Interests in the Non-Voting Classes that they may opt into granting the Third-Party Releases by marking a conspicuous "opt in" box on Item 2 of the Opt-In Form and returning the completed Opt-In Form to the Voting Agent by the Voting Deadline.

53.    The Debtors believe that the mailing of Notice of Non-Voting Status and Opt-In Form in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d). Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute copies of the Plan and Disclosure Statement to Holders of Claims and Interests in the Non-Voting Classes. Holders of Claims or Interests in the Non-Voting Classes can obtain copies of the Disclosure Statement and the Plan at no cost through the Debtors' restructuring website maintained by the Voting Agent at https://cases.ra.kroll.com/Hooters/ or by contacting the Debtors' undersigned counsel.

54.    For all these reasons, the Debtors respectfully request that the Court approve the Solicitation and Voting Procedures.

**B.    The Form and Manner of Notices Related to the Combined Hearing and the Objection Deadline is Appropriate and Should be Approved**

55.    The Debtors request approval of the form and manner of the:

    a.    Combined Hearing Notice, substantially in the form attached to the Scheduling Order as Exhibit 3;

    b.    Publication Notice, substantially in the form attached to the Scheduling Order as Exhibit 4;

    c.    Notice of Non-Voting Status, substantially in the form attached to the Scheduling Order as Exhibit 8; and

    d.    Opt-In Form, substantially in the form attached to the Scheduling Order as Exhibit 9.

56. Together, as more fully described below, these notices comply with all applicable notice requirements for the Plan and Disclosure Statement.

**1. Notices to be Provided to the Voting Classes (Combined Hearing Notice)**

57. Bankruptcy Rule 3017(d) requires that, upon court-approval of a disclosure statement, creditors and equity holders be provided, among other things with notice of the time to file acceptances and rejections of the plan. *See* Fed. R. Bankr. P. 3017(d). The Combined Hearing Notice, which will be sent to Holders of Claims in the Voting Classes, among other things: (a) provides a brief summary of the Plan, including the key terms of the Plan; (b) discloses the (i) Voting Record Date; (ii) the Objection Deadline; (iii) the Opt-In Deadline; and (iv) the date of the Combined Hearing; (c) discloses the release, exculpation, and injunction provisions contained in the Plan, including the full texts of such provisions in bold typeface and relevant definitions; (d) instructs parties in interest on how they may obtain copies of the Plan and Disclosure Statement (which, for Holders of Claims in the Voting Classes, will be provided to them with the Solicitation Package); and (e) instructs parties in interest how they may vote on the Plan, object to the Plan, or opt-in to the Third-Party Releases contained in the Plan.[6]

58. The Combined Hearing Notice provides Holders of Claims in Voting Classes with greater notice than required under the Bankruptcy Rules and is appropriate under the circumstances. Accordingly, the Debtors respectfully request that the Court approve the form and manner of the Combined Hearing Notice, substantially in the form attached to the Scheduling Order as **Exhibit 3**.

[6] The Ballots and Disclosure Statement, which will also be provided to Holders of Claims in the Voting Class, contain similar notices and disclosures.

       **2. Notices to be Provided to the Non-Voting Classes and Unknown Parties in Interest (Combined Hearing Notice, Notice of Non-Voting Status, Publication Notice)**

59. As discussed above, the Non-Voting Classes are ***not*** entitled to vote on the Plan and will ***not*** receive the Solicitation Package. Bankruptcy Rule 3017(d) provides that, if a court orders that a disclosure statement and plan need not be mailed to an unimpaired class, then notice must be provided to the members of such unimpaired classes of the: (a) class's designation as unimpaired; (b) name and address of the person from whom the plan (or a summary of the plan) and disclosure statement may be obtained at the plan proponent's expense; (c) time to file an objection to the plan's confirmation; and (d) date of the confirmation hearing. *See* Fed. R. Bankr. P. 3017(d). The Debtors intend to provide the notices required under Bankruptcy Rule 3017(d) not only to Holders of Claims in the Unimpaired Classes but to all Holders of Claims and Interests in the Non-Voting Classes.

60. Specifically, the Notice of Non-Voting Status provides, among other things notice (a) that Holders of Claims and Interests in the Non-Voting Classes are not entitled to vote on the Plan; (b) of how to obtain a copy of the Plan and Disclosure Statement from the Voting Agent; (c) of how to object to the Disclosure Statement and Plan and the Objection Deadline; and (d) of the Third-Party Releases and how to opt-in to the Third-Party Releases. Moreover, Holders of Claims and Interests in the Non-Voting Classes will also receive copies of the Combined Hearing Notice, which, as explained above, provides notice required under Bankruptcy Rule 3017(d).

61. Finally, the Debtors intend to publish a copy of the Publication Notice in the *Wall Street Journal*, or a similar national publication, on or before the date that is two (2) Business Days after entry of the Scheduling Order, or as soon as reasonably practicable thereafter. A copy of the proposed Publication Notice is attached to the Scheduling Order as **Exhibit 4**. The Publication Notice will provide all potential parties in interest (including unknown creditors) with notice of

the Debtors' Chapter 11 Cases, a summary of the Plan, information regarding key dates, including the Combined Hearing, Objection Deadline, and Opt-In Deadline, the proposed treatments of Claims and Interests under the Plan, and certain other important related matters.  In addition, the Publication Notice will be made available on the Debtors' restructuring website maintained by the Voting Agent at https://cases.ra.kroll.com/Hooters/.    The Debtors believe that causing the Publication Notice to be published in a national publication, such as the *Wall Street Journal*, and posting the Publication Notice on the Debtors' restructuring website will provide sufficient notice of the approval of the Combined Hearing and relevant deadlines to entities who will not otherwise receive notice by mail as provided herein.

62.    For all of these reasons, the Debtors respectfully submit that the notices regarding the Combined Hearing and the Objection Deadline are appropriate and should be approved.

**V.    Confirmation of Plan**

63.    The Debtors believe that the Plan satisfies all of the requirements for confirmation under the Bankruptcy Code.  The Debtors request that the Court schedule the Combined Hearing at which time the Debtors will seek confirmation of the Plan.

## NOTICE

64.    The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Northern District of Texas; (b) the United States Attorney's Office for the Northern District of Texas; (c) the state attorneys general for all states in which the Debtors conduct business; (d) the Internal Revenue Service; (e) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (f) Sidley Austin, LLP as counsel to DIP Lenders; (g) White & Case LLP as counsel to the Ad Hoc Group of Securitization Noteholders;  (h) the Indenture Trustee; (i) Seward & Kissel, LLP as counsel to the servicer and control party under the A&R Base Indenture; (j) Pachulski Stang Ziehl & Jones LLP as counsel to the Creditors'

Committee; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The

Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is

necessary.

[*Remainder of page intentionally left blank.*]

## CONCLUSION

WHEREFORE, the Debtors respectfully request the Court enter the Scheduling Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: May 6, 2025
Dallas, Texas

**FOLEY & LARDNER LLP**

*/s/ Holland N. O'Neil*

**FOLEY & LARDNER LLP**
Holland N. O'Neil (TX 14864700)
Stephen A. Jones (TX 24101270)
Zachary C. Zahn (TX 24137675)
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
mmoore@foley.com
zzahn@foley.com

*Proposed Co-Counsel to the Debtors*

**ROPES & GRAY LLP**
Ryan Preston Dahl (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
ryan.dahl@ropesgray.com

**ROPES & GRAY LLP**
Chris L. Dickerson (admitted *pro hac vice*)
Rahmon J. Brown (admitted *pro hac vice*)
Michael K. Wheat (admitted *pro hac vice*)
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
chris.dickerson@ropesgray.com
rahmon.brown@ropesgray.com
michael.wheat@ropesgray.com

*Proposed Counsel to the Debtors*

**CERTIFICATE OF SERVICE**

I certify that on May 6, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Stephen A. Jones*
Stephen A. Jones