Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
(214) 767-8967

Asher Bublick
for the United States Trustee
asher.bublick@usdoj.gov

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | Case No.    25-80078-swe11 |
| | § | |
| **HOOTERS OF AMERICA, LLC, et al.,**[1] | § | **Chapter 11** |
| | § | |
| *Debtors*. | § | **Jointly Administered** |

## UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF ORDER (I) SCHEDULING A COMBINED HEARING ON (A) ADEQUACY OF DISCLOSURE STATEMENT ON A FINAL BASIS AND (B) PLAN CONFIRMATION; (II) FIXING DEADLINES RELATED TO DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION; (III) APPROVING (A) SOLICITATION AND VOTING PROCEDURES, (B) FORM AND MANNER OF COMBINED HEARING NOTICE AND OBJECTION DEADLINE, AND (C) NOTICE OF NON-VOTING STATUS; (IV) CONDITIONALLY APPROVING THE DISCLOSURE STATEMENT, AND (V) GRANTING RELATED RELIEF

TO THE HONORABLE SCOTT W. EVERETT, U.S. BANKRUPTCY JUDGE:

Lisa L. Lambert, the United States Trustee for Region 6 (the "**United States Trustee**"),

files this Objection to *Debtors' Motion for Entry of Order (I) Scheduling a Combined Hearing on*

*(A) Adequacy of Disclosure Statement on a Final Basis and (B) Plan Confirmation; (II) Fixing*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Hooters of America, LLC (5288); Owl Holdings, LLC (3103); Hawk Parent, LLC (2323); HOA Holdings, LLC (1180); Night Owl, LLC (4511); Owl Wings, LLC (4583); Owl Restaurant Holdings, LLC (7751); HOA Restaurant Group, LLC (7654); Derby Wings Holdings, LLC (8081); Derby Wings, LLC (6578); HOA Gift Cards, LLC (3684); Elf Owl Investments, LLC (3342); TW Lonestar Wings, LLC (3465); Alamo Wings, LLC (3702); HOA Holdco, LLC (8828); HOA Systems, LLC (2439); HOA Funding, LLC (4390); HOA Restaurant Holder, LLC (3883); HOOTS Restaurant Holder, LLC (5840); HOA IP GP, LLC (9555); HOOTS Franchising, LLC (8375); HOA Franchising, LLC (4451); HOA Maryland Restaurant Holder, LLC (1608); HOA Kansas Restaurant Holder, LLC (9045); TW Restaurant Holder, LLC (6927); DW Restaurant Holder, LLC (8261); HI Limited Partnership (2355); HOA Towson, LLC (1942); HOA Waldorf, LLC (5425); HOA Laurel, LLC (5010). The Debtors' service address is 1815 The Exchange SE, Atlanta, GA 30339.

*Deadlines Related to Disclosure Statement Approval and Plan Confirmation; (III) Approving (A) Solicitation and Voting Procedures, (B) Form and Manner of Combined Hearing Notice and Objection Deadline, and (C) Notice of Non-Voting Status; (IV) Conditionally Approving the Disclosure Statement, and (V) Granting Related Relief* (the "**Motion**," [ECF No. 263]). In support, the United States Trustee would show:

## OVERVIEW

The United States Trustee objects to the Motion for the following reasons:

(i)    Conditional approval of a disclosure statement in a non-small business chapter 11 case is not authorized by the Bankruptcy Code.

(ii)   The Debtors' proposed *Joint Plan of Reorganization of Hooters of America, LLC and its Affiliated Debtors* (the "**Plan**," [ECF No. 261]) may contain impermissible exculpations that render the Plan patently unconfirmable.[2]

(iii)  Because the Court approves the ballot when approving the Disclosure Statement,[3] and because here, the ballot will facilitate certain of the Plan's flaws, parties in interest should have an opportunity to object to the ballot and Disclosure Statement in advance of a confirmation hearing on a Plan with such impermissible provisions. Specifically, with regard to the Plan, the United States Trustee objects to the following:

   a.   To the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), the Plan's broad exculpation provision may contravene Fifth Circuit authority.

   b.   The Plan violates the Bankruptcy Code by imposing a sweeping injunction to enforce both the exculpation provision and the Plan releases. The Plan should specify that the Plan does not release claims of governmental entities exercising their police and regulatory authority.

## FACTUAL ALLEGATIONS

### *The Disclosure Statement, Plan, and Solicitation Materials*

1.    On May 6, 2025, Debtors filed their Plan, Disclosure Statement, and Motion.

[ECF Nos. 261, 262, 263].

---

[2] As discussed *infra*, the extent of the exculpation is unclear as "Exculpated Party" is undefined in the disclosure statement or plan.

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

2.      A hearing on the Motion and conditional approval of the Disclosure Statement is set for May 23, 2025. [ECF No. 281].

***Certain Disclosure Statement and Plan terms***

3.  Article III of the Plan sets forth the following classes of claims:

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Securitization Class A-2 Note Claims | Impaired | Yes |
| 3 | Securitization Class B Note Claims | Impaired | Yes |
| 4 | Non-Securitization Manager Advance Term Loan Claims | Impaired | Yes |
| 5 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 6 | Non-Securitization Term Loan Claims (Secured) | Unimpaired | No (Presumed to Accept) |
| 7 | Securitization Manager Advance Claims | Impaired | No (Deemed to Reject) |
| 8 | General Unsecured Claims | Impaired | No (Deemed to Reject) |
| 9 | Other Intercompany Claims | Impaired | No (Deemed to Reject) |
| 10 | Intercompany Interests | Impaired | No (Deemed to Reject) |
| 11 | Securitization Prepetition Master Issuer Equity Interests | Impaired | No (Deemed to Reject) |
| 12 | Other Securitization Prepetition Equity Interests | Unimpaired | No (Presumed to Accept) |
| 13 | Non-Securitization Prepetition Equity Interests | Impaired | No (Deemed to Reject) |

[ECF No. 261 at 32-33].

4.      Article VIII.D and the definition of Releasing Parties under the Plan describe an opt-in third-party release.

5.      Article VIII.E of the Plan sets forth the following exculpation:

---

**UNITED STATES TRUSTEE'S OBJECTION**                                      Page 3

E.    *Exculpation*

Without affecting or limiting the releases set forth in **Article VIII.C** and **Article VIII.D** of the Plan, and notwithstanding anything herein to the contrary, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the DIP Facility Documents, the Restructuring Support Agreement, the Plan (including the New Notes Documents and the Plan Supplement), the Disclosure Statement, the Restructuring Transactions, the New Debt, the Prepetition Loan Documents, the Securitization Notes Documents, the prepetition and postpetition marketing process, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, or participation in the New Debt, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in this **Article VIII.E** of the Plan shall not be construed as exculpating any party or Entity from its post-Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including, without limitation, the New Notes Documents, and the New Organizational Documents.

[ECF No. 261 at 68].

6.    Article VIII.F of the Plan sets forth the following injunction:

F.    *Injunction*

UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST, ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AFFILIATES, AND RELATED PARTIES SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN IN RELATION TO ANY CLAIM EXTINGUISHED, DISCHARGED, OR RELEASED PURSUANT TO THE PLAN.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTORS AND OTHER PARTIES IN INTEREST (OTHER THAN CLAIMS THAT ARE REINSTATED UNDER THE PLAN), ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AFFILIATES, AND RELATED PARTIES, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE WIND-DOWN ENTITY, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES (TO THE EXTENT OF THE EXCULPATION PROVIDED PURSUANT TO <u>ARTICLE VIII.E</u> OF THE PLAN WITH RESPECT TO THE EXCULPATED PARTIES): (I) COMMENCING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN; <u>PROVIDED, HOWEVER</u>, THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE SUCH ENTITIES FROM EXERCISING THEIR RIGHTS

PURSUANT TO AND CONSISTENT WITH THE TERMS HEREOF AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN.

BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST EXTINGUISHED, DISCHARGED, OR RELEASED PURSUANT TO THE PLAN WILL BE DEEMED TO HAVE AFFIRMATIVELY AND SPECIFICALLY CONSENTED TO BE BOUND BY THE PLAN, INCLUDING, WITHOUT LIMITATION, THE INJUNCTIONS SET FORTH IN THIS ARTICLE VIII.F.

THE INJUNCTIONS IN THIS ARTICLE VIII.F SHALL EXTEND TO ANY SUCCESSORS OF THE DEBTORS, THE REORGANIZED DEBTORS, THE WIND-DOWN ENTITY, THE RELEASED PARTIES, AND THE EXCULPATED PARTIES AND THEIR RESPECTIVE PROPERTY AND INTERESTS IN PROPERTY.

7.      Article I.D of the Plan provides that the Plan shall be construed and enforced in accordance with the laws of the State of New York:

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, that corporate or limited liability company governance matters relating to the Debtors not incorporated or formed (as applicable) in the State of New York shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor.

[ECF No. 261 at 27].

## OBJECTION

I.      **The Bankruptcy Code does not authorize conditional approval of a disclosure statement in non-small business cases.[4]**

   a.  *Statutory Framework*

8.      The statutory provision that governs postpetition disclosure and solicitation of a plan is 11 U.S.C. § 1125. The general provision governing solicitation of an acceptance or rejection of a plan is section 1125(b), which provides that:

---

[4] For the purposes of this Objection, the term "non-small business" shall not include subchapter V small business cases.

[a]n acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, *unless*, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a *written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.* The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

11 U.S.C. § 1125(b) (emphasis added).

9.      In 1994, Congress added a section that creates an exception to this general rule for small business cases:

Notwithstanding subsection (b), in a small business case –

(1) the court may determine that the plan itself provides adequate information and that a separate disclosure statement is not necessary;

(2) the court may approve a disclosure statement submitted on standard forms approved by the court or adopted under section 2075 of title 28;

(3) (A) the court may conditionally approve a disclosure statement subject to final approval after notice and a hearing;

(B) acceptances and rejections of a plan may be solicited based on a conditionally approved disclosure statement if the debtor provides adequate information to each holder of a claim or interest that is solicited, but a conditionally approved disclosure statement shall be mailed not later than 25 days before the date of the hearing on confirmation of the plan; and the hearing on the disclosure statement may be combined with the hearing on confirmation.

10.      At the same time that Congress added section 1125(f) to the Code, Congress also added section 105(d)(2). H.R. Rep. 103-834 (1994), reprinted in, Norton Bankruptcy Code, 2024-2025 ed., 1259.[5] Section 105(d)(2) states that "unless inconsistent with any other provision of this

---

[5] Section 1125 was also amended in 2005 with BACPA. Section 1125(a) was amended to provide that, in determining the adequacy of information in a disclosure statement, the court must consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost to provide the additional information.

title or with applicable Federal Rules of Bankruptcy Procedure, the court may issue an order at a status conference that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan." 11 U.S.C. § 105(d)(2) (emphasis added). Specifically, section 105(d)(2)(B)(vi) is directed at enforcing section 1125(f), which provides three different disclosure options in a small business case, all of which require a court order. Section 105(d)(2)(B)(vi) simply reflects that the court may issue an order on option 3—the conditional approval of a disclosure statement—at a status conference rather than upon a motion by the plan proponent.[6]

11.    The Federal Rules of Bankruptcy Procedures are likewise constructed so that conditional approval of disclosure statements in small business cases is the exception to the general rule that a disclosure statement must be approved before a plan is solicited. Fed. R. Bankr. P. 3017(a) provides that "[e]xcept as provided in Rule 3017.1, after a disclosure statement is filed in accordance with Rule 3016(b), the court shall hold a hearing on at least 28 days' notice . . . to consider the disclosure statement and any objections or modifications thereto." Fed. R. Bankr. P. 3017.1(a), again, provides an exception to that general rule that "[i]n a small business case or in a case under subchapter V of chapter 11 in which the court has ordered that § 1125 applies, the court may, on application of the plan proponent or on its own initiative, conditionally approve a disclosure statement filed in accordance with Rule 3016." As with the statute, nowhere do the Federal Rules of Bankruptcy Procedure provide that conditionally approving a disclosure statement is an option for any debtor who is in a not a small business debtor.

---

The BAPCPA amendment to section 1125 suggests that Congress was attempting to ease the bankruptcy process for smaller, less complex cases.

[6] Section 105(d)(2) "explicitly authorizes a procedure used in some jurisdictions that placed smaller Chapter 11 cases on a more expeditious and less costly procedure for confirmation of Chapter 11 plans." William L. Norton, Jr., Norton Bankruptcy Law & Practice 3d § 13:7 (Supp. Jan. 2025). Thus, section 105(d)(2) codified what had been a local practice in some jurisdictions for expediting the bankruptcy process for small business cases.

12.     By the Motion, the Debtors propose, essentially, to use a procedure statutorily created for small business cases in their complex chapter 11 case. But the United States Bankruptcy Code does not authorize the extension of the small business case procedures to non-small business chapter 11 cases. Under the statute, conditional approval is only available in small business cases. In all other cases, the court must approve a disclosure statement before a plan can be solicited. To apply conditional approval of a disclosure statement and combined hearing to a non-small business case effectively writes out the requirements of section 1125(b) and Fed. R. Bankr. P. 3017 and is, thus, inconsistent with the limitation Congress placed on section 105(d) that an order under that section should not be "inconsistent with any other provision of [the Bankruptcy Code] or with applicable Federal Rules of Bankruptcy Procedures."

13.     This Court's General Order 2023-01, Procedures for Complex Cases in the Northern District of Texas (the "**Complex Procedures**"), sets up a procedure for complex bankruptcy cases whereby the debtor may request conditional approval of its disclosure statement and a combined hearing on final approval of the disclosure statement and plan. The Complex Procedures, as a form of local rule, may not "abridge, enlarge or modify any substantive right." *See* 28 U.S.C. § 2075; *see also* Fed. R. Bankr. P. 9029. By making the concept of a conditional approval of the disclosure statement and a combined hearing on the plan and final approval of the disclosure statement applicable to complex cases, the Complex Procedures enlarge the application of section 1125(f) to non-small business debtors. The eight cases in which such conditional approval and/or a combined hearing have already been decided in this district are not dispositive in this case because (i) they were wrongly decided based upon the plain meaning of section 1125(b) and (f) and (ii) section 105(d)(2) is explicit that any action taken under section 105(d)(2) shall not

be "inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure."

> ### b. *The general rules of statutory construction instruct that conditional approval of a disclosure statement is not available to non-small business debtors.*

14.    "[A] negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) (interpreting 10 U.S.C. § 821). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (interpreting provisions of the Racketeering Influenced and Corrupt Organizations Act) (citations omitted). "[N]egative implications raised by disparate provisions are strongest when the portions of a statute treated differently had already been joined together and were being considered simultaneously when the language raising the implication was inserted." *Lindh v. Murphy*, 521 U.S. 320, 330 (1997).

15.    In the bankruptcy context, the Supreme Court has addressed this issue multiple times. In *Field v. Mans*, 516 U.S. 59, 75 (1995), interpreting 11 U.S.C. § 523(a), the Supreme Court observed that "[t]he more apparently deliberate the contrast, the stronger the [negative] inference." Further in the context of interpreting 11 U.S.C. § 1129(a), the Supreme Court observed in *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) that "[i]t is a commonplace of statutory construction that the specific governs the general." "That is particularly true where . . . 'Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions.'" *RadLAX*, 566 U.S. at 645. *See also HCSCLaundry v. United States*, 450 U.S. 1, 6 (1981) (noting that the specific governs the general "particularly when

the two are interrelated and closely positioned" as parts of the same statute and cited with favor in *RadLAX*).

16.     Section 1125(b) and section 1125(f) are just three subsections apart. They are part of the same statute, part of the same section of that statute, and part of the same comprehensive scheme, that of chapter 11 bankruptcy. Congress knew how to authorize conditional approval of a chapter 11 disclosure statement, as evidenced by the plain language of section 1125(f). Congress did not include conditional approval of a chapter 11 disclosure statement in section 1125(b), applicable to non-small business cases. The negative inference, therefore, of the exclusion of the option of conditional approval in section 1125(b) is that Congress did not intend to provide the option of conditional approval to non-small business cases.

17.     There are good policy reasons for allowing conditional approval in small business cases, which typically have fewer creditors and a less complex debt structure, versus non-small business cases with larger creditor bodies and more complex debt structures. Even before subchapter V was introduced into the Bankruptcy Code, the small business provisions of chapter 11 streamlined small businesses cases, which typically have business and debt structures for which the rigorous disclosure procedures the Bankruptcy Code establishes as the general rule may not have been necessary.

> ### c. Section 105(d)(2) does not provide authority for conditional approval of disclosure statements in non-small business cases.

18.     The language at the beginning of section 105(d)(2)—"unless inconsistent with any other provision of [the Bankruptcy Code] or with applicable Federal Rules of Bankruptcy Procedures"—informs the application of each subsequent provision of that statute. "Section 105(d) is limited, however, by its terms. The court cannot make an order that is inconsistent with the Bankruptcy Code or Rules." *In re Amster Yard Assoc.*, 214 B.R.122, 124 (Bankr. S.D.N.Y. 1997).

Solicitation of a plan upon a conditionally approved disclosure statement in a non-small business

case is inconsistent with section 1125(b)'s requirement that a disclosure statement be approved

prior to solicitation in non-small business cases. As Judge Bernstein held in *Amster Yard*, "Section

1125(b) precludes postpetition solicitation of an acceptance or rejection of the plan until the court

has approved the disclosure statement after notice and a hearing, and the proponent has transmitted

the plan (or a summary) and the approved disclosure statement to the creditor." *Amster Yard*, 214

B.R. at 123-24.

19.     Decisions to the contrary are unpersuasive. For example, the bankruptcy court for

the Northern District of Illinois, in *In re St. Margaret's Heath – Peru*, 659 B.R. 691 (Bankr. N.D.

Ill. 2024), held that section 105(d)(2) gives courts the option to approve a combined hearing on a

disclosure statement and plan in non-small business cases and that section 1125(f) only clarifies

that a combined hearing on a disclosure statement and plan is "automatic" for small business cases.

St. Margaret's, 659 B.R. at 701. The *St. Margaret's* court suggests that the word "notwithstanding"

in section 1125(f), rather than referring to section 1125(b), as is the plain language of the statute,

"instead should be read to mean that small business chapter 11 cases may use [the combined

hearing on a plan and disclosure statement] without clearing the hurdle in [section 105(d)] that the

court deem a combined hearing 'appropriate to ensure that the case is handled expeditiously and

economically.'" *St. Margaret's*, 659 B.R. at 700-01 (emphasis in original). But this reading of

sections 1125(f) and 105(d)(2) ignores the caution in section 105(d)(2) that a court may take such

actions as listed therein "unless inconsistent with another provision of [the Bankruptcy Code] and

Federal Rules of Civil Procedure."

20.     Solicitation of a plan without final approval of a disclosure statement is inconsistent

with the plain language of section 1125(b). Rather than rendering section 105(d)(2) surplusage, as suggested by the *St. Margaret's* court (*St. Margaret's*, 659 B.R. at 701-02), this reading gives effect to all of the statutory provisions at issue – section 105(d)(2), section 1125(b), and section 1125(f). Had Congress wished to extend the option of a combined hearing on a disclosure statement and a plan to non-small business cases, Congress could have amended section 1125(b) to provide such option. Moreover, the other provisions of section 105(d)(2) neither confer rights or nor alter substantive provisions of the Bankruptcy Code. And though the *St. Margaret's* court questioned why Congress added section 105(d)(2)(B)(vi) when section 1125(f) already allowed for a combined hearing, as noted above, the inclusion of the ability of the Court to issue an order authorizing the combined hearing on a disclosure statement and plan is actually appropriately directed at enforcing section 1125(f).

21.     *In re Gulf Coast Oil Corporation, et al.*, 404 B.R. 407 (Bankr. S.D. Tex. 2009) likewise misapplies section 105(d)(2). The *Gulf Coast Oil* court stated, without analysis, that section 105(d) authorized the court to combine the hearing on the disclosure statement and plan in non-small business cases. *Gulf Coast Oil*, 404 B.R. at 425. The *Gulf Coast Oil* court's interpretation of section 105(d), like in *St. Margaret's*, reads the phrase "unless inconsistent with another provision of [the Bankruptcy Code] or with applicable Federal Rules of Bankruptcy Procedures" out of section 105(d)(2).

## II.     The Court should also decline to conditionally approve the Disclosure Statement because the Plan is patently unconfirmable.

22.     Even if the Court were inclined to allow conditional approval of the Disclosure Statement in this mega case, as a general matter, if there is a defect that renders a plan patently or inherently unconfirmable, the Court may consider and resolve that issue at the disclosure statement stage before requiring parties to proceed with solicitation of the plan and a contested confirmation

hearing. *In re American Capital Equipment, LLC*, 688 F.3d 145, 153-54 (3d Cir. 2012). *See also In re United States Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996).

23.     The Court's equitable powers under 11 U.S.C. § 105 permit the Court to control its own docket and, therefore, to decline to approve a disclosure statement when the plan it supports may not be confirmable. *In re American Capital Equipment, LLC*, 688 F.3d at 154. A plan is patently unconfirmable when confirmation defects cannot be overcome by creditor voting and the confirmation defects relate to matters upon which the material facts are not in dispute or have been fully developed at the disclosure statement hearing. *Id.* at 154-55.

24.     The Plan is patently unconfirmable because it may contain impermissible exculpation provisions. Conditional approval of the Disclosure Statement in support of a plan with such impermissible terms would mean that a patently unconfirmable Plan would be solicited. Rather, the Court should require the Plan and Disclosure Statement be amended to remove and/or clarify and tailor the exculpation so that they comply with applicable law.

   *a.* **The Plan's exculpation provisions may violate Fifth Circuit authority.**

25.     The Plan may also be patently unconfirmable because, to the extent that applicable law authorizes exculpations beyond 11 U.S.C. § 1125(e), the Plan's exculpation provisions may be too broad in contravention of Fifth Circuit precedent.

26.     The Plan does not define "Exculpated Party," despite being used throughout the Plan, however the Plan defines "Exculpated Fiduciaries"—a term which does not appear elsewhere in the Plan—as "collectively, and in each case solely in their capacities as such: (i) the Debtors, (ii) each independent director of the Debtors, and (iii) the Creditors' Committee and each of its members." [ECF No. 261 at Article I.A.73.]

27.     The Fifth Circuit has affirmed that, in accordance with *Bank of New York Trust Company, NA v. Official Unsecured Creditors' Committee (In re Pacific Lumber Co.)* 584 F.3d 229 (5th Cir. 2009), and section 524(e) of the Bankruptcy Code, "any exculpation in a Chapter 11 reorganization plan [must] be limited to the debtor, the creditors' committee and its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees within the scope of their duties . . . ." *NexPoint Advisors, L.P. v. Highland Cap. Mgmt. L.P., (In re Highland Cap. Mgmt., L.P.*), 48 F.4th 419, 437 (5th Cir. 2022).

28.     Specifically, the Fifth Circuit in *Highland Capital* analyzed whether the independent directors, who were specifically appointed to act together similar to a bankruptcy trustee, could be exculpated and concluded that they could because they "were entitled to all the rights and powers of a trustee." 48 F.4th at 437.

29.     The Fifth Circuit in *Highland Capital* then rejected any exculpation for the debtors' employees, officers, directors, and professionals:

> As it stands, the Plan's exculpation provision extends to Highland Capital and its employees and CEO; Strand; the Reorganized Debtor and HCMLP GP LLC; the Independent Directors; the Committee and its members; the Claimant Trust, its trustee, and the members of its Oversight Board; the Litigation Sub-Trust and its trustee; professionals retained by the Highland Capital and the Committee in this case; and all "Related Persons." *Consistent with § 524(e), we strike all exculpated parties from the Plan except Highland Capital, the Committee and its members, and the Independent Directors.*

*Highland Capital*, 48 F.4th at 438 (emphasis added).

30.     The list of Exculpated Parties in the Plan may exceed what is permissible under the law of this Circuit.[7] Accordingly, the Court should deny to conditionally approve the Disclosure

---

[7] As mentioned *supra*, the Plan does not define "Exculpated Party," only "Exculpated Fiduciaries."

Statement in support of the Plan to the extent that it contains an exculpation that does not comport

with the Fifth Circuit's direction in *Highland Capital*.

31.     To the extent that the Exculpation is intended to apply to the Exculpated Fiduciaries

as defined in the Plan, the Debtors should amend the Plan to remove all references to the undefined

term "Exculpated Parties" and replace them with the defined term "Exculpated Fiduciaries."

### III.     The Plan is patently unconfirmable because there is no authority for the injunction against bringing claims against non-debtors.

32.     The Injunction set forth in Article VIII.F. of the Plan purports to permanently enjoin

post-confirmation actions against non-debtors, including the Released Parties and the Exculpated

Parties.

33.     The Plan, at Article VIII.D, contains a broad third-party release of a wide variety

of non-debtor entities on an **opt-in** basis.  But claim and interest holders who *do not* opt in to the

third-party release set forth in Article VIII.D of the Plan are still bound by the proposed injunctions

in Article VIII.F. Specifically, the injunction against interference with the plan applies to "all

holders of claims and interests and other parties in interest, along with their respective present or

former employees, agents, officers, directors, principals, affiliates, and related parties" as to "any

claim extinguished, discharged, or released pursuant to the plan."  And the other injunction applies

to "all entities that have held, hold, or may hold claims against or interests in the debtors and other

parties in interest (other than claims that are reinstated under the plan), along with their respective

present or former employees, agents, officers, directors, principals, affiliates, and related parties"

in relation to non-debtors, including the released parties and the exculpated parties (who are

undefined).  But the Fifth Circuit of Appeals has held that non-debtor parties not entitled to a plan

exculpation or release may not then be shielded from liability through injunctive or gatekeeping

provisions. *NexPoint Advisors, LP v. Highland Capital Management, LP (In re Highland Capital*

*Management, LP),* 132 F.45th 353, 362 (5th Cir. 2025) ("**_Highland II_**").   *Highland II* dealt

specifically with an injunction against interference against the plan, which it held must be limited

solely to those parties entitled to exculpation.

34.     This provision attempts to deem consent to these provisions by including the

following inappropriate language:

> **BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE PLAN, EACH
> HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST
> EXTINGUISHED, DISCHARGED, OR RELEASED PURSUANT TO THE PLAN
> WILL BE DEEMED TO HAVE AFFIRMATIVELY AND SPECIFICALLY
> CONSENTED TO BE BOUND BY THE PLAN, INCLUDING, WITHOUT
> LIMITATION, THE INJUNCTIONS SET FORTH IN THIS ARTICLE VIII.F.**

35.     This language must be stricken from the Plan, as debtors cannot provide claimants

an opt in to a release and then try to deem them to consent to what is functionally the same release

effectuated through an injunctions by their silence.[8]   Merely receiving a distribution under the

Plan—to which claim and interest holders have a statutory right—cannot reasonably be understood

as manifesting consent to an injunction against non-debtors, especially where the Fifth Circuit has

explicitly held such injunctions are not available under the Bankruptcy Code except in limited

circumstances relating to exculpated parties.

36.     Nevertheless, even when the third-party release is consensual as to parties that opt

in, that does not mean that the court has authority to impose an injunction.   An injunction is

critically different from a consensual non-debtor release. The legal effect of a consensual release

is based on the parties' agreement.   *See Continental Airlines Corp. v. Air Line Pilots Assn., Int'l

(In re Continental Airlines Corp.)*, 907 F.2d 1500, 1508 (5th Cir. 1990) (holding that for settlement

provisions "unrelated to substantive provisions of the Bankruptcy Code," "the settlement itself is

---

[8] The U.S. Trustee reserves all her rights to make further arguments against this language at confirmation if it is not
removed from the Plan and Disclosure Statement.

the source of the bankruptcy court's authority"). The non-debtor parties themselves are altering their relations; the court is not using its judicial power to effect that change. An injunction, by contrast, relies on the court's power to enter orders binding on parties. The court must therefore have both constitutional and statutory authority to enter an injunction. And, once such jurisdiction and authority are established, the court must still determine that an injunction is warranted. But jurisdiction, authority, and a showing that injunctive relief is warranted are all absent here.

### a. *The Court lacks jurisdiction to enter a permanent injunction via the Plan*

37. First, the bankruptcy court lacks jurisdiction to enter a permanent injunction barring claims between non-debtors. *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 755, 757 (1995). While 28 U.S.C. § 1334(b) provides concurrent jurisdiction over civil proceedings "related to" a bankruptcy case, the enjoined claims between non-debtors do not "relate to" the Debtors' chapter 11 case.

38. "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and in any way impacts upon the handling and administration of the bankrupt estate." *Zale*, 62 F.3d at 752. "For jurisdiction to attach, the anticipated outcome of the action must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999). Post-confirmation jurisdiction is more limited. "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Bank of Louisiana v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Texas, Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001). "No longer is expansive

bankruptcy court jurisdiction required to facilitate 'administration' of the debtor's estate, for there is no estate left to reorganize." *Id.* (cleaned up).

39.     Here, the claims between non-debtors are not property of Debtors or the estate, will not impact the estate, and do not bear on the execution of the Plan.  "[T]he state law causes of action" barred by the injunction "do not bear on the interpretation or execution of the debtor's plan." *Craig's Stores*, 266 F.3d at 391.  Nor would the post-confirmation pursuit of such claims against non-debtors have any impact on the Debtors' bankruptcy estate, which ceases to exist at confirmation.  Accordingly, the bankruptcy court has no jurisdiction to enjoin those claims. *Craig's Stores*, 266 F.3d at 391; *Zale*, 62 F.3d at 756-57.

40.     The bankruptcy court also lacks jurisdiction to enter injunctive relief because the Debtors lack standing to seek it.  A party seeking injunctive relief must have standing to do so. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *Wells Fargo Bank, N.A. v. Stewart (In re Stewart)*, 647 F.3d 553, 557 (5th Cir. 2011).  To have standing, the party seeking injunctive relief must show "that he has sustained or is immediately in danger of sustaining some direct injury" and "the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Lyons*, 461 U.S. at 105; *see also Stewart*, 647 F.3d at 557.  "Absent such a showing, there is no case or controversy regarding prospective relief, and thus no basis in Article III for the court's power to issue an injunction."[9]  *Stewart*, 647 F.3d at 557; *accord Lyons*, 461 U.S. at 101-02.  The Debtors have made no such showing here. Accordingly, the bankruptcy court lacks jurisdiction to enter injunctive relief barring the released claims.

> ### b.   There is no authority under the Bankruptcy Code for an injunction barring claims between non-debtors.

---

[9] Although the bankruptcy court is not an Article III court, "[a] party that lacks standing to support jurisdiction in an Article III court also lacks standing for that claim to be adjudicated by a bankruptcy court."  *Stewart*, 647 F.3d at 557.

41.     Second, there is no authority in the Bankruptcy Code for the injunction barring claims between non-debtors.  The Trustee cannot rely on section 105(a) for this authority because it "serves only to carry out authorities expressly conferred elsewhere in the code."  *Purdue*, 603 U.S. at 216 n.2 (internal quotation marks omitted).  But nothing in the Code authorizes the court to use its judicial power to bar claims between non-debtors.  *Id*. at 227.

### c.   *The proposed injunction is not warranted by the traditional factors that support injunctive relief.*

42.     Finally, such an injunction is not warranted by the traditional factors that support injunctive relief.  A party seeking an injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'") (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)); *id*. (noting that an injunction is an "extraordinary remedy").

43.     The Debtors have not shown that any of these factors are met.  There is no imminent threat that anyone is going to bring suit on a released claim against the non-debtors sought to be protected by the proposed injunction.  Further, if a released claim is brought post-confirmation, the release may be asserted as an affirmative defense.  An injunction "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat."  *Lyons*, 461 U.S. at 111 (cleaned up).  Further, the injunction harms those bound by it because it precludes them from challenging the applicability or enforceability of

the third-party release (*e.g.*, based on mistake or lack of capacity) under applicable non-bankruptcy law.

**IV.     The Plan should clarify that claims of governmental agencies are not released.**

44.     The "police and regulatory power" exception to the automatic stay found at 11 U.S.C. § 362(b)(4) is designed to ensure that the stay "does not impede government's ability to protect public health and safety." *In re Wyly*, 526 B.R. 194, 198 (Bankr. N.D. Tex. 2015). Preserving governmental entities' ability to protect public health and safety is particularly important in the context of a food service company.

45.     The Disclosure Statement does not contain adequate information as to whether governmental police and regulatory powers are preserved. The Debtors should modify the Plan to clarify that no party shall be released from any causes of action or proceedings brought by any governmental agencies in accordance with their regulatory functions, including but not limited to criminal and environmental matters. The United States Trustee requests that the Debtors include the following language in the Plan:

> Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the

environmental laws or any criminal laws of the United States or any
state and local authority against any party or person.

## CONCLUSION

The United States Trustee respectfully requests that the Court deny to conditionally

approve the Disclosure Statement. The United States Trustee also requests any other relief to which

she may be entitled.


Dated: May 19, 2025                     Respectfully submitted,

                                        LISA L. LAMBERT
                                        UNITED STATES TRUSTEE

                                        */s/ Asher M. Bublick*
                                        Asher M. Bublick
                                        Texas State Bar No. 24113629
                                        Office of the United States Trustee
                                        1100 Commerce Street, Room 976
                                        Dallas, Texas 75242
                                        (214) 767-8967
                                        asher.bublick@usdoj.gov




## CERTIFICATE OF SERVICE

I certify that on May 19, 2025, that I sent a copy of the forgoing document via ECF.

                                        */s/ Asher M. Bublick*
                                        Asher M. Bublick