| | |
|---|---|
| Judith Elkin, Esq. (TX Bar No. 06522200)<br>Theodore S. Heckel, Esq. (admitted *pro hac vice*)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>700 Louisiana Street, Suite 4500<br>Houston, TX 77002<br>Telephone:  (713) 691-9385<br>Facsimile: (713) 691-9407<br>Email:   jelkin@pszjlaw.com<br>            theckel@pszjlaw.com | Bradford J. Sandler, Esq. (admitted *pro hac vice*)<br>Robert J. Feinstein, Esq. (admitted *pro hac vice*)<br>Shirley S. Cho, Esq. (admitted *pro hac vice*)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>1700 Broadway, 36th Floor<br>New York, NY 10019<br>Telephone: (212) 561-7700<br>Facsimile:  (212) 561-7777<br>Email:   bsandler@pszjlaw.com<br>            rfeinstein@pszjlaw.com<br>            scho@pszjlaw.com |

*Counsel to Drivetrain, LLC as Wind-Down Officer*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>Hooters of America, LLC, *et al.*,[1]<br><br>           Post-Effective Date Debtors. | Chapter 11<br><br>Case No. 25-80078 (SWE)<br><br>(Jointly Administered) |

## OBJECTION OF DRIVETRAIN LLC TO THE ICEBOX COOL STUFF, LLC'S MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM
**(Related Docket No. 1225)**

Drivetrain LLC ("Drivetrain"), in its capacity as Wind-Down Officer ("WDO") of each Wind-Down Entity and sole managing member of each Reorganized Debtor, as appointed pursuant to and in accordance with the *Fourth Amended Joint Chapter 11 Plan of Reorganization of Hooters of America, LLC and its Affiliated Debtors* [Docket No. 1142] (the "Plan")[2] as confirmed by the

---

[1] The Post-Effective Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Hooters of America, LLC (5288); Hawk Parent, LLC (2323); HOA Gift Cards, LLC (3684); HOA Holdco, LLC (8828); HOA Systems, LLC (2439); HOA Funding, LLC (4390); HOA Restaurant Holder, LLC (3883); HOOTS Restaurant Holder, LLC (5840); HOA IP GP, LLC (9555); HOOTS Franchising, LLC (8375); HOA Franchising, LLC (4451); HOA Maryland Restaurant Holder, LLC (1608); HOA Kansas Restaurant Holder, LLC (9045); TW Restaurant Holder, LLC (6927); DW Restaurant Holder, LLC (8261); HI Limited Partnership (2355); HOA Towson, LLC (1942); HOA Waldorf, LLC (5425); HOA Laurel, LLC (5010). The Debtors' service address is 1815 The Exchange SE, Atlanta, GA 30339.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan, or as applicable, the Motion.

4927-9677-2235.1 36906.00001                                    1

United States Bankruptcy Court for the Northern District of Texas (the "Court") on October 30, 2025 pursuant to the *Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Hooters of America, LLC and Its Affiliated Debtors* [Docket No. 1146] (the "Confirmation Order"), submits the following *Objection* (the "Objection") to the *Motion for Allowance of Administrative Claim* [Docket No. 1225] (the "Motion") filed by The Icebox Cool Stuff, LLC ("Icebox" or "Claimant"), and for such respectfully represents as follows:

## I. PRELIMINARY STATEMENT[3]

1. On October 2, 2019, Debtor HOA Holdco, LLC ("Debtor" or "Customer") and Icebox entered into the Icebox Fulfillment Agreement (the "Fulfillment Agreement"),[4] pursuant to which, Icebox would act as a nonexclusive provider of uniforms, promotional products and apparel for Customer, in exchange for which Customer would pay Icebox invoices in accordance with the pricing schedule set out in Exhibit A to the Fulfillment Agreement. Exhibit A to the Fulfillment Agreement contains a list of products and the price for each product.

2. In the Motion, Icebox seeks payment of an alleged Administrative Claim of $81,767.72 for what it denominates as "Post-Petition Services" relating to Icebox's post-petition/pre-rejection performance of the Fulfillment Agreement. These alleged "Post-Petition Services" are divided into four categories: (i) Postpetition A/R in the amount of $18,026.35, (ii) Storage Costs in the amount of $16,480.00, (iii) Administrative Costs in the amount of $29,790.00, and (iv) Interest Costs in the amount of $17,471.37.

---

[3] Under the Plan, the WDO has 180 days from the Effective Date to object to administrative claims and any such applications. See Plan, Art. I.A. Def. 31 "Claim Objection Deadline"; Art. II.A. at p. 29. That deadline is April 29, 2026.

[4] The Fulfillment Agreement (with specific pricing terms redacted) is attached to the Motion as Exhibit A.

3. Prior to the filing of this Objection, the post-Effective Date Debtors' accounting staff and Claimant were able to reach agreement on the Postpetition A/R in that certain of the invoices referenced in the Motion were either the responsibility of the Buyer Group under the Plan or of certain franchisees.[5] Thus, of the $18,026.35 in Postpetition A/R requested in the Motion, only **$1,442.97** (the "HOA A/R Amount") are invoices owed by the Debtors. The WDO has agreed to pay the HOA A/R Amount.

4. The WDO[6] objects to the remaining relief requested in the Motion. None of the other categories of alleged "Post-Petition Services" set out in the Motion: Storage Costs, Administrative Costs, and Interest Costs are obligations of the Debtors under the Fulfillment Agreement and none meet the test for an allowed administrative expense under section 503(b)(1)(A) of the Bankruptcy Code. The Motion should be denied except as to the HOA A/R Amount.

## II. OBJECTIONS

5. As acknowledged by Icebox, the Fulfillment Agreement was rejected by the Debtors as of the Effective Date of the Plan.[7] To the extent Icebox provided goods and services to the Debtors during the Chapter 11 Cases in accordance with the Fulfillment Agreement and such goods and services provided a benefit to the Debtors as an actual and necessary cost of preserving the estates, they would be entitled to administrative priority. The HOA A/R Amount is the sole

---

[5] *See* Fulfillment Agreement, § 1 ("Customer's franchisees and licensees shall be solely responsible for any payment obligations, and Customer shall not be liable in anyway for the obligations or any liability of its franchisees or licensees.")

[6] Under the Plan, the WDO is responsible for, among other things, paying certain Administrative, Secured and Priority Claims in accordance with the Plan and the Wind-Down Budget.

[7] Motion at ¶ 9.

amount of actual and necessary costs of preserving the estate incurred by the Debtor pursuant to the Fulfillment Agreement.

6. Icebox asserts, without any reference to the Fulfillment Agreement, that it is entitled to an "administrative claim for the Storage Costs, Administrative Costs, and Interest Costs as the 'overhead and incidental costs' incurred by The Icebox to satisfy the Inventory Commitment under the Fulfillment Agreement and make the Product available for purchase by Customer."[8] Icebox mimics the language used by the Fifth Circuit in *In re Whistler Energy II LLC*,[9] which stated that in certain circumstances, where an offshore drilling contract had been rejected but certain services were provided by the counterparty *after the rejection of the contract,* that "overhead and incidental expenses" *might* qualify as an administrative expense upon a proper factual showing – which in that case included the legal necessity of such services due to the laws governing decommissioning of an offshore drilling rig.

7. The Fulfillment Agreement for uniforms and other branded goods does not come with any such external governmental legal requirements and was not rejected until the Effective Date. Whatever goods and services Icebox provided to the Debtors post-petition were provided prior to the rejection of the Fulfillment Agreement. Any post-petition claims of Icebox are limited by the terms of the Fulfillment Agreement with which both parties were required to comply.

8. The Fulfillment Agreement prohibits any extraneous obligations such as the Storage Costs, Administrative Costs, and Interest Costs from being unilaterally created. Section 23(a) of the Fulfillment Agreement expressly provides:

> This Agreement constitutes the entire agreement of the Parties with respect to the subject matter hereof. No modification, amendment, or waiver of any provision of this Agreement, and no consent to any departure by either Party from the strict

---

[8] Motion at ¶ 17.

[9] *Matter of Whistler Energy II, L.L.C.*, 931 F.3d 432, 443-44 (5th Cir. 2019).

adherence thereto, shall in any event be effective unless the same is in writing and signed by both Parties, and then such modification, waiver or consent shall be effective only in the specific instance and for the specific purpose given.

9. The only references in the Fulfillment Agreement to the consideration being paid by either the Customer or Icebox are in Section 4 – which indicates "The Icebox will charge Customer the prices set forth in Exhibit "A" to this Agreement." and Section 15 – which is entitled "Pricing".  Exhibit A is  list of products and the price charged for each product.  Nothing in Exhibit A references Administrative Costs and Interests Costs as defined by Icebox in the Motion.

10. Section 15 contains a limitation on the ability of Icebox to increase the price of Lycra and the obligation of Icebox to pay Customer the price differential between wholesale and consumer prices.  Nothing in this Section or any other section of the Fulfillment Agreement references Administrative Costs and Interests Costs (as defined by Icebox in the Motion) as being a payment obligation of Customer.

11. <u>Storage Costs</u>.  Storage Costs are expressly dealt with in the Fulfillment Agreement. Contrary to the representations of Icebox that it is entitled to an administrative claim for $16,480 in Storage Costs because it was required to meet a certain Inventory Commitment under the Fulfillment Agreement, the Fulfillment Agreement expressly states that Icebox ***is not entitled to charge Customer Storage*** costs in ***two*** places.  Section 8 of the Fulfillment Agreement provides: "***The costs associated with storing the products in The Icebox's inventory are included in the list of price of the item***."[10]  Thus no separate Storage Costs are collectible.  Section 15 of the Fulfillment Agreement further states: "The Icebox will not bill any storage, pick/pack and ship, handling, and material costs."  Icebox does not explain in the Motion why it is exempt from the terms of its own contract.

---

[10] Fulfilment Agreement, § 8 (emphasis added).

12. <u>Administrative Costs.</u>  Icebox asserts it is entitled to an administrative claim for $29,790.00 in Administrative Costs.  Icebox defines these Administrative Costs as "accounting, analytics, information technology, sales, procurement, operations, and management costs to satisfy the Inventory Commitment under the Fulfillment Agreement and making the Product available for purchase by Customer".[11]  Nothing in the Fulfillment Agreement requires the Customer to pay these expenses which appear to be normal overhead expenses of any company.  Icebox presumably incurred these very same "overhead and incidental expenses" during the prepetition term of the Fulfillment Agreement.  The Debtors were never charged for these alleged costs prepetition, never paid any such costs and no such line item was included in any invoice received from Icebox.

13. The ostensible back-up for these Administrative Costs is set out in Exhibit C to the Motion.  This one page document was clearly created solely for the purpose of the Motion.  The chart contains the following self-serving header:

> HOA - Time to compile all the information over the past few months from IT, Operations, Accounting, and Management to provide information to Hooters so that Hooters could continue operating its business
> Added any amouns [sic] for the post-petition uniform sales and making the uniforms available for purchase fall into that category because the Debtor needed the uniforms in the course of operating its business.
> For April 2025 to December 2025.

The chart contains consolidated and unsupported hours, salaries, and dollar amounts allocated to "Accounting", "Analytics", "IT", and "Sales/Procurement/Operations/Management" that bear no relation to any provision of the Fulfillment Agreement or obligations of the Debtor/Customer thereunder.  Unless Icebox was permitted to charge the Debtor/Customer for these costs under the Fulfillment Agreement, they do not spontaneously become an administrative claim simply because Icebox retroactively decided to allocate some unidentified percentage of its overhead to the Debtor

---

[11] Motion at ¶ 12.

by unilaterally concluding such overhead was necessary for the Debtor to operate its business. None of these services were ever requested by the Debtor and none of this information was ever provided to the Debtor because none of these costs were an obligation of the Debtor/Customer under the Fulfillment Agreement. Icebox's unilateral and retroactive creation of a conclusory chart with unsupported data is not evidence of a legal obligation or meet the test for an administrative claim.

14. <u>Interest Costs.</u> Icebox asserts it is entitled to an administrative claim for $17,471.37 in Interest Costs. This last category is even more ludicrous than the prior category. Notwithstanding that the Fulfillment Agreement makes no reference to Icebox's own capital structure and financial commitments or any obligation of the Customer to pay Icebox's obligations to its own lenders, Icebox asserts it is entitled to an administrative claim for the costs Icebox has incurred "attributable to paying interest on its line of credit with its lender to satisfy the Inventory Commitment".[12] The support for this ostensible obligation is another one page chart[13] which contains no supporting data or basis for its factual conclusions, let alone the basis for this Court to determine that this is contractual obligation of the Debtor. The WDO presumes that whatever loans Icebox has, it was paying interest on those loan prior to the Petition Date. Nothing in the Fulfillment Agreement makes such Interest Costs an obligation of the Debtor/Customer.

15. None of the various categories of alleged "Post-Petition Services" were obligations of the Debtor/Customer under the Fulfillment Agreement. Nor do they meet the test for an allowed administrative expense under the Bankruptcy Code.

---

[12] Motion at ¶ 13.

[13] Motion, Ex. D.

16. As a general matter, administrative claims in a bankruptcy case include those that are incurred by the debtor post-petition that constitute the ordinary and necessary expenses of preserving the estate. 11 U.S.C. § 503(b)(1)(A); *see also*, *Total Minattome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 387 (5th Cir. 2001). Icebox, as the party seeking payment of an administrative expense, bears the burden of proof. *In re TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992). The purpose of section 503(b)(1)(A) is to encourage parties to continue doing business with a debtor in the ordinary course. *Matter of Whistler Energy II, L.L.C.*, 931 F.3d at 442.

17. While the Bankruptcy Code protects creditors who continue to do business with the debtor at the request of the debtor, it does not enable a post-petition creditor to enhance its rights over and above those provided in its contract simply because it is doing business with a debtor during the course of a bankruptcy case.[14] The Debtor benefitted from the Fulfillment Agreement by obtaining the goods and services set out in that agreement and Icebox was entitled to be paid for those goods and services in accordance with the agreement. That is all Icebox is entitled to be paid and that is what the WDO has agreed to pay.

18. Nothing in the Motion indicates how or why Icebox is legally or contractually entitled to be paid the Storage Costs,[15] Administrative Costs or Interest Costs – which are not identified as consideration to be paid to Icebox in the Fulfillment Agreement – solely because the Debtor/Customer is now in bankruptcy.

---

[14] *NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991) ("claim for actual damages would be necessary for preserving the estate because [debtor's] liability was 'incurred so that [it] might receive the benefits of the contract.'"; claim for punitive damages disallowed as providing no benefit.).

[15] As indicated previously, Storage Costs are expressly included in the pricing for the invoices the Debtors have agreed to pay. No other Storage Costs are permitted to be charged under the Fulfillment Agreement.

19. The Fulfillment Agreement mentions nothing of Administrative and Interest Costs. These additional non-contractual costs were not even known to exist by the Customer. Therefore, they could not have been incurred at the request or for the benefit of the Debtor/Customer. As the Fifth Circuit stated in *Whistler*: "a creditor can establish that its expenses are attributable to the actions of the bankruptcy estate through evidence of either a ***direct request*** from the debtor-in-possession or other inducement via the ***knowing and voluntary post-petition acceptance of desired goods or services***."[16]

20. The only goods and services knowingly and voluntarily accepted by the Debtor from Icebox post-petition are those expressly set out in the Fulfillment Agreement – the purchase of the Product as identified in the invoices that are being paid. At no time did the Debtor/Customer knowingly request or induce Icebox to incur the alleged Administrative Costs or Interest Costs as Customer had never been charged for these in any of its prior dealings with Icebox.[17] Icebox's conclusory allegations of "benefit to the estate" do not change the fact that the Debtor did not induce Icebox to incur ordinary overhead expenses or take out a loan. Icebox is not contractually entitled to recover any of these expenses, let alone as an administrative claim. And Icebox's attempt to shoehorn such costs into the *Whistler* dicta of "overhead and incidental expenses" is not legally supportable.

21. The WDO reserves its right to further supplement this Objection and to seek reimbursement of the costs and expenses incurred by the WDO in responding to the Motion.

**WHEREFORE**, the WDO prays that the Court deny the relief requested in the Motion except as to the $1,442.97 HOA A/R Amount which the WDO has agreed to pay.

---

[16] *Matter of Whistler Energy II, L.L.C.*, 931 F.3d at 443 (emphasis added).

[17] *Matter of Whistler Energy II, L.L.C.*, 931 F.3d at 442 ("Further, in the context of commercial transactions for goods and services, a creditor must show some inducement by the debtor-in-possession.") (cites omitted).

Dated: February 17, 2026   Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Judith Elkin*
Judith Elkin, Esq. (TX Bar No. 06522200)
Theodore S. Heckel, Esq. (admitted *pro hac vice*)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
Email: jelkin@pszjlaw.com
theckel@pszjlaw.com

 - and -

Bradford J. Sandler, Esq. (admitted *pro hac vice*)
Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Shirley S. Cho, Esq. (admitted *pro hac vice*)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: bsandler@pszjlaw.com
rfeinstein@pszjlaw.com
scho@pszjlaw.com

*Counsel to the Drivetrain, LLC as Wind-Down Officer*

## CERTIFICATE OF SERVICE

I certify that on February 17, 2026, a true and correct copy of the foregoing was caused to be served by this Court's CM/ECF to all parties that are registered to receive such notice in the above cases and on counsel to Icebox.

*/s/ Judith Elkin*
Judith Elkin